**Shannon Armstrong**, OSB No. 060113
shannon.armstrong@hklaw.com
**Kristin Asai**, OSB No. 103286
kristin.asai@hklaw.com
**Abigail Gore**, OSB No. 205387
abigail.gore@hklaw.com
**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, OR 97204
Telephone: 503.243.2300
Fax: 503.241.8014

**Ashley Shively** (*pro hac vice forthcoming*)
ashley.shively@hklaw.com
**HOLLAND & KNIGHT LLP**
560 Mission Street, Suite 1900
San Francisco, CA 94105
Telephone: 415.743.6900

*Attorneys for Mars, Incorporated*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

LIZETH JIMENEZ, AYREANNE BORDEAUX, KRYSTINE AQUINO-RORALDO, and REGINA BERRIOS, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

MARS, INC.,

Defendant.

Case No. 3:23-cv-01786-YY

**DEFENDANT MARS, INCORPORATED'S MOTION TO DISMISS**

Pursuant to Fed. R. Civ. P. 12(b)(2), Fed. R. Civ. P. 12(b)(6)

ORAL ARGUMENT REQUESTED

## TABLE OF CONTENTS

**Page**


INTRODUCTION ..... 1

BACKGROUND ..... 2

I. Banfield and VCA are separate legal entities from Mars. ..... 2

II. Plaintiffs allege illegal wiretapping on Banfield's or VCA's website, not on Mars's website. ..... 3

III. Plaintiffs' claims rely on the Terms and Conditions of Banfield's and VCA's websites, not any terms applicable to Mars or its website. ..... 3

IV. The Terms and Conditions for Banfield's and VCA's websites are governed by separate governing law and venue provisions. ..... 4

LEGAL STANDARDS ..... 5

I. Lack of Personal Jurisdiction under Rule 12(b)(2) ..... 5

II. Failure to State a Claim under Rule 12(b)(6) ..... 6

ARGUMENT ..... 7

I. Mars should be dismissed because plaintiffs fail to allege sufficient facts to assert personal jurisdiction or liability against Mars in Oregon. ..... 8

A. Plaintiffs do not assert any facts supporting this Court's jurisdiction over Mars. ..... 9

B. Plaintiffs do not allege sufficient facts to pierce the corporate veil and assert liability against Mars for the alleged actions of VCA or Banfield. ..... 11

II. Mars should be dismissed because plaintiffs cannot assert their CIPA claims relating to Banfield's and VCA's websites in this Court under their express Terms and Conditions. ..... 13

A. Plaintiffs' claims relating to Banfield's website should be dismissed because the CIPA does not apply to Banfield's website. ..... 13

B. Plaintiffs' claims relating to VCA's website should be dismissed because those claims must exclusively be brought in California, and not this Court. ..... 14

III. Mars should be dismissed because plaintiffs fail to allege a plausible claim of illegal wiretapping or eavesdropping under CIPA. ..... 15

A. Plaintiffs do not allege that Mars engaged in wiretapping under § 631 of CIPA as a matter of law. ..... 15

1. Plaintiffs fail to state a claim under the first clause of § 631 because the alleged communications did not occur through a telephone. ..... 16

2. Plaintiffs fail to state a claim under the second clause of § 631 because the alleged communications did not have "contents" and were not read while "in transit." ..... 16




**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

B. Plaintiffs fail to state a claim under the third clause of § 631(a) because their claim under the first and second clauses are deficient. ............................19

C. Mars cannot be liable for aiding and abetting under § 631(a) of CIPA because plaintiffs fail to state a claim under any of § 631(a)'s three operative clauses.........................................................................................19

D. Plaintiffs do not allege that Mars eavesdropped under § 632 of the CIPA as a matter of law.........................................................................................20

CONCLUSION..........................................................................................................22



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acrymed, Inc. v. Convatec*,
317 F. Supp. 2d 1204 (D. Or. 2004) ....9, 12

*Al -Ahmed v. Twitter, Inc.*,
603 F. Supp. 3d 857 (N.D. Cal. 2022) ....4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....6

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
571 U.S. 49 (2013)....14

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1988) ....7

*Bates v. Bankers Life & Cas. Co.*,
993 F. Supp. 2d 1318 (D. Or. 2014) ....8, 10

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ....17

*Brown v. Serv. Grp. of Am., Inc.*,
No. 3:20-cv-02205-IM, 2022 WL 43880 (D. Or. Jan. 5, 2022)....11

*Cox v. HP Inc.*,
368 Or. 477 (2021)....6

*Docksider, Ltd. v. Sea Tech., Ltd.*,
875 F.2d 762 (9th Cir. 1989) ....14

*Eclipse Grp. LLP v. Target Corp.*,
No. 15-cv-1411-JLS-BLM, 2016 WL 8395077 (S.D. Cal. May 26, 2016)....6

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ....20

*Fleet v. Trion Worlds, Inc.*,
No. 15-cv-04721-WHA, 2016 WL 122855 (N.D. Cal. Jan. 12, 2016)....14

*Gonzales v. Uber Technologies, Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018) ....22



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N. D. Cal. May 6, 2020)....................16, 19

*Graf v. Zynga Game Network, Inc.* (*In re Zynga Privacy Litig.*),
750 F.3d 1098 (9th Cir. 2014) ....................17, 18

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ....................20

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ....................16

*Holt v. Urb. League of Portland, Inc.*,
No. 3:22-cv-00837-YY, 2023 WL 2433721 (D. Or. Feb. 17, 2023)....................8

*James v. Allstate Ins. Co.*,
No. 3:23-cv-01931-JSC, 2023 WL 8879246 (N.D. Cal. Dec. 22, 2023)....................20

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001) ....................7

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023) ....................16

*LNS Enters. LLC v. Cont'l Motors, Inc.*,
22 F.4th 852 (9th Cir. 2022) ....................6

*M/S Bremen v. Zapata Off-Shore Co.*,
407 U.S. 1 (1972)....................14

*Mastel v. Miniclip SA*,
549 F.Supp.3d 1129 (E.D. Cal. 2021)....................18

*Nesbit v. Progressive Ins. Corp.*,
No. 3:17-cv-01010-SB, 2018 WL 2988710 (D. Or. April 24, 2018) ....................2

*Pena v. GameStop, Inc.*,
No. 22-cv-1635 JLS (MDD), 2023 WL 3170047 (S.D. Cal. April 27, 2023)....................18

*Ranza v. Nike, Inc.*,
793 F.3d 1059 (9th Cir. 2015) ....................6, 8, 10

*Revitch v. New Moosejaw, LLC*,
No. 18-cv-06827-VC, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ....................21

*Rodriguez v. Google LLC*,
No. 20-cv-04688-RS, 2021 WL 2026726 (N.D. Cal. May 21, 2021) ....................21



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

*Schwartz v. Christiana Trust*,
No. 3:15-cv-02075-PK, 2016 WL 3512441 (D. Or. June 2, 2016) ....................7

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) ....................6

*Stay Frosty Enters. v. Amazon.com, Inc.*,
No. 3:18-cv-00283-SB, 2021 WL 1232681 (D. Or. March 10, 2021) ....................10, 11

*Swarts v. Home Depot, Inc.*,
No. 23-cv-0995-JST, 2023 WL 5615453 (N.D. Cal. Aug. 30, 2023)....................19

*Talyancich v. Microsoft Corp.*,
No. CV-12-00483-GAF-FMOX, 2012 WL 1563884 (C.D. Cal. Mar. 28, 2012)....................14

*United States v. Bestfoods*,
524 U.S. 51 (1998)....................8, 12

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) ....................7

*Weston Fam. P'ship LLLP v. Twitter, Inc.*,
29 F.4th 611 (9th Cir. 2022) ....................6

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ....................17

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ....................17

*Yuksel v. Twitter, Inc.*,
No. 22-CV-05415-TSH, 2022 WL 16748612 (N.D. Cal. Nov. 7, 2022) ....................4

**Statutes**

18 U.S.C. § 2510(8) ....................17

Cal. Penal Code § 631 .................... *passim*

Cal. Penal Code § 631(a) .................... *passim*

Cal. Penal Code § 632 .................... *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(2)....................5, 6

Fed. R. Civ. P. 12(b)(6)....................6, 7



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

## CERTIFICATE OF COMPLIANCE WITH LR 7-1

Pursuant to LR 7-1, counsel for defendant Mars, Incorporated ("Mars") certifies that she conferred with plaintiffs' counsel concerning the subject of this motion and the parties were unable to resolve this dispute.

## MOTIONS

Mars moves to dismiss all claims against it pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. In addition, Mars moves to dismiss all claims against it pursuant to Fed. R. Civ. P. 12(b)(6) because plaintiffs fail to state a claim for relief against Mars.

## MEMORANDUM OF LAW

### INTRODUCTION

Plaintiffs initiated this class action against Mars alleging violations of the California Invasion of Privacy Act, Cal. Penal Code §§ 631, 632 ("CIPA") based on the use of the Facebook[1] Pixel ("Pixel") on websites that they visited. Plaintiffs, however, do not allege they ever interacted directly with Mars or its website. Instead, plaintiffs rely solely on alleged Pixel tracking on the websites of two of Mars's subsidiaries, Banfield Pet Hospital ("Banfield") and VCA Animal Hospital ("VCA"), who are not defendants in this action. Plaintiffs allege that Mars should be held liable under CIPA for Banfield and VCA allegedly imbedding the Pixel into their own independent websites. Plaintiffs are wrong and their claims should be dismissed in their entirety.

Based on the face of the complaint, plaintiffs do not allege any facts to warrant holding Mars—which is merely the parent company for Banfield and VCA—subject to the jurisdiction of this Court or liable for the alleged actions of its subsidiaries. In addition, plaintiffs' claims

[1] In October 2021, Facebook, Inc. changed its name to Meta Platforms, Inc. Unless otherwise indicated, Facebook, Inc. and Meta Platforms, Inc. are referenced collectively as "Facebook."

ignore the plain language of the Terms and Conditions of Banfield's and VCA's websites, which preclude plaintiffs from bringing their CIPA claims in this Court. Finally, plaintiffs' claims should also be dismissed as a matter of law because plaintiffs fail to allege facts supporting key elements of their CIPA claims. For each of those reasons, plaintiffs' claims against Mars should be dismissed.

## BACKGROUND

### I. Banfield and VCA are separate legal entities from Mars.

Plaintiffs allege that Mars "owns and operates" Banfield and VCA, which are "two of the 'largest veterinary practices in the world.'" (Compl. ¶¶ 2, 23 & n.1 (citing Mars's website).) Mars owns various brands, including multiple pet care brands, like Banfield and VCA, as well as numerous snacking, food, and nutrition brands. *See* Mars "Our Brands" Page, https://www.mars.com/our-brands (last visited Jan. 24, 2024). Mars is a Delaware corporation and has its principal place of business in Virginia. (Decl. of Kristin Asai in Supp. of Mot. to Dismiss ("Asai Decl."), Ex. 1; Compl. ¶ 8.) Although plaintiffs allege that Mars "does business throughout Oregon" (*see* Compl. ¶ 8), Mars is not registered to do business in Oregon. (Asai Decl., Ex. 2 at 6.) Instead, only Banfield[2] and VCA—which are legally separate entities—are registered to do business in Oregon. (*Id.* at 1–5.)[3]

///

///

---

[2] Banfield is the dba for Medical Management International, Inc.

[3] This Court may take judicial notice of Mars's, Banfield's, and VCA's respective filings with the Delaware and Oregon Secretaries of State that are published on each Secretary of State's website because they are public records. *See Nesbit v. Progressive Ins. Corp.*, No. 3:17-cv-01010-SB, 2018 WL 2988710, at *1 n.1 (D. Or. April 24, 2018) (taking judicial notice of public records from the Oregon Secretary of State's website, which showed the defendant's state of incorporation and principal place of business).



HOLLAND & KNIGHT LLP
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

## II. Plaintiffs allege illegal wiretapping on Banfield's or VCA's website, not on Mars's website.

Plaintiffs allege that they each intentionally interacted with Banfield's or VCA's websites to schedule vet appointments, purchase medication for their pets, or check their pet's veterinary records. (Compl. ¶¶ 4–7.) Plaintiffs do not allege that they interacted with Mars's separate website or had any interactions directly with Mars. Plaintiffs allege that Mars, by virtue of Banfield and VCA imbedding the Pixel into their own websites, "aided, agreed with, and conspired with Facebook" to "intercept Plaintiffs' and Class members' internet communications while accessing" Banfield's and VCA's websites. (Compl. ¶¶ 77–78, 85, 89.) According to plaintiffs, that conduct violates §§ 631 and 632 of CIPA. (Compl. ¶¶ 72–90.)

## III. Plaintiffs' claims rely on the Terms and Conditions of Banfield's and VCA's websites, not any terms applicable to Mars or its website.

Plaintiffs allege that they did not consent to Mars's disclosure of their communications based on the language of Banfield's and VCA's respective "Terms of Service." (Compl. ¶¶ 50–51.) Plaintiffs do not cite or rely upon any terms applicable to Mars or its website.

Specifically, plaintiffs cite Banfield's and VCA's Terms of Service and allege that based on those Terms, Mars "informs pet owners that, '[i]f you choose to order pet medications or other prescriptions products via the Sites you are waiving confidentiality of those records, to the extent applicable, with respect of third parties necessary to fill those prescriptions.'" (*Id.* ¶ 50 (emphasis omitted).) However, plaintiffs allege that "Facebook has no role in filling out prescriptions." (*Id.*) Relying on screenshots from Banfield's and VCA's Terms of Service, plaintiffs also allege that Mars "will refrain from collecting personally identifiable information" and that the Pixel will "not store directly personal information, but [is] based on uniquely identifying your browser and internet device." (*Id.* ¶ 51.)



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

**IV. The Terms and Conditions for Banfield's and VCA's websites are governed by separate governing law and venue provisions.**

Although plaintiffs lump together Banfield's and VCA's websites, and their applicable Terms and Conditions, Banfield and VCA have materially different governing law and venue provisions. Specifically, Banfield's Terms and Conditions are governed by Oregon law and require exclusive jurisdiction for any dispute relating to Banfield's website in Oregon:[4]

> Welcome to Banfield Pet Hospital®! These are the specific terms and conditions regarding your use of Banfield's websites and any online or mobile application (each an "App") that run on any smart phones, tablets or other devices, that link to these terms, including without limitation Banfield.com and the Banfield Pet Hospital Mobile Application (collectively, the "Sites"). Through the Sites, we, Medical Management International, Inc., dba Banfield Pet Hospital ("Banfield"), offer information and communications services and related products that we hope you will find helpful, entertaining, and informative. There are a few rules of the (cyber) road that our visitors must follow when using our Sites, so we ask all our visitors to read these General Terms and Conditions ("Agreement") carefully.
>
> * * *
>
> This Agreement and all transactions contemplated hereby shall be deemed made and entered into in the State of Delaware and **shall be governed by the internal laws of the State of Oregon**, but excluding its and all other jurisdictions choice of law principles. **You agree to and submits to the exclusive jurisdiction of courts of or in the State of Oregon over any disputes under this Agreement and waive any objection to the jurisdiction.**

(Asai Decl., Ex. 3 at 1, 17 (emphases added).)

In contrast, VCA's Terms and Conditions are governed by California law and require exclusive jurisdiction for any dispute relating to VCA's website in Los Angeles, California:

---

[4] This Court can take judicial notice of the applicable website terms as part of this motion. *See, e.g.*, *Al -Ahmed v. Twitter, Inc.*, 603 F. Supp. 3d 857, 869 (N.D. Cal. 2022) (holding that publicly available terms of service for a party's website are appropriate for judicial notice); *Yuksel v. Twitter, Inc.*, No. 22-CV-05415-TSH, 2022 WL 16748612, at *2 (N.D. Cal. Nov. 7, 2022) (same).



HOLLAND & KNIGHT LLP
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

> These are the specific terms and conditions regarding your use of VCA's websites and any online or mobile application (each an "App") that run on any smart phones, tablets or other devices, that link to these terms of use, including without limitation vca.com, vcahospitals.com and the myVCA™ App (collectively, the "Sites").
>
> Your use of all content and collective works comprising the Site, including all data, software, photographs, videos, stories, articles, sounds, music, artwork, graphics and other information and materials (collectively "Content"), and any products or services made available through the Sites are subject to these terms of use. Your use of any Site constitutes your agreement to comply with all terms, conditions and legal notices contained herein (these "Terms of Use") in addition to any other terms, conditions and legal notices that may appear on or within any Site.
>
> * * *
>
> To the maximum extent permitted by law, these Terms of Use shall be governed by and construed in accordance **with the laws of the State of California** without regard to its conflict of law rules, provided that for residents of Quebec, the laws of the Province of Quebec will apply. Except for residents of Quebec, **any legal proceeding arising out or relating to these Terms of Use against or relating to VCA will be subject to the exclusive jurisdiction of any state or federal court sitting in Los Angeles County, California and you irrevocably consent to the jurisdiction of such courts.**

(Asai Decl., Ex. 4 at 1, 8 (emphases added).) Plaintiffs expressly cite and rely upon VCA's choice of law provision to purportedly establish a basis for bringing a nationwide class against Mars under California's wiretap statute. (Compl. ¶ 70.)

## LEGAL STANDARDS

### I. Lack of Personal Jurisdiction under Rule 12(b)(2)

A party may move to dismiss under Rule 12(b)(2) for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). The Due Process Clause of the Fourteenth Amendment to the United States Constitution requires that a non-resident defendant, like Mars, have "certain minimum contacts with a forum state before that state can exercise personal jurisdiction over that individual or



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

entity." *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 858 (9th Cir. 2022) (cleaned up). This Court looks to Oregon state law to determine the bounds of personal jurisdiction in this case. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015). Because Oregon law authorizes personal jurisdiction to the full extent permitted by the U.S. Constitution, this Court must determine whether exercising jurisdiction "comports with the limits imposed by federal due process." *Id.*; *see also Cox v. HP Inc.*, 368 Or. 477, 480–81 (2021) (noting that because Oregon's long-arm statute "confers jurisdiction to the extent permitted by due process," the court's "inquiries under [the long-arm statute] and the Due Process Clause collapse into one").

A Rule 12(b)(2) challenge to personal jurisdiction "may attack the legal theory supporting jurisdiction based on the facts as pleaded (a facial attack) or the facts themselves (a factual attack)." *Eclipse Grp. LLP v. Target Corp.*, No. 15-cv-1411-JLS-BLM, 2016 WL 8395077, at *7 (S.D. Cal. May 26, 2016). Here, Mars asserts a facial attack to jurisdiction because the factual allegations, even as plead, are insufficient to establish jurisdiction.

## II. Failure to State a Claim under Rule 12(b)(6)

Under Rule 12(b)(6), a complaint should be dismissed if it fails to include "enough facts to state a claim to relief that is plausible on its face." *Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 617 (9th Cir. 2022) (cleaned up). A complaint's claims are plausible when the pleaded facts "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (cleaned up). The allegations "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Although the pleading standard in Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

550 U.S. 544, 555 (2007)). Dismissal under Rule 12(b)(6) "can [also] be based on the lack of a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (cleaned up). However, a court may consider materials that are attached to or necessarily relied upon in the complaint, as well as matters of public record as part of a Rule 12(b)(6) motion. *Id.* at 688–89. The "incorporation by reference" doctrine permits courts "to consider documents that are incorporated by reference into a plaintiff's complaint." *Schwartz v. Christiana Trust*, No. 3:15-cv-02075-PK, 2016 WL 3512441, at *3 (D. Or. June 2, 2016). Courts may take also judicial notice of facts that are "not subject to reasonable dispute" because they are "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." *United States v. Ritchie*, 342 F.3d 903, 908–09 (9th Cir. 2003).

**ARGUMENT**

Plaintiffs' claims against Mars should be dismissed for multiple reasons. First, plaintiffs fail to allege any basis to exercise personal jurisdiction over Mars, which is the only defendant in this case. Second, plaintiffs fail to allege sufficient facts to state a claim against Mars because their claims solely rely on conduct relating to Banfield or VCA, not Mars itself. Third, even if plaintiffs could allege a basis to hold Mars legally responsible for the conduct of its legally separate subsidiaries, plaintiffs' claims rely on the Terms and Conditions of Banfield's and VCA's websites, which preclude plaintiffs from bringing their CIPA claims in this Court. Finally, even if plaintiffs could surmount those key procedural hurdles, plaintiffs' CIPA claims fail as a matter of law because they fail to state a claim under CIPA.

**I. Mars should be dismissed because plaintiffs fail to allege sufficient facts to assert personal jurisdiction or liability against Mars in Oregon.**

Plaintiffs' claims should be dismissed because plaintiffs fail to assert any facts to overcome the "basic tenet of American corporate law" that "corporate separateness insulates a parent corporation from liability created by its subsidiary[.]" *Ranza*, 793 F.3d at 1070 (cleaned up). Plaintiffs do not allege any facts involving plaintiffs' direct interaction with Mars itself. Instead, each of plaintiffs' factual allegations are based on plaintiffs' interactions with "banfield.com" or "vcahospitals.com," *i.e.*, the websites of Mars's distinct corporate subsidiaries: Banfield and VCA. (Compl. ¶¶ 23–52.) Plaintiffs attempt to connect those factual allegations to Mars solely on the basis that Mars "owns and operates Banfield and VCA[.]" (*Id.* ¶¶ 2, 23.) Plaintiffs are wrong.

A parent company's mere ownership of subsidiaries is insufficient as a matter of law to support assertions of jurisdiction or liability based on the subsidiaries' actions. *See Bates v. Bankers Life & Cas. Co.*, 993 F. Supp. 2d 1318, 1337 (D. Or. 2014) (explaining that "the existence of a relationship between a parent company and its subsidiaries is not sufficient to establish personal jurisdiction over the parent on the basis of the subsidiaries' minimum contacts with the forum") (cleaned up); *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (explaining that "[i]t is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries") (cleaned up). Thus, to establish either personal jurisdiction over or liability against a parent company based on a subsidiary's actions, plaintiffs must allege that "the subsidiary is acting as the parent company's alter ego, so as to justify disregard of the corporate entity" and that piercing the corporate veil is necessary to avoid injustice. *Holt v. Urb. League of Portland, Inc.*, No. 3:22-cv-00837-YY, 2023 WL



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

2433721 (D. Or. Feb. 17, 2023); *Acrymed, Inc. v. Convatec*, 317 F. Supp. 2d 1204, 1214 (D. Or. 2004) (explaining that, under Oregon law, a parent company can only be held liable for its subsidiary's actions if plaintiffs satisfy the requirements for "piercing the corporate veil").

Here, plaintiffs' complaint against Mars should be dismissed in its entirety because plaintiffs do not even attempt to meet that standard. First, plaintiffs fail to allege any basis for personal jurisdiction over Mars in Oregon because their conclusory allegation that Mars "does business" in Oregon is insufficient as a matter of law. To the extent plaintiffs seek to establish jurisdiction over Mars based on Banfield's or VCA's actions (none of which are alleged to have occurred in Oregon), plaintiffs do not allege any facts from which this Court could impute any of Banfield's or VCA's alleged contacts to Mars. Second, plaintiffs fail to allege any facts showing that Mars acted as an alter ego of Banfield or VCA necessary to support claims against Mars for the actions of those subsidiaries. Accordingly, this Court should dismiss all claims against Mars.

### A. Plaintiffs do not assert any facts supporting this Court's jurisdiction over Mars.

Plaintiffs' claims against Mars should be dismissed because plaintiffs' factual allegations are insufficient to support jurisdiction over Mars under either a direct theory of specific personal jurisdiction or through an alter ego theory of imputed contacts. First, as to Mars's direct contacts with Oregon, plaintiffs make only two conclusory allegations related to Mars's contacts with Oregon: (1) "Mars, Inc. does business throughout Oregon and the United States"; and (2) "[Mars] purposefully availed itself of this forum by conducting substantial business within Oregon such that Defendant has significant, continuous, and pervasive contacts with the State of Oregon." (Compl. ¶¶ 8, 10.) Neither of those allegations are sufficient to establish this Court's jurisdiction over Mars.



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

Under Oregon's long-arm statute, this Court may exercise specific personal jurisdiction only where the defendant has "'certain minimum contacts' with the forum state 'such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Ranza*, 793 F.3d at 1068 (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).[5] A defendant has sufficient minimum contacts with a forum to support specific personal jurisdiction when three elements are met: (1) the non-resident defendant "purposefully direct[s] his activities or consummate[s] some transaction with the forum or resident thereof; or perform[s] some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws"; (2) the claim is one which "arises out of or relates to the defendant's forum-related activities"; and (3) the exercise of jurisdiction "comport[s] with fair play and substantial justice, *i.e.* it must be reasonable." *Bates*, 993 F. Supp. 2d at 1333. Plaintiffs bear "the burden of satisfying the first two prongs of the test, whereupon the burden shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." *Id.* (cleaned up).

Plaintiffs have not met their burden of pleading any facts that could satisfy the first two prongs of the specific personal jurisdiction test. Plaintiffs' only jurisdictional allegations that Mars "does business throughout Oregon" and "purposefully availed itself of this forum by conducting substantial business within Oregon" are conclusory allegations that cannot establish this Court's direct jurisdiction over Mars. (Compl. ¶¶ 8, 10); *see Stay Frosty Enters. v. Amazon.com, Inc.*, No. 3:18-cv-00283-SB, 2021 WL 1232681, at *3 (D. Or. March 10, 2021)

---

[5] As plaintiffs do not allege that Mars is "at home" in Oregon or that Mars has its "place of incorporation [or] its principal place of business in Oregon, there is no plausible basis for general personal jurisdiction here. *See Ranza*, 793 F.3d at 1068–69 (setting forth test for establishing general personal jurisdiction over a defendant).



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

(rejecting substantially similar jurisdictional allegations that defendant had "conduct[ed] business in Oregon" and had "systematic and continuous contacts with the State of Oregon" as "conclusory"). This Court does not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Id.* (cleaned up). Where plaintiffs' only jurisdictional allegations against Mars are legal conclusions, plaintiffs' claims against Mars should be dismissed because there are no facts to that Mars either purposefully directed its activities toward Oregon or that plaintiffs' particular claims arise out of or relate to any of Mars's activities in Oregon. *Id.* at *5.

To the extent plaintiffs contend Mars should be subject to this Court's jurisdiction because of either Banfield's or VCA's alleged contacts with the forum, plaintiffs fail to allege any facts to support that those non-parties' contacts can be imputed to Mars. Preliminarily, plaintiffs fail to allege any facts detailing Banfield's or VCA's contacts with Oregon, so an alter ego theory of jurisdiction is still factually deficient. In addition, because "a subsidiary's contacts with the forum do not automatically establish jurisdiction over its parent," plaintiffs must allege sufficient facts to show that Mars "controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former." *Brown v. Serv. Grp. of Am., Inc.*, No. 3:20-cv-02205-IM, 2022 WL 43880, at *4 (D. Or. Jan. 5, 2022). Again, plaintiffs do not even attempt to meet that standard. Accordingly, the Court should dismiss plaintiffs' claims against Mars because plaintiffs fail to allege any facts supporting any theory of personal jurisdiction over Mars.

**B. Plaintiffs do not allege sufficient facts to pierce the corporate veil and assert liability against Mars for the alleged actions of VCA or Banfield.**

In addition to the jurisdictional defects, plaintiffs' claims against Mars fail because plaintiffs do not allege facts to support any theory of liability against Mars based on the actions of its subsidiaries. As set forth above, the entirety of plaintiffs' allegations against Mars relate to



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

Banfield or VCA. (*See* Compl. ¶¶ 23–52 (basing plaintiffs' claims on plaintiffs' interactions with Banfield's and VCA's websites).) Plaintiffs' sole allegation about Mars is that Mars "owns and operates" Banfield and VCA. (*Id.* ¶ 8.) The allegation that Mars operated as a parent company, however, is insufficient as a matter of law to establish direct liability against Mars, particularly where a parent company's involvement is limited to the parent's "understandable interest in the products of its subsidiaries and its funding of those subsidiaries" and it is clear that the plaintiff "knew it was dealing with" the subsidiary and not the parent. *Acrymed, Inc.*, 317 F. Supp. 2d at 1214. Here, plaintiffs fail to allege any facts—beyond Mars's ownership of Banfield and VCA—showing that Mars was an "active participant" in the relationship between plaintiffs and Banfield or VCA. *Id.* Mars therefore cannot be directly liable to plaintiffs for any wrongdoing alleged in the Complaint.

Second, plaintiffs do not allege any facts that would support piercing the corporate veils separating Mars from Banfield and VCA to impose liability on Mars for the actions of Banfield or VCA. It is a "general principle of corporate law . . . that a parent corporation . . . is not liable for the acts of its subsidiaries." *Bestfoods*, 524 U.S. at 61. Consistent with that principle, "Oregon courts are extremely reluctant to disregard the corporate form unless exceptional circumstances exists." *Acrymed, Inc.*, 317 F. Supp. 2d at 1214–15 (cleaned up). Under Oregon law, a parent corporation cannot be held liable for the acts of its subsidiaries unless the following conditions are adequately pleaded: "(1) the parent corporation controlled the subsidiary; (2) the parent corporation engaged in improper conduct in its exercise of control over the subsidiary; and (3) the parent corporation's improper conduct caused the plaintiff's inability to obtain an adequate remedy from the subsidiary." *Id.* at 1214. Here, plaintiffs have not alleged any facts to meet that test and impute liability to Mars for Banfield's or VCA's actions. Plaintiffs' claims



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

against Mars should therefore be dismissed because plaintiffs have not asserted viable claims for direct or imputed liability against Mars.

## II. Mars should be dismissed because plaintiffs cannot assert their CIPA claims relating to Banfield's and VCA's websites in this Court under their express Terms and Conditions.

Even if plaintiffs could find a basis for jurisdiction, and a theory of liability, against Mars, Mars should be dismissed because the applicable Terms and Conditions for the Banfield and VCA websites preclude plaintiffs' claims in this Court. First, as to Banfield's website, all claims and transactions are expressly governed by Oregon law, and therefore plaintiffs cannot assert a claim under CIPA as a matter of law. Second, as to VCA's website—which is governed by California law and therefore the CIPA potentially could apply—all claims relating to that website must be asserted in the state or federal courts of Los Angeles, California. As a result, plaintiffs' claims relating to VCA's website are not properly brought in this Court.

### A. Plaintiffs' claims relating to Banfield's website should be dismissed because the CIPA does not apply to Banfield's website.

Plaintiffs cannot state a claim against Mars arising from conduct on Banfield's website under CIPA, *i.e.*, California law, because the parties agreed that only Oregon law governs the transactions on Banfield's website. Under the plain language of the Banfield's Terms and Conditions, "[t]his Agreement *and all transactions contemplated hereby shall be deemed made and entered into in the State of Delaware and shall be governed by the internal laws of the State of Oregon*, but excluding its and all other jurisdictions choice of law principles." (Asai Decl., Ex. 3 at 17 (emphasis added).) Plaintiffs' claims expressly rely on activity on Banfield's website (*see* Compl. ¶¶ 6-7, 23, 25, 38, 67) and plaintiffs directly invoke Banfield's Terms and Conditions in support of their contention that plaintiffs did not consent to the alleged invasion of privacy (*see id.* ¶ 50). Thus, plaintiffs may not avoid the choice of law provision of those Terms



HOLLAND & KNIGHT LLP
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

and Conditions that require Oregon law—not California law—to apply to any challenged conduct on Banfield's website. Accordingly, the Court should dismiss plaintiffs' claims under the CIPA relating to Banfield's website.

**B. Plaintiffs' claims relating to VCA's website should be dismissed because those claims must exclusively be brought in California, and not this Court.**

Plaintiffs' claims arising from alleged activity on VCA's website should similarly be dismissed because the claims are subject to a mandatory California forum-selection provision and are thus filed in the wrong court. Under VCA's website terms of use, "any legal proceeding *arising out or relating to these Terms of Use* against or relating to VCA will be subject to the *exclusive jurisdiction of any state or federal court sitting in Los Angeles County, California*[.]" (Asai Decl., Ex. 4 at 1, 8 (emphases added).) Plaintiffs expressly cite and rely on VCA's Terms of Use in support of their contention that they did not consent to the alleged invasion of privacy and justify asserting a nationwide class under the CIPA. (Compl. ¶¶ 50, 70.) Accordingly, to the extent plaintiffs seek to assert claims relating to VCA's website and its Terms of Use, they must be brought in California, not in Oregon.

The law is clear that "where venue is specified with mandatory language the clause will be enforced." *Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762, 764 (9th Cir. 1989). Forum selection clauses "are prima facie valid" and "should control absent a strong showing that it should be set aside." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 15 (1972). Indeed, forum selection clauses control in "all but the most exceptional cases." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013) (cleaned up). As such, courts routinely enforce forum selection clauses contained in website terms of use, like exists here. *See, e.g.*, *Fleet v. Trion Worlds, Inc.*, No. 15-cv-04721-WHA, 2016 WL 122855, at *4 (N.D. Cal. Jan. 12, 2016) (enforcing forum selection clause in terms of use); *Talyancich v. Microsoft Corp*., No.



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

CV-12-00483-GAF-FMOX, 2012 WL 1563884, at *4-5 (C.D. Cal. Mar. 28, 2012) (enforcing forum-selection clause in terms of use and dismissing claims based on improper venue). Accordingly, because plaintiffs rely upon VCA's Terms of Use to, among other things, establish their legal basis for asserting claims under the CIPA, they are also bound by the forum selection in those terms. This Court should therefore dismiss all claims relating to VCA's website because they cannot be asserted in this Court.

## III. Mars should be dismissed because plaintiffs fail to allege a plausible claim of illegal wiretapping or eavesdropping under CIPA.

Finally, even assuming plaintiffs could allege a basis to hold Mars liable in this Court for the alleged actions of its subsidiaries, plaintiffs' claims for violation of CIPA fail as a matter of law. Plaintiffs allege only aiding and abetting liability against Mars under CIPA. (*See* Compl. ¶¶ 77-78, 85, 89.) However, because plaintiffs fail to plead a predicate violation of § 631 or § 632 of CIPA, plaintiffs' aiding and abetting claims that rely upon a predicate CIPA violation necessarily fail as a matter of law. Specifically, as to Count I for violation of § 631 of CIPA for wiretapping, plaintiffs fail to state a claim for relief under any of the three operative clauses of § 631(a). As to Count II for violation of § 632 regarding eavesdropping under CIPA, plaintiffs fail to rebut the presumption that their internet communications are not confidential and therefore outside the statute. This Court should therefore dismiss both of plaintiffs' claims against Mars for aiding and abetting Facebook's violations of CIPA.

### A. Plaintiffs do not allege that Mars engaged in wiretapping under § 631 of CIPA as a matter of law.

Count I of plaintiffs' CIPA claim fails as a matter of law because they fail to allege a legally plausible claim for wiretapping under § 631(a) of the Act. Section 631(a) contains three operative clauses covering three separate and independent patterns of conduct: "intentional wiretapping, willfully attempting to learn the contents or meaning of a communication in transit



HOLLAND & KNIGHT LLP
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

over a wire, and attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1091 (N.D. Cal. 2022). Section 631(a) further contains a fourth basis for liability, for anyone "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the" other three bases for liability. Cal. Penal Code § 631(a).

**1. Plaintiffs fail to state a claim under the first clause of § 631 because the alleged communications did not occur through a telephone.**

Plaintiffs fail to state a claim under the first clause of § 631(a), which imposes liability on a person who "intentionally taps . . . any *telegraph or telephone wire*," because plaintiffs' allegations do not involve communications made using a telephone. *Id.* (emphasis added). "Courts have consistently interpreted this clause as applying only to communications over telephones and not through the internet." *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1079 (C.D. Cal. 2023).

Here, plaintiffs do not allege that Mars or any other entity tapped their communications using telephone or telegraph wires, but instead tapped plaintiffs' "internet communications." (Compl. ¶ 77.) Plaintiffs therefore cannot state a claim under the "plain text" of § 631's first clause as a matter of law. *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 825 (N. D. Cal. May 6, 2020) (determining that the plaintiffs failed to state a claim under the "plain text" of the statute because "[t]he first clause expressly requires that the unauthorized 'connection' be made with 'any telegraph or telephone wire, line, cable, or instrument'").

**2. Plaintiffs fail to state a claim under the second clause of § 631 because the alleged communications did not have "contents" and were not read while "in transit."**

Plaintiffs' allegations are insufficient to support a claim under the second clause of § 631(a) because plaintiffs fail to allege sufficient facts that: (1) their communications on the



HOLLAND & KNIGHT LLP
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

Banfield or VCA websites amounted to "contents" under the statute; and (2) such contents were intercepted while "in transit."

First, plaintiffs' online interactions on either Banfield's or VCA's websites do not qualify as "contents" for purposes of § 631(a). The standard for determining the "contents" of a communication is the same for both the Federal Wiretap Act and CIPA. *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020). The Federal Wiretap Act defines "contents" as "information concerning the substance, purport, or meaning of [a] communication." 18 U.S.C. § 2510(8). "Content" includes "message content in the same way that the words of a text message or an email do[,]" but not "pieces of data." *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021). For example, "content" does not include "record information regarding the characteristics of the message that is generated in the course of the communication." *Graf v. Zynga Game Network, Inc.* (*In re Zynga Privacy Litig.*), 750 F.3d 1098, 1106 (9th Cir. 2014). In contrast to "contents," "customer 'record information' includes personally identifiable information such as the customer's name, address, and identity." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1033 (N.D. Cal. 2014). Taken together, the "body of caselaw suggests that CIPA § 631(a)[ii] protects only the internal, user-generated material of a message, not routine identifiers, whether automatically generated or not." *Yoon*, 549 F. Supp. 3d at 1082.

Here, plaintiffs' allege that Banfield, VCA, and Facebook captured plaintiffs' "Facebook ID, email address, first name, last name, and phone number" (Compl. ¶ 52); "information revealing the user's email address and what kind of [veterinary] medical history is being viewed" (*id.* ¶ 35); and "information disclosing the pet's name, the appointment's location, the appointment's time, the reason for the visit, and the owner's first name, last name, email address,



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

and phone number" (*id.* ¶ 27). Such allegations are insufficient to show "contents" within the scope of CIPA. Plaintiffs do not allege that any user-generated material akin to the words of a text message were intercepted, but instead that record information was intercepted, which although may be considered personally identifiable information, does not amount to the "contents" of a message. *See In re Zynga Priv. Litig.*, 750 F.3d at 1107 (explaining that "[t]here is no language in [the statute] equating 'contents' with personally identifiable information").

Second, plaintiffs fail to allege sufficient facts to establish that their communications were intercepted while "in transit" under clause two of § 631(a). In order for a communication to be intercepted while "in transit," the communication "must be acquired during transmission, not while it is in electronic storage." *Pena v. GameStop, Inc.*, No. 22-cv-1635 JLS (MDD), 2023 WL 3170047, at *5 (S.D. Cal. April 27, 2023). Thus, the "crucial question" is whether the communication at issue was read "while it was still in transit, *i.e.* before it reached its intended recipient." *Mastel v. Miniclip SA*, 549 F.Supp.3d 1129, 1137 (E.D. Cal. 2021).

Here, plaintiffs allege that their communications were intercepted consistent with the following example:

> Take an individual who navigates to banfield.com and clicks on a tab to browse medication. Once that tab is clicked, the individual's browser <u>*sends a GET request to Defendant's server*</u> requesting that server to load the particular webpage. Because Defendant utilizes the Facebook Tracking Pixel, Facebook's embedded code, written in JavaScript, sends secret instructions <u>*back to the individual's browser*</u>, without alerting the individual that this is happening. Facebook causes the browser to secretly duplicate the communication with Defendant, transmitting it to Facebook's servers, alongside additional information that transcribes the communication's content and the individual identity.

(Compl. ¶ 19; emphases added.) Accordingly, plaintiffs' allegations indicate that "Facebook causes the browser to secretly duplicate the communication" only <u>*after*</u> plaintiffs' communication reached its intended destination—Banfield's or VCA's servers. Plaintiffs



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

therefore have failed to plead that any alleged contents were intercepted while "in transit" under clause two of § 631(a) as a matter of law.

**B. Plaintiffs fail to state a claim under the third clause of § 631(a) because their claim under the first and second clauses are deficient.**

Plaintiffs fail to state a claim under the third clause of § 631(a) because liability for "us[ing]" or "attempt[ing] to use" information acquired through "the acts or things mentioned above in this section" necessarily means that "[a] violation under the third clause of § 631(a) is contingent upon a finding of a violation of the first or second clause of § 631(a)." *Swarts v. Home Depot, Inc.*, No. 23-cv-0995-JST, 2023 WL 5615453, at *6 (N.D. Cal. Aug. 30, 2023). As explained above, plaintiffs fail to state a claim for violations of the first two clauses of § 631(a). Therefore, plaintiffs have failed to plead a violation of third clause of § 631(a). *In re Google Assistant Priv. Litig*, 457 F. Supp. 3d at 827 (concluding the plaintiffs failed to plead a violation of the third clause of § 631(a) where they did not "establish that the information at issue . . . was obtained through a violation of the first or second clauses").

**C. Mars cannot be liable for aiding and abetting under § 631(a) of CIPA because plaintiffs fail to state a claim under any of § 631(a)'s three operative clauses.**

Plaintiffs also fail to state a claim under the fourth clause of § 631(a) for aiding and abetting liability against Mars because they failed to sufficiently allege facts necessary to maintain a claim under any of the first three clauses of § 631(a). Plaintiffs appear to allege liability against Mars only under the fourth clause of § 631(a), alleging:

> At all relevant times, Defendant aided, agreed with, and conspired with Facebook to track and intercept Plaintiffs' and Class members' internet communications while accessing its websites.



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

(Compl. ¶ 77.)[6]

The fourth clause of § 631(a) provides that a party can be vicariously liable where it "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things" prohibited in the first three clauses. As explained above, plaintiffs fail to state a claim under the first three clauses of § 631(a) because: (1) plaintiffs' alleged communications do not involve a telephone; and (2) plaintiffs do not allege sufficient facts to support that their allegedly communications amounted to "content" or were obtained by a third party "while in transit." Thus, because plaintiffs fail to allege facts sufficient to support claims under the first three clauses of § 631, any claim of liability based on aiding and abetting actions under those clauses cannot be supported as a matter of law. *See James v. Allstate Ins. Co.*, No. 3:23-cv-01931-JSC, 2023 WL 8879246, at *3 n.3 (N.D. Cal. Dec. 22, 2023) (noting that aiding and abetting "[l]iability under clause four only arises based on liability under" one of the prior clauses of § 631(a)); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) (explaining that the defendant was "not liable for aiding and abetting [another's] wrongdoing [under § 631] because there is no wrongdoing").

### D. Plaintiffs do not allege that Mars eavesdropped under § 632 of the CIPA as a matter of law.

Count II of plaintiffs' CIPA claim also fails as a matter of law because they fail to allege sufficient facts rebutting the presumption that online communications on either Banfield's or VCA's website are not "confidential" under § 632. Section 632 imposes liability on

[6] Although plaintiffs allege only aiding and abetting liability under § 631(a) against Mars, even if plaintiffs did allege direct liability against Mars (and Mars was considered an alter ego of Banfield and VCA) under § 631(a), any claim of direct liability would fail as a matter of law because "section 631 . . . has been held to apply only to eavesdropping by a third party and not to recording by a participant to a conversation." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020) (cleaned up).



HOLLAND & KNIGHT LLP
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

> A person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device . . . .

In order for a communication to be considered "confidential" under § 632, a participating party must have "an objectively reasonable expectation that the conversation is not being overheard or recorded." *Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2021 WL 2026726, at *7 (N.D. Cal. May 21, 2021). In interpreting the meaning of "confidential" under § 632, "courts have developed a presumption that Internet communications do not reasonably give rise to that expectation." *Revitch v. New Moosejaw, LLC*, No. 18-cv-06827-VC, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) (collecting cases). Thus, to establish that a party had an "objectively reasonable expectation that the conversation" was not being overheard or recorded, a party must plead "unique, definite circumstances rebutting California's presumption against online confidentiality." *Rodriguez*, 2021 WL 2026726, at *7. To do so, a plaintiff must plead not only a reasonable expectation that their communications would not be recorded by third parties, but that "*nobody* . . . would record the communications." *Id.* (emphasis in original). For example, in *Rodriguez*, the plaintiffs sued Google for wiretapping and eavesdropping on the plaintiffs' communications with third-party applications under § 632 of CIPA. *Id.* at *1. The court concluded that plaintiffs failed to state a claim under § 632 because where plaintiffs could not "plausibly demonstrate an objectively reasonable expectation . . . that *nobody* (including the apps' developers [the intended recipients]) would record the communications," plaintiffs could not rebut the presumption that internet communications are not "confidential" under § 632. *Id.* at *7 (emphasis in original; cleaned up).



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

Here, plaintiffs do not (and cannot) plausibly allege that they had a reasonable expectation that "nobody" would record their online communications with Banfield and VCA. In fact, plaintiffs admit that "Defendant's Terms of Service informs pet owners that, '[i]f you choose to order pet medications or other prescription products via the Sites you are waiving confidentiality of those records, to the extent applicable, with respect of third parties necessary to fill those prescriptions.'" (Compl. ¶ 50; emphasis omitted.) Such a disclosure in the Terms of Service means plaintiffs were at least aware that Banfield and third parties fulfilling prescriptions would record communications. Where plaintiffs admit that they were informed others would have access to records of their interactions with Banfield's website, they cannot plausibly demonstrate that they reasonably expected "nobody" would record the communications. Plaintiffs therefore cannot state a claim for liability under § 632 because their communications were not "confidential" for purposes of that section. Where plaintiffs cannot state a claim for direct liability under § 632, plaintiffs cannot state a claim against Mars for aiding and abetting Facebook's alleged violation of that section.[7]

## CONCLUSION

For the reasons discussed above, Mars respectfully requests that plaintiffs' claims against Mars be dismissed for lack of personal jurisdiction and failure to state a claim.

///

///

[7] Plaintiffs, once again, do not seek direct liability under § 632 against Mars, but for aiding and abetting Facebook's violation of that section. (Compl. ¶¶ 85, 89.) But even if plaintiffs did allege direct liability under § 632 against Mars, such a claim would fail because a party to a communication cannot be held liable for eavesdropping on such a communication. *See Gonzales v. Uber Technologies, Inc.*, 305 F. Supp. 3d 1078, 1089 (N.D. Cal. 2018) (dismissing § 632 claim because defendant rideshare company did not "eavesdrop" on "communications" between its own fake customer accounts and competitor).



HOLLAND & KNIGHT LLP
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

Dated this 26th day of January, 2024.

HOLLAND & KNIGHT LLP

By: *s/ Kristin Asai*

Shannon Armstrong, OSB No. 060113
Email: shannon.armstrong@hklaw.com
Kristin Asai, OSB No. 103286
Email: kristin.asai@hklaw.com
Abigail Gore, OSB No. 205387
Email: abigail.gore@hklaw.com
601 SW Second Avenue, Suite 1800
Portland, OR 97204
Telephone: 503.243.2300
Fax: 503.241.8014

Ashley Shively (*pro hac vice forthcoming)*
Email: ashley.shively@hklaw.com
560 Mission Street, Suite 1900
San Francisco, CA 94105
Telephone: 415.743.6900

*Attorneys for Mars, Incorporated*