**Shannon Armstrong**, OSB No. 060113
shannon.armstrong@hklaw.com
**Kristin Asai**, OSB No. 103286
kristin.asai@hklaw.com
**Abigail Gore**, OSB No. 205387
abigail.gore@hklaw.com
**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, OR 97204
Telephone: 503.243.2300
Fax: 503.241.8014

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

LIZETH JIMENEZ, AYREANNE BORDEAUX, KRYSTINE AQUINO-RORALDO, and REGINA BERRIOS, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

MARS, INC., MARS PETCARE US, INC., MMI HOLDINGS, INC., MEDICAL MANAGEMENT INTERNATIONAL, INC. d/b/a BANFIELD PET HOSPITAL, and VCA INC.,

Defendants.

Case No. 3:23-cv-01786-YY

**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Pursuant to Fed. R. Civ. P. 12(b)(2), Fed. R. Civ. P. 12(b)(6)

ORAL ARGUMENT REQUESTED

## TABLE OF CONTENTS

Page

INTRODUCTION ..... 1

BACKGROUND ..... 3

I. Each defendant is a separate legal entity within the Mars corporate family. ..... 3

II. Plaintiffs allege illegal wiretapping on Banfield's or VCA's website, not any other defendant's websites. ..... 5

III. Plaintiffs' claims rely on the Terms and Conditions of Banfield's and VCA's websites, not any other defendant's websites. ..... 6

IV. The plain language of VCA's and Banfield's privacy policies discloses that website users' customer records may be shared with third parties. ..... 6

V. The Terms and Conditions for Banfield's and VCA's websites are governed by separate governing law and venue provisions. ..... 7

LEGAL STANDARDS ..... 9

I. Lack of Personal Jurisdiction under Rule 12(b)(2) ..... 9

II. Failure to State a Claim under Rule 12(b)(6) ..... 10

ARGUMENT ..... 11

I. Plaintiffs' claims against Mars, Mars Petcare, MMI Holdings, and VCA should be dismissed because plaintiffs fail to allege sufficient facts to assert personal jurisdiction against those defendants in Oregon. ..... 12

A. Plaintiffs fail to allege facts supporting that any defendant purposefully directed any relevant activity toward Oregon. ..... 14

B. Plaintiffs admit that their claims, all of which are brought under California law, do not arise out of or relate to any defendant's contacts with Oregon. ..... 16

C. Plaintiffs fail to allege facts supporting alter ego jurisdiction as to Mars, Mars Petcare, or MMI Holdings. ..... 18

1. Plaintiffs fail to allege that Mars, Mars Petcare, MMI Holdings, Banfield, and VCA have such a unity of interest that they can no longer be considered separate companies. ..... 19

2. Plaintiffs fail to allege that Mars created any of its subsidiaries for fraudulent purposes. ..... 25

II. Mars, Mars Petcare, and MMI Holdings should be dismissed because plaintiffs do not allege sufficient facts to pierce the corporate veil and hold them liable for the alleged actions of Banfield and VCA. ..... 26

III. The Court should dismiss VCA because this Court is an improper venue for plaintiffs' claims against VCA. ..... 29



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

IV. Plaintiffs' claims relating to Banfield's website should be dismissed because CIPA does not apply to Banfield's website. ....31

V. Plaintiffs' claims should be dismissed because plaintiffs fail to allege a plausible claim of illegal wiretapping or eavesdropping under CIPA. ....32

A. Plaintiffs do not allege that Banfield or VCA engaged in wiretapping under § 631 as a matter of law. ....32

1. Plaintiffs fail to state a claim under the second clause of § 631(a) because plaintiffs fail to plead a lack of consent to the sharing of their customer records with third parties like Facebook. ....32

2. Plaintiffs fail to state a claim under the third clause of § 631(a) because their claim under the second clause is deficient. ....36

3. Defendants cannot be liable for aiding and abetting under § 631(a) of CIPA because plaintiffs fail to state a claim under any of § 631(a)'s three operative clauses. ....37

B. Plaintiffs do not allege that Banfield or VCA eavesdropped under § 632 of CIPA and any such claim would fail as a matter of law. ....38

CONCLUSION ....39



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acrymed, Inc. v. Convatec*,
317 F. Supp. 2d 1204 (D. Or. 2004) ....................22, 26, 27, 29

*Al-Ahmed v. Twitter, Inc.*,
603 F. Supp. 3d 857 (N.D. Cal. 2022) ....................7, 29

*Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*,
94 F.3d 586 (9th Cir. 1996) ....................18, 19

*Amfac Foods, Inc. v. Int'l Sys. & Controls Corp.*,
294 Or. 94 (1982)....................18, 19, 21, 29

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................10

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
571 U.S. 49 (2013)....................30

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1988) ....................10

*Bates v. Bankers Life & Cas. Co.*,
993 F. Supp. 2d 1318 (D. Or. 2014) ....................13, 19

*Briskin v. Shopify, Inc.*,
87 F.4th 404 (9th Cir. 2023) ....................16, 17

*Cai v. DaimlerChrysler AG*,
480 F. Supp. 2d 1245 (D. Or. 2007) ....................22

*Calhoun v. Google, LLC*,
645 F. Supp. 3d 916 (N.D. Cal. 2022) ....................33, 35

*Chien v. Bumble Inc.*,
641 F. Supp. 3d 913 (S.D. Cal. 2022)....................21

*City of Salem v. H.S.B*,
302 Or. 648 (1987)....................18

*Corcoran v. CVS Health Corp.*,
169 F. Supp. 3d 970 (N.D. Cal. 2016) ....................24



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

*Cox v. HP Inc.*,
368 Or. 477 (2021)....................9

*Docksider, Ltd. v. Sea Tech., Ltd.*,
875 F.2d 762 (9th Cir. 1989) ....................30

*Doe v. Unocal Corp.*,
248 F.3d 915 (9th Cir. 2001) ....................19

*Eclipse Grp. LLP v. Target Corp.*,
No. 15-cv-1411-JLS-BLM, 2016 WL 8395077 (S.D. Cal. May 26, 2016)....................9

*Fleet v. Trion Worlds, Inc.*,
No. 15-cv-04721-WHA, 2016 WL 122855 (N.D. Cal. Jan. 12, 2016)....................30

*Garcia v. Enter. Holdings, Inc.*,
78 F. Supp. 3d 1125 (N.D. Cal. 2015) ....................32, 34

*Gonzales v. Uber Techs., Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018) ....................38

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N. D. Cal. 2020) .................... 36

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ....................37, 38

*Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*,
397 F.3d 1217 (9th Cir. 2005) ....................21, 28

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ....................32

*Holt v. Urban League of Portland, Inc.*,
No. 3:22-cv-00837-YY, 2023 WL 2433721 (D. Or. Feb. 17, 2023)....................18, 22

*James v. Allstate Ins. Co.*,
No. 3:23-cv-01931-JSC, 2023 WL 8879246 (N.D. Cal. Dec. 22, 2023)....................37

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001) ....................10

*LNS Enters. LLC v. Cont'l Motors, Inc.*,
22 F.4th 852 (9th Cir. 2022) ....................9

*M/S Bremen v. Zapata Off-Shore Co.*,
407 U.S. 1 (1972)....................30



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

*Mars, Inc. v. Trurx LLC*,
No. 6:13-cv-526-RWS-KNM, 2016 WL 4034803 (E.D. Tex. Mar. 14, 2016) ........................20

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .........................................................................36

*MMI, Inc. v. Baja, Inc.*,
743 F. Supp. 2d 1101 (D. Ariz. 2010) .........................................................................23

*State ex rel. Neidig v. Superior Nat. Ins. Co.*,
343 Or. 434 (2007)...........................................................................................23, 27

*Palomino v. Facebook, Inc.*,
No. 16-cv-04230-HSG, 2017 WL 76901 (N.D. Cal. Jan. 9, 2017) ........................................31

*Ranza v. Nike, Inc.*,
793 F.3d 1059 (9th Cir. 2015) ........................................................................ *passim*

*Schwartz v. Christiana Tr.*,
No. 3:15-cv-02075-PK, 2016 WL 3512441 (D. Or. June 2, 2016) ........................................10

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ..........................................................................14, 15

*Smith v. Facebook*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) .........................................................................33

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) ........................................................................................10

*Sundberg v. Joint Apprenticeship Training Comm. of NW Line Constr. Indus.*,
No. 3:17-cv-01360-JR, 2018 WL 7108064 (D. Or. Dec. 4, 2018).............................18, 25, 26

*Swarts v. Home Depot, Inc.*,
No. 23-cv-0995-JST, 2023 WL 5615453 (N.D. Cal. Aug. 30, 2023)...............................14, 36

*Talyancich v. Microsoft Corp.*,
No. CV-12-00483-GAF-FMOX, 2012 WL 1563884 (C.D. Cal. Mar. 28, 2012)....................30

*U.S. v. Bestfoods*,
524 U.S. 51 (1998)...........................................................................................23, 26

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) ........................................................................................10

*Weston Fam. P'ship LLLP v. Twitter, Inc.*,
29 F.4th 611 (9th Cir. 2022) ........................................................................................10



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

*Yuksel v. Twitter, Inc.*,
No. 22-CV-05415-TSH, 2022 WL 16748612 (N.D. Cal. Nov. 7, 2022) ............................7, 29

**Statutes**

Cal. Penal Code § 631 ............................................................................................ *passim*

Cal. Penal Code § 632 ............................................................................................ *passim*

Cal. Bus. & Prof. Code § 4857(a) ..............................................................................35

**Other Authorities**

45 C.F.R. § 164.508(c)(1) ........................................................................................36

Fed. R. Civ. P. 12(b)(2) .........................................................................................1, 9

Fed. R. Civ. P. 12(b)(6) .........................................................................................1, 10



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

**CERTIFICATE OF COMPLIANCE WITH LR 7-1**

Pursuant to LR 7-1, counsel for defendants certifies that she conferred with plaintiffs' counsel concerning the subject of this motion and the parties were unable to resolve this dispute. During the conferral, plaintiffs conceded that they are not asserting liability against any defendant for violation of the first clause of § 631(a) of the California Invasion of Privacy Act, because plaintiffs do not allege the wiretapping of communications over a telegraph or telephone, and therefore defendants have omitted that issue from this motion.

**MOTIONS**

Defendants Mars, Incorporated ("Mars"), Mars Petcare US, Inc. ("Mars Petcare"), MMI Holdings, Inc. ("MMI Holdings"), and VCA Inc. ("VCA") move to dismiss all claims against them pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. In other words, the only defendant that could be subject to personal jurisdiction in this Court is Medical Management International, Inc. d/b/a Banfield Pet Hospital ("Banfield").

In addition, defendants move to dismiss all claims against them pursuant to Fed. R. Civ. P. 12(b)(6) because plaintiffs fail to state a claim for relief against defendants.

**MEMORANDUM OF LAW**

**INTRODUCTION**

Plaintiffs (who are all California residents) initiated this class action against Mars and four entities owned by Mars—Mars Petcare, MMI Holdings, Banfield, and VCA—alleging violations of the California Invasion of Privacy Act, Cal. Penal Code §§ 631, 632 ("CIPA") based on the use of the Facebook[1] Pixel ("Pixel") on the Banfield and VCA websites that they

[1] In October 2021, Facebook, Inc. changed its name to Meta Platforms, Inc. Unless otherwise indicated, Facebook, Inc. and Meta Platforms, Inc. are referenced collectively as "Facebook."



HOLLAND & KNIGHT LLP
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

visited. Plaintiffs, however, do not allege they *ever* directly interacted with Mars, Mars Petcare, or MMI Holdings, or that the Pixel was imbedded on any of those entities' websites. Plaintiffs also do not allege that any of those defendants (or even plaintiffs themselves) have any relationship to Oregon, where this lawsuit is pending. Instead, plaintiffs allege that Mars, Mars Petcare, and MMI Holdings should be held liable in Oregon for Banfield's and VCA's conduct of allegedly imbedding the Pixel into Banfield's or VCA's independent websites based on allegations that all Mars-owned companies have a "unity of interest." (*See* First Am. Compl., Dkt. # 13 ("FAC") ¶¶ 15, 109.) Plaintiffs are wrong and their claims should be dismissed in their entirety for four independent reasons.

First, based on the face of the complaint, plaintiffs do not allege sufficient facts to establish personal jurisdiction in this Court as to Mars, Mars Petcare, MMI Holdings, or VCA, which have no relevant connection to Oregon. Plaintiffs merely rely on Banfield's and VCA's unrelated connection to Oregon—because Banfield and VCA operate some pet clinics in Oregon—to impute personal jurisdiction against all the other defendants. Plaintiffs fail to meet the high burden to pierce the corporate veil between these entities, and therefore plaintiffs' claims against Mars, Mars Petcare, MMI Holdings, or VCA should be dismissed for lack of jurisdiction.

Second, even if plaintiffs had alleged sufficient facts to establish personal jurisdiction, plaintiffs fail to state a plausible theory of liability against Mars, Mars Petcare, or MMI Holdings, which is based solely on their related ownership to Banfield and VCA. Again, plaintiffs fail to plead sufficient facts to pierce the corporate veil as to Mars, Mars Petcare, or MMI Holdings, and therefore plaintiffs cannot assert claims against them that rely solely on the conduct of Banfield and VCA.



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

Third, plaintiffs also fail to state a plausible claim under CIPA because under the plain language of the terms and conditions of Banfield's and VCA's websites, which plaintiffs expressly rely upon to establish their privacy expectations on those websites, those terms preclude plaintiffs from bringing their CIPA claims in this Court.

Finally, plaintiffs' CIPA claims should be dismissed as a matter of law because plaintiffs fail to allege facts supporting key elements of their claims, including a lack of consent to the disclosure of their allegedly private communications. For each of those reasons, plaintiffs' claims against all defendants should be dismissed.

## BACKGROUND

### I. Each defendant is a separate legal entity within the Mars corporate family.

Defendants allege that Mars "is the parent company" of Mars Petcare, MMI Holdings, Banfield, and VCA. (FAC ¶ 2.) However, each defendant is a distinct legal entity.

For example, defendant Mars is a Delaware corporation with its principal place of business in Virginia. (FAC ¶ 10.) Mars owns several brands, including multiple pet care brands, like Banfield and VCA, as well as numerous snacking, food, and nutrition brands. *See* Mars "Our Brands" page, https://www.mars.com/our-brands (last visited April 26, 2024).

Defendant Mars Petcare is a manufacturer of pet food products under brands such as Pedigree, Sheba, and Cesar as part of Mars's Pet Nutrition division. (Decl. of Michael Hinds in Support of Motion to Dismiss for Lack of Jurisdiction ("Hinds Decl.") ¶ 8.) Mars Petcare is a Delaware corporation with its principal place of business in Tennessee. (FAC ¶ 10.) Mars Petcare is not a direct parent company of either Banfield or VCA, and has no relationship to the



HOLLAND & KNIGHT LLP
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

operation of Banfield or VCA, including their respective animal hospital facilities or websites.[2] (Hinds Decl. ¶ 8.)

Defendant MMI Holdings is a Delaware corporation with its principal place of business in Washington, which acts as the holding company of Banfield and VCA. (*Id.* ¶ 6; Decl. of Steve Speredelozzi in Support of Motion to Dismiss for Lack of Jurisdiction ("Speredelozzi Decl.") ¶ 7; FAC ¶ 11.) Other than its status as a holding company for Banfield and VCA, MMI Holdings has no relationship to the operation of Banfield's or VCA's websites. (Hinds Decl. ¶ 7; Speredelozzi Decl. ¶ 7.)

Defendant Banfield operates animal hospitals across the nation, including 29 locations in Oregon. (Hinds ¶ 3.) Banfield is a Delaware corporation with its principal place of business in Washington. (FAC ¶ 12.) Banfield has its own executive team, separate from Mars's executives, that controls Banfield's day-to-day operations. (Hinds Decl. ¶ 4.) Although Mars provides some overhead human resources and information technology ("IT") support to Banfield, Banfield handles all of its personnel decisions, including interviewing, hiring, training, and managing its employees. (*Id.*) Banfield also manages and operates its own website, independent of Mars or MMI Holdings. (*Id.* ¶ 5.) Banfield's website links to some policies on Mars's website to support consistent policies across the Mars family of brands, but otherwise Banfield's website is governed by its own terms and conditions. (*Id.*)

[2] It appears that the FAC named "Mars Petcare" as a defendant based on plaintiffs' confusion between the legal entity "Mars Petcare US, Inc." and the marketing term "Mars Petcare" on Mars's website. (*See* FAC ¶ 10.) Any reference to "Mars Petcare" in Mars's public relations materials, including the website relied upon in footnote six of plaintiffs' First Amended Complaint, references Mars Petcare as the global petcare division of Mars, not the legal entity "Mars Petcare US, Inc.," which owns only pet nutritional brands and has no relationship to the allegations in this case. (Hinds Decl. ¶¶ 8, 9.)



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

Defendant VCA is a family of animal hospitals across the nation that has 20 locations in Oregon. (Speredelozzi Decl. ¶ 3.) VCA is a Delaware corporation with its principal place of business in California. (FAC ¶ 13.) VCA has its own executive team, separate from Mars's executives, that controls VCA's day-to-day operations. (*Id.* ¶ 4.) Like Banfield, Mars provides some overhead human resources and IT support to VCA, but VCA handles all of its personnel decisions, including interviewing, hiring, training, and managing its employees. (*Id.* ¶ 4.) VCA also manages and operates its own website, independent of Mars. (*Id.* ¶ 5.)

## II. Plaintiffs allege illegal wiretapping on Banfield's or VCA's website, not any other defendant's websites.

Plaintiffs' claims relate to their use of only two defendants' websites: Banfield or VCA. (FAC ¶¶ 5–8.) Plaintiffs allege that they each intentionally interacted with Banfield's or VCA's websites to schedule vet appointments, purchase medication for their pets, or check their pet's veterinary records. (*Id.*) Plaintiffs do not allege that they interacted with Mars's, Mars Petcare's, or MMI Holdings's websites or had any interactions directly with Mars, Mars Petcare, or MMI Holdings. Plaintiffs allege that because Mars Petcare, MMI Holdings, Banfield, and VCA are "wholly owned by Mars[,] . . . all contacts and actions by [those companies] can be imputed onto Mars." (FAC ¶ 97.)

Plaintiffs therefore allege that, by virtue of being related companies, all defendants "aided, agreed with, employed, permitted, or otherwise enabled Facebook to wiretap Plaintiffs['] and Class Members[']" communications with Banfield and VCA's websites "in California, where Plaintiffs and Class Members accessed the Banfield and VCA Website and where Facebook—as enabled by [all defendants]—routed Plaintiffs' and Class Members' electronic communications [to] its servers." (FAC ¶¶ 127, 129.) According to plaintiffs, that conduct violates § 631 of CIPA. (FAC ¶¶ 119–30.)



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

Plaintiffs also allege that Facebook, which is not a defendant in this lawsuit, violated § 632 of CIPA. (FAC ¶¶ 131–40.) Plaintiffs do not allege that any named defendant directly violated § 632 of CIPA or aided and abetted Facebook's violations of § 632 of CIPA.

## III. Plaintiffs' claims rely on the Terms and Conditions of Banfield's and VCA's websites, not any other defendant's websites.

Plaintiffs allege that they did not consent to the disclosure of their communications with Banfield's and VCA's websites based on the language of Banfield's and VCA's respective "Terms of Service." (FAC ¶ 84 n.60.) Plaintiffs do not cite or rely upon any terms applicable to Mars's, Mars Petcare's, or MMI Holdings's websites.

Specifically, plaintiffs cite Banfield's and VCA's Terms of Service and allege that based on those terms, Banfield and VCA inform "pet owners that '[i]f you choose to order pet medications or other prescription products via the Sites you are waiving confidentiality of those records, to the extent applicable, with respect of third parties necessary to fill those prescriptions." (*Id.* ¶ 84 (emphasis omitted).) However, plaintiffs allege that "Facebook has no role in filling out prescriptions." (*Id.* ¶ 84.) Relying on screenshots from Banfield's and VCA's Terms of Service, plaintiffs also allege that defendants "will refrain from collecting personally identifiable information" and that the Pixel will "not store directly personal information, but [is] based on uniquely identifying your browser and internet device." (*Id.* ¶ 85.)

## IV. The plain language of VCA's and Banfield's privacy policies discloses that website users' customer records may be shared with third parties.

Banfield's and VCA's Terms and Conditions also incorporate privacy policies. (*See* FAC ¶ 107 ("[B]oth the Banfield Website and VCA Website contain privacy-related policies and notices created by Mars. . ."). Through those privacy policies, Banfield and VCA notify users of the release of their customer information, including "customer records" and "purchase history"



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

to third parties, including "social networks." (Decl. of Kristin Asai in Supp. of Defs.' Mot. to Dismiss ("Asai Decl.") ¶ 2; Ex. 3 at 7; Ex. 4 at 7, 14.)

For example, VCA's Privacy Policy, as linked in its Terms of Service, provides that VCA shares certain information with third party "service providers," including information "when you purchase goods and services at any of our retail locations, including our veterinary hospitals or online." (*Id.*, Ex. 4 at 9–10.) VCA explains that it uses that information to "provide and improve the features, products and services you request; to provide you with personalized contact . . . and/or to deliver relevant advertising." (Ex. 4 at 9.)[3]

VCA's and Banfield's Terms and Conditions also link directly to Mars's Privacy Policy, which provides that VCA and Banfield "share customer records" including "[p]urchase history" and "other data about your transactions with us," "with third parties like advertising networks, data analytics providers, operating systems and platforms, and social networks for the business and commercial purposes provided herein, namely, for purposes of targeted advertising." (*Id.*, Ex. 3 at 7; *see also* Ex. 1 at 2; Ex. 2 at 1.)

## V. The Terms and Conditions for Banfield's and VCA's websites are governed by separate governing law and venue provisions.

Although plaintiffs lump together Banfield's and VCA's websites, and their applicable Terms and Conditions, Banfield and VCA have materially different governing law and venue provisions in their respective terms. Specifically, Banfield's Terms and Conditions are governed by Oregon law and require exclusive jurisdiction for any dispute relating to Banfield's website in Oregon:

---

[3] This Court can take judicial notice of the applicable website terms and privacy policies as part of this motion. *See, e.g.*, *Al-Ahmed v. Twitter, Inc.*, 603 F. Supp. 3d 857, 869 (N.D. Cal. 2022) (holding that publicly available terms of service for a party's website are appropriate for judicial notice); *Yuksel v. Twitter, Inc.*, No. 22-CV-05415-TSH, 2022 WL 16748612, at *2 (N.D. Cal. Nov. 7, 2022) (same).



HOLLAND & KNIGHT LLP
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

> Welcome to Banfield Pet Hospital®! These are the specific terms and conditions regarding your use of Banfield's websites and any online or mobile application (each an "App") that run on any smart phones, tablets or other devices, that link to these terms, including without limitation Banfield.com and the Banfield Pet Hospital Mobile Application (collectively, the "Sites"). Through the Sites, we, Medical Management International, Inc., dba Banfield Pet Hospital ("Banfield"), offer information and communications services and related products that we hope you will find helpful, entertaining, and informative. There are a few rules of the (cyber) road that our visitors must follow when using our Sites, so we ask all our visitors to read these General Terms and Conditions ("Agreement") carefully.
>
> * * *
>
> This Agreement and all transactions contemplated hereby shall be deemed made and entered into in the State of Delaware and *<u>shall be governed by the internal laws of the State of Oregon</u>*, but excluding its and all other jurisdictions choice of law principles. *<u>You agree to and submits to the exclusive jurisdiction of courts of or in the State of Oregon over any disputes under this Agreement and waive any objection to the jurisdiction.</u>*

(*Id.*, Ex. 1 at 1, 17 (emphases added).)

In contrast, VCA's Terms and Conditions are governed by California law and require exclusive jurisdiction for any dispute relating to VCA's website in Los Angeles, California:

> These are the specific terms and conditions regarding your use of VCA's websites and any online or mobile application (each an "App") that run on any smart phones, tablets or other devices, that link to these terms of use, including without limitation vca.com, vcahospitals.com and the myVCA™ App (collectively, the "Sites").
>
> Your use of all content and collective works comprising the Site, including all data, software, photographs, videos, stories, articles, sounds, music, artwork, graphics and other information and materials (collectively "Content"), and any products or services made available through the Sites are subject to these terms of use. Your use of any Site constitutes your agreement to comply with all terms, conditions and legal notices contained herein (these "Terms of Use") in addition to any other terms, conditions and legal notices that may appear on or within any Site.
>
> * * *



HOLLAND & KNIGHT LLP
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

> To the maximum extent permitted by law, these Terms of Use shall be governed by and construed in accordance *with the laws of the State of California* without regard to its conflict of law rules, provided that for residents of Quebec, the laws of the Province of Quebec will apply. Except for residents of Quebec, *any legal proceeding arising out or relating to these Terms of Use against or relating to VCA will be subject to the exclusive jurisdiction of any state or federal court sitting in Los Angeles County, California and you irrevocably consent to the jurisdiction of such courts.*

(*Id.*, Ex. 2 at 1, 8 (emphases added).)

## LEGAL STANDARDS

### I. Lack of Personal Jurisdiction under Rule 12(b)(2)

A party may move to dismiss under Rule 12(b)(2) for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). The Due Process Clause of the Fourteenth Amendment to the United States Constitution requires that a non-resident defendant have "certain minimum contacts with a forum state before that state can exercise personal jurisdiction over that individual or entity." *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 858 (9th Cir. 2022) (cleaned up). This Court looks to Oregon state law to determine the bounds of personal jurisdiction in this case. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015). Because Oregon law authorizes personal jurisdiction to the full extent permitted by the U.S. Constitution, this Court must determine whether exercising jurisdiction "comports with the limits imposed by federal due process." *Id.* (cleaned up); *see also Cox v. HP Inc.*, 368 Or. 477, 480–81 (2021) (noting that because Oregon's long-arm statute "confers jurisdiction to the extent permitted by due process," the court's "inquiries under [the long-arm statute] and the Due Process Clause collapse into one").

A Rule 12(b)(2) challenge to personal jurisdiction "may attack the legal theory supporting jurisdiction based on the facts as pleaded (a facial attack) or the facts themselves (a factual attack)." *Eclipse Grp. LLP v. Target Corp.*, No. 15-cv-1411-JLS-BLM, 2016 WL



HOLLAND & KNIGHT LLP
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

8395077, at *7 (S.D. Cal. May 26, 2016). Here, defendants assert both a facial and factual challenge to plaintiffs' allegations of personal jurisdiction.

## II. Failure to State a Claim under Rule 12(b)(6)

Under Rule 12(b)(6), a complaint should be dismissed if it fails to include "enough facts to state a claim to relief that is plausible on its face." *Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 617 (9th Cir. 2022) (cleaned up). A complaint's claims are plausible when the pleaded facts "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (cleaned up). The allegations "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Although the pleading standard in Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Dismissal under Rule 12(b)(6) "can [also] be based on the lack of a cognizable legal theory . . . ." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (cleaned up). However, a court may consider materials that are attached to or necessarily relied upon in the complaint, as well as matters of public record as part of a Rule 12(b)(6) motion. *Id.* at 688–89. The "incorporation by reference" doctrine permits courts "to consider documents that are incorporated by reference into a plaintiff's complaint." *Schwartz v. Christiana Tr.*, No. 3:15-cv-02075-PK, 2016 WL 3512441, at *3 (D. Or. June 2, 2016). Courts may take also judicial notice of facts that are "not subject to reasonable dispute" because they are "capable of



HOLLAND & KNIGHT LLP
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." *United States v. Ritchie*, 342 F.3d 903, 908–09 (9th Cir. 2003) (cleaned up).

## ARGUMENT

Plaintiffs' claims against all defendants should be dismissed for multiple reasons. First, plaintiffs fail to allege any basis to exercise personal jurisdiction over Mars, Mars Petcare, MMI Holdings, or VCA. Therefore, all claims against those defendants should be dismissed for lack of jurisdiction. Second, plaintiffs fail to plead sufficient facts to support piercing Banfield's and VCA's corporate veils so as to hold Mars, Mars Petcare, and MMI Holdings liable for Banfield's or VCA's conduct. Third, plaintiffs' claims against VCA fail because they rely on VCA's Terms and Conditions, which contain a California forum selection provision and therefore cannot be asserted in this Court. Fourth, plaintiffs' CIPA claims against Banfield, which arise under California law, fail because Banfield's Terms and Conditions that govern plaintiffs' claims require that Oregon (not California) law applies to those claims. Finally, even if plaintiffs could surmount those key procedural hurdles, plaintiffs' CIPA claims fail as a matter of law because they fail to state a claim under CIPA.

Defendants' arguments as applied to specific entities are summarized in the following chart:

| | **Mars** | **Mars Petcare** | **MMI** | **VCA** | **Banfield** |
|---|---|---|---|---|---|
| Lack of personal jurisdiction (12(b)(2)) | X | X | X | X | |
| Failure to state a claim—no alter ego (12(b)(6)) | X | X | X | | |
| Failure to state a claim—wrong forum (12(b)(6)) | | | | X | |
| Failure to state a claim arising from Banfield's website because CIPA does not apply (12(b)(6)) | X | X | X | | X |



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

| | Mars | Mars Petcare | MMI | VCA | Banfield |
|---|---|---|---|---|---|
| Failure to state a claim – failure to allege plausible CIPA claims (12(b)(6)) | X | X | X | X | X |

**I. Plaintiffs' claims against Mars, Mars Petcare, MMI Holdings, and VCA should be dismissed because plaintiffs fail to allege sufficient facts to assert personal jurisdiction against those defendants in Oregon.**

Plaintiffs (who are all California residents) fail to allege sufficient facts to support this Court's jurisdiction over their California-based claims against out-of-state defendants Mars, Mars Petcare, MMI Holdings, and VCA.[4] Plaintiffs' claims against these defendants solely relate to alleged violations of California law that occurred in California and have no relationship to defendants' alleged contacts with Oregon. (FAC ¶¶ 5–8, 82, 129.) As a result, all claims against Mars, Mars Petcare, MMI Holdings, and VCA should be dismissed.

To support a Court's exercise of specific personal jurisdiction over a defendant, due process requires that a defendant "'have certain minimum contacts' with the forum state 'such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Ranza*, 793 F.3d at 1068 (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).[5] A defendant has sufficient minimum contacts with a forum to support specific personal

[4] This Court has sufficient personal jurisdiction over the remaining out-of-state defendant, Banfield, due to the forum selection clause in Banfield's Terms and Conditions, which provides that users of its website "agree to and submit[] to the exclusive jurisdiction of courts of or in the State of Oregon over any disputes under this Agreement and waive any objection to the jurisdiction." (Asai Decl., Ex. 1 at 17; FAC ¶ 84 n.60.) However, as described below, plaintiffs cannot assert their California statutory claims against Banfield in this Court.

[5] As plaintiffs do not allege that Mars, Mars Petcare, MMI Holdings, Banfield, or VCA are "at home" in Oregon or that any of those entities have their "place of incorporation [or] its principal place of business" in Oregon, there is no plausible basis for general personal jurisdiction here. *See Ranza*, 793 F.3d at 1068–69 (setting forth test for establishing general personal jurisdiction over a defendant).



HOLLAND & KNIGHT LLP
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

jurisdiction when three elements are met: (1) the non-resident defendant "purposefully direct[s] his activities or consummate[s] some transaction with the forum or resident thereof; or perform[s] some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws"; (2) the claim is one which "arises out of or relates to the defendant's forum-related activities"; and (3) the exercise of jurisdiction "comport[s] with fair play and substantial justice, *i.e.*, it must be reasonable." *Bates v. Bankers Life & Cas. Co.*, 993 F. Supp. 2d 1318, 1333 (D. Or. 2014).

Plaintiffs fail to meet any of those elements. Plaintiffs generally group all defendants together for the purposes of personal jurisdiction and allege that

> [t]his Court has personal jurisdiction over Defendants because, as alleged in more detail below, Defendants purposefully availed themselves of this forum by conducting substantial business within Oregon such that Defendants have significant, continuous, and pervasive contacts with the State of Oregon. Further, Defendants Banfield and VCA have numerous Oregon locations and their forum contacts may be imputed to the other Defendants (with whom they share a unity of interest and for whom they are alter egos).

(FAC ¶ 15.)

Those allegations are insufficient to support personal jurisdiction over Mars, Mars Petcare, MMI Holdings, or VCA. First, plaintiffs fail to allege that Banfield[6] or VCA purposefully directed their activities toward Oregon in a way that caused any relevant harm that those entities knew was likely to be suffered in Oregon. Second, plaintiffs' claims do not arise out of or relate to any defendant's alleged activities in Oregon. And, third, plaintiffs do not plead

---

[6] As explained above, this Court has specific personal jurisdiction over Banfield through the forum selection provision of Banfield's Terms and Conditions. Defendants discuss the sufficiency of Banfield's other contacts with Oregon not to dispute this Court's jurisdiction over Banfield, but to challenge plaintiffs' contention that those other contacts (namely, operating animal hospitals in Oregon) can be imputed to the other defendants in order to establish personal jurisdiction over Mars, Mars Petcare, and MMI Holdings for the purposes of plaintiffs' California-based claims.



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

facts sufficient to support that this Court can exercise personal jurisdiction over Mars, Mars Petcare, or MMI Holdings because those separate entities are allegedly "alter egos" of Banfield and VCA.

### A. Plaintiffs fail to allege facts supporting that any defendant purposefully directed any relevant activity toward Oregon.

Plaintiffs' CIPA claims sound in tort and require plaintiffs to show that each defendant purposefully directed its activities toward the forum state—here, Oregon. *See Swarts v. Home Depot, Inc.*, No. 23-cv-0995-JST, 2023 WL 5615453, at *3 (N.D. Cal. Aug. 30, 2023) (explaining that CIPA claims "sound in tort" and courts therefore apply "a purposeful direction analysis" rather than a purposeful availment analysis). Courts engage in a three-step inquiry to determine whether a defendant purposefully directed its activities toward the forum: "the defendant allegedly [must] have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 803 (9th Cir. 2004). That "effects" test "focuses on the forum in which the defendant's actions were felt, whether or not the actions occurred within the forum." *Swarts*, 2023 WL 5615453, at *3. In particular, with regard to the third element of the purposeful direction test, "'[a] defendant causes harm in a particular forum when the 'bad acts' that form the basis of the plaintiff's complaint occur in that forum.'" *Id.* (quoting *Will Co. v. Lee*, 47 F.4th 917, 922 (9th Cir. 2022).)

Plaintiffs fail to allege that Banfield or VCA purposefully directed their relevant activities toward Oregon for two reasons. First, plaintiffs admit that defendants' relevant "conduct at issue" is the operation and control of "both the Banfield Website and VCA Website." (FAC ¶ 107.) To exercise jurisdiction over defendants in Oregon based on that alleged conduct, the "effects test" focuses on the "forum in which the defendant's actions were felt." *Swarts*, 2023



HOLLAND & KNIGHT LLP
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

WL 5615453, at *3. Plaintiffs allege, however, that "[t]he wiretapping of Plaintiffs and Class Members occurred in California, where Plaintiffs and Class Members accessed the Banfield and VCA Website . . . ." (FAC ¶ 129.) Plaintiffs' allegations that the effects of Banfield's and VCA's conduct were felt in California are incompatible with the requirement under the effects test that plaintiffs show that defendants caused harm "that the defendant knows is likely to be suffered *in the forum state*." *Schwarzenegger*, 374 F.3d at 803 (cleaned up). No harm from any plaintiff accessing either Banfield's or VCA's websites is alleged to have been suffered in Oregon. (*See* FAC ¶¶ 5–8.)

Second, plaintiffs' apparent reliance on Banfield's and VCA's "numerous Oregon locations" to support personal jurisdiction over Banfield and VCA also fails to satisfy the purposeful direction test. (*See* FAC ¶ 15.) Once again, to purposefully direct activity at a forum state for purposes of establishing personal jurisdiction, the defendant's conduct aimed at the forum state must "caus[e] harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803. Plaintiffs do not allege that any harm was suffered by the California-based plaintiffs in Oregon as a result of Banfield or VCA treating Oregon animals in Oregon-based animal hospitals. The operation of animal hospitals in Oregon therefore cannot serve as the conduct that supports jurisdiction over Banfield or VCA in Oregon because no harm is alleged to have been caused to plaintiffs by that conduct.

In sum, plaintiffs' allegations are insufficient to show that VCA purposefully directed any relevant conduct to the forum. This court should therefore dismiss VCA for lack of personal jurisdiction. And although plaintiffs can rely on Banfield's Oregon-forum-selection provision to establish jurisdiction over Banfield in this Court, plaintiffs have failed to allege any other conduct by Banfield—either through the operation of its website or animal hospitals in Oregon—



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

establishing that Banfield purposefully directed any activity to Oregon by which plaintiffs suffered any alleged harm in Oregon. As explained below, plaintiffs therefore cannot rely on that specific Oregon-based conduct of Banfield to support jurisdiction over any other defendant, including Mars, Mars Petcare, and MMI Holdings.

### B. Plaintiffs admit that their claims, all of which are brought under California law, do not arise out of or relate to any defendant's contacts with Oregon.

Even if this Court determines that plaintiffs have sufficiently alleged that VCA or Banfield purposefully directed their actions to Oregon (which they have not), plaintiffs' CIPA claims do not arise out of or relate to that Oregon conduct. For specific jurisdiction to exist over each defendant, plaintiffs' claims must arise out of or relate to each defendant's forum-related activities. *Briskin v. Shopify, Inc.*, 87 F.4th 404, 413 (9th Cir. 2023). Alleging that a defendant broadly operates in or has locations in a particular state is insufficient to satisfy the "arise out of or relate to" inquiry. *Id.* at 414. Instead, it is a "claim-tailored inquiry that requires [courts] to examine the plaintiff's specific injury and its connection to the forum-related activities in question." *Id.* at 413.

Here, plaintiffs allege that all activity relevant to their CIPA claims (the extraction and sharing of their data from Banfield's and VCA's websites) occurred in California. Specifically, plaintiffs allege that "*[t]he wiretapping of Plaintiffs and Class Members occurred in California*, where Plaintiffs and class members accessed the Banfield and VCA Website and where Facebook—as enabled by Defendants—routed Plaintiffs' and Class Members' electronic communications [to] its servers." (FAC ¶ 129.) Further, all plaintiffs are alleged to have accessed either Banfield's or VCA's website from California. (FAC ¶¶ 5–8.) To the extent that plaintiffs allege Banfield or VCA took any action in Oregon, that action in Oregon does not arise



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

out of or relate to plaintiffs' specific claims, which arise from alleged wiretapping *in California* and which allegedly caused injuries *in California*.

Finally, plaintiffs also appear to rely on Banfield's and VCA's operation of animal hospitals in Oregon to support specific personal jurisdiction over Banfield and VCA. (*See* FAC ¶ 15.) Those allegations are insufficient to support specific personal jurisdiction over Banfield and VCA as related to plaintiffs' CIPA claims. Plaintiffs' CIPA claims are based on Banfield's and VCA's alleged aiding of Facebook's "extraction and processing of [their] personal information," and plaintiffs' claims therefore "have nothing to do with [the defendants'] brick-and-mortar operations in the state." *Briskin*, 87 F.4th at 414. Plaintiffs' California claims, based on injuries allegedly suffered in California, do not arise out of or relate to any of Banfield's or VCA's contacts with Oregon.

Because there is no relationship between VCA's alleged contacts with Oregon and plaintiffs' claims, VCA should be dismissed for lack of personal jurisdiction. And, as explained above, although the Oregon-forum-selection provision in Banfield's Terms and Conditions supports personal jurisdiction over Banfield in Oregon, personal jurisdiction over Banfield cannot be based on Banfield's alleged contacts with Oregon because those contacts do not give rise to or relate to plaintiffs' claims. Further, in addition to the reasons below, Banfield's and VCA's alleged contacts with Oregon cannot be imputed to or support this Court's jurisdiction over defendants Mars, Mars Petcare, or MMI Holdings, because those contacts do not even support this Court's jurisdiction over Banfield and VCA themselves. Plaintiffs' claims against all defendants except Banfield should therefore be dismissed for lack of personal jurisdiction.



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

**C. Plaintiffs fail to allege facts supporting alter ego jurisdiction as to Mars, Mars Petcare, or MMI Holdings.**

Even if this Court determines that it has personal jurisdiction over Banfield or VCA based on their Oregon contacts, plaintiffs have not alleged sufficient facts to impute that jurisdiction to parent or affiliate companies such as Mars, Mars Petcare, or MMI Holdings through alter ego liability. In general, "federal courts extend jurisdiction to a parent company only in narrow circumstances." *Sundberg v. Joint Apprenticeship Training Comm. of NW Line Constr. Indus.*, No. 3:17-cv-01360-JR, 2018 WL 7108064, at *3 (D. Or. Dec. 4, 2018). Similarly, in Oregon, courts are extremely reluctant to disregard the legal separation of a parent and subsidiary company, explaining that "[t]he disregard of a legally established corporate entity is an extraordinary remedy which exists as a last resort, where there is no other adequate and available remedy to repair the plaintiff's injury." *Amfac Foods, Inc. v. Int'l Sys. & Controls Corp.*, 294 Or. 94, 103 (1982); *see also City of Salem v. H.S.B*, 302 Or. 648, 655 (1987) (explaining that Oregon courts are "extremely reluctant to disregard the corporate form unless exceptional circumstances exist"). The general rule is that, standing alone, a parent-subsidiary relationship "does not justify imputing one entity's forum contacts with another for personal jurisdiction purposes." *Holt v. Urban League of Portland, Inc.*, No. 3:22-cv-00837-YY, 2023 WL 2433721, at *3 (D. Or. Feb. 17, 2023).

Instead, to sufficiently plead the extraordinary remedy of disregarding legitimate corporate formalities for the purposes of personal jurisdiction, a plaintiff must allege that: (1) "there is such unity of interest and ownership that the separate personalities of [the parent and subsidiary] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice." *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996) (cleaned up). Here, plaintiffs do not specify which parent company they allege



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

serves as an alter ego for which specific subsidiary, but generally allege that any company with an affiliation to Mars is an alter ego of the other because "[t]he Subsidiaries are wholly owned by Mars and all contacts and actions by the Subsidiaries can be imputed onto Mars." (FAC ¶ 97.) Plaintiffs are wrong and their allegations are insufficient for this Court to disregard the duly formed corporate formalities of all five defendants under either prong of the alter ego test.

**1. Plaintiffs fail to allege that Mars, Mars Petcare, MMI Holdings, Banfield, and VCA have such a unity of interest that they can no longer be considered separate companies.**

The first prong of the alter ego test—the "unity of interest and ownership" prong—requires "a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former." *Ranza*, 793 F.3d at 1073 (cleaned up). To meet that element, the plaintiff must show that the subsidiary "serves as an incorporated department of [the parent] rather than as a genuine subsidiary." *Bates*, 993 F. Supp. 2d at 1339. The degree of control necessary to disregard the legitimacy of the subsidiary requires "a showing that the parent controls the subsidiary to such a degree" that the parent "dictates every facet of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operations." *Ranza*, 793 F.3d at 1073.

Allegations describing "a normal parent-subsidiary relationship" are insufficient to establish the improper domination of a subsidiary by its parent. *Am. Tel. & Tel. Co.*, 94 F.3d at 591. For example, the Ninth Circuit determined there was no alter ego relationship between a parent and subsidiary even though "the parent company guaranteed loans for the subsidiary, reviewed and approved major decisions, placed several of its own directors on the subsidiary's board, and was closely involved in the subsidiary's pricing decisions." *Doe v. Unocal Corp.*, 248 F.3d 915, 928 (9th Cir. 2001), *abrogated on other grounds by Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017). That is because, particularly under the alter ego test as



HOLLAND & KNIGHT LLP
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

described by Oregon courts, the "real underpinning" of the analysis is that "some form of moral culpability on the part of the parent corporation is required before the parent will be held liable for the debts of its subsidiary." *Amfac Foods, Inc.*, 294 Or. at 108.

Here, to the extent plaintiffs' allegations focus on the actual defendants in this case, plaintiffs allege facts supporting nothing more than a normal parent-subsidiary relationship between Mars, Mars Petcare, MMI Holdings, Banfield, and VCA. (FAC ¶¶ 97–109.)

*(1) Plaintiffs' allegations that Mars Petcare is "undercapitalized" are insufficient to show a unity of interest.*

First, plaintiffs allege that "the Subsidiaries are undercapitalized and Mars treats the Subsidiaries' revenue as its own." (FAC ¶ 98.)[7] Plaintiffs misunderstand what "undercapitalization" means in multiple ways. Preliminarily, plaintiffs' allegations of "undercapitalization" only focus on the alleged undercapitalization of Mars Petcare. (FAC ¶¶ 98–100.) Even if the Court takes plaintiffs' conclusory undercapitalization allegations as sufficient to disregard the corporate structure of Mars Petcare (which, as explained below, it should not), Mars Petcare is a Mars brand that owns nutritional pet food companies. (Hinds Decl. ¶¶ 8, 9.) Mars Petcare is entirely unrelated to the operation of Banfield's or VCA's websites, and plaintiffs make <u>*no allegations*</u> regarding Mars Petcare's contacts with Oregon that could be imputed to Mars. In other words, even if Mars Petcare is undercapitalized (which it is

[7] To support their allegations of Mars Petcare's undercapitalization, plaintiffs rely on quotes from *Mars, Inc. v. Trurx LLC*, No. 6:13-cv-526-RWS-KNM, 2016 WL 4034803 (E.D. Tex. Mar. 14, 2016). (FAC ¶¶ 98–99.) Plaintiffs' allegations omit, however, that the Court in *Mars, Inc.* determined that Mars could not "disregard the formalities of its corporate organization" so as to recover lost profits on behalf of Mars Petcare as its subsidiary because "Mars has chosen to organize the corporate identities and functions of its wholly-owned subsidiaries 'to suit its own goals and purposes,' and as a result, must take the benefits of that decision with their corresponding burdens." 2016 WL 4034803, at *10. Consistent with the alter ego test then, the Court in that case did not disregard the corporate structure of Mars and Mars Petcare even though "profits flow between Mars and its subsidiaries[.]" *Id.*



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

not), plaintiffs allege no Oregon contacts of that subsidiary that could be imputed to any other defendant. Plaintiffs do not allege that the relevant subsidiaries (Banfield and VCA) are undercapitalized, so Mars Petcare's alleged undercapitalization is legally irrelevant to the alter ego or personal jurisdiction inquiries.

Further, improper or inadequate capitalization as relevant to the alter ego test occurs only where a subsidiary is so underfunded that a creditor "is unable to collect against the corporation because it was inadequately capitalized." *Amfac Foods, Inc.* 294 Or. at 109; *see also Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*, 397 F.3d 1217, 1229 (9th Cir. 2005) (explaining that "gross undercapitalization" means that a corporation does not have "sufficient capital to cover its reasonably anticipated liabilities" as measured by the "nature and magnitude of its undertaking, the risks attendant to the particular enterprise and normal operating costs associated with its business") (cleaned up). Allegations that "merely operating as a holding company that lacks a revenue stream amounts to undercapitalization" are not sufficient to support alter ego liability. *Chien v. Bumble Inc.*, 641 F. Supp. 3d 913, 926 (S.D. Cal. 2022).

Here, to support their conclusory allegations that Mars Petcare is "undercapitalized," plaintiffs merely allege that money flows from a subsidiary (Mars Petcare) to Mars as the parent company "by an automatic transfer of funds between bank accounts." (FAC ¶ 99.) Plaintiffs, however, do not allege that they are "unable to collect" a potential judgment against Banfield or VCA due to Mars Petcare's alleged undercapitalization. *See Amfac Foods, Inc.*, 294 Or. at 109. VCA's and Banfield's contacts with Oregon therefore cannot be imputed to any alleged affiliate company, including Mars, Mars Petcare, or MMI Holdings, based on plaintiffs' "undercapitalization" allegations. (*See* FAC ¶¶ 98–99.)



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

*(2) Plaintiffs' allegations that Mars coordinates employee benefits and marketing across brands are insufficient to show a unity of interest.*

Second, plaintiffs make a series of allegations generally alleging that Mars's oversight of its subsidiaries' employee benefit policies and use of co-branding show that Banfield and VCA are mere instrumentalities of Mars. (*See* FAC ¶¶ 101–05.) Specifically, plaintiffs allege that Mars, as a parent company, "controls its Subsidiaries' employment policies" and "refers to employees of the Subsidiaries as Mars employees" in press materials (FAC ¶ 101); offers "employee benefits" and "makes decisions regarding its Subsidiaries' pay scale, benefits, and diversity requirements" (FAC ¶¶ 102, 104); uses "Mars's and the Subsidiaries' branding interchangeably" on job listings (FAC ¶ 103); and refers to its subsidiary companies as "family" on Mars's website (FAC ¶ 105).

Those allegations are insufficient to support a showing that Banfield and VCA are mere instrumentalities of Mars, Mars Petcare, or MMI Holdings so as to impute Banfield's and VCA's Oregon contacts to those companies. Allegations that a parent company generally coordinates employee policies across brands and employs co-branding on websites are indicative of parent companies' general and "understandable interest in the products of its subsidiaries and its funding of those subsidiaries[.]" *Acrymed, Inc. v. Convatec*, 317 F. Supp. 2d 1204, 1214 (D. Or. 2004). For example, allegations that two entities "operate[d] under the same goals and same name," had websites that stated the entities "accomplish[ed] our [company] mission through local groups and affiliates," and where there were "communications between parent and subsidiary during employment negotiations" of an employee, "f[e]ll far short" of alleging the "pervasive control" over a subsidiary "necessary to find the two entities are alter egos for jurisdictional purposes." *Holt*, 2023 WL 2433721, at *3 (relying on *Cai v. DaimlerChrysler AG*, 480 F. Supp. 2d 1245, 1252 (D. Or. 2007)).



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

Here, allegations that Mars sets consistent employee benefit policies across subsidiaries and co-brands its subsidiaries across websites are similarly insufficient to allege that Mars "dictates every facet of the subsidiary's business" so as to impute Banfield's and VCA's Oregon contacts to Mars, let alone Mars Petcare and MMI Holdings. *See Ranza*, 793 F.3d at 1073 (cleaned up). They are instead indicative of a normal parent-subsidiary relationship in which the parent monitors the "macro-management of its subsidiaries." *Id.* at 1074.

*(3) Plaintiffs' allegations that Mars shares some executives and office space with subsidiaries are insufficient to show a unity of interest.*

Third, plaintiffs allege that Banfield's and VCA's corporate forms should be disregarded because Mars "appoints executives for the other Subsidiaries, those executives report to Mars directly, and there is overlap between Mars's and its Subsidiaries' executives" (FAC ¶ 100) and "Mars and its Subsidiaries share common office space" (FAC ¶ 106). Allegations that a parent company shares executives and office space with subsidiaries are insufficient to allege that the companies are alter egos of each other. *Ranza*, 793 F.3d at 1073–74; *MMI, Inc. v. Baja, Inc.*, 743 F. Supp. 2d 1101, 1111 (D. Ariz. 2010) (explaining that "[c]ourts have also found that the fact that two corporate entities share the same address does not impute one entity's contacts with the forum state on the other entity . . . . This is because distinct legal entities may share the same address"). Even "total ownership and shared management personnel are alone insufficient to establish the requisite level of control" to establish an alter ego relationship. *Ranza*, 793 F.3d at 1073; *see also State ex rel. Neidig v. Superior Nat. Ins. Co.*, 343 Or. 434, 457 (2007) (explaining that the pervasive "control" required by the alter ego test "is not simply potential control or control of general operations" such as where "affiliated corporations share directors, officers, and facilities"). That is because it is a "well established principle of corporate law that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

the two corporations separately, despite their common ownership." *U.S. v. Bestfoods*, 524 U.S. 51, 69 (1998).

Here, plaintiffs' allegations that Mars, Banfield, and VCA executives work together and "thank" each other in "LinkedIn post[s]" (FAC ¶ 100), and that some corporate entities share physical addresses are therefore insufficient to support the complete disregard of Banfield's and VCA's corporate entities. Those allegations also do not support that Mars Petcare or MMI Holdings exercise such pervasive control over Banfield's and VCA's day-to-day operations so as to impute Banfield's and VCA's forum contacts with those defendants either.

*(4) Plaintiffs' allegations that Mars controls Banfield's and VCA's websites are unsupported by plaintiffs' cited evidence and insufficient to show a unity of interest.*

Fourth, plaintiffs allege that "Mars generally exercises dominion and control over the Subsidiaries' websites" because "both the Banfield Website and VCA Website contain privacy-related policies and notices created by Mars that are linked to Mars's website, and language indicating that Mars owns and/or operates both websites." (FAC ¶ 107.) That allegation is supported by screenshots of Banfield's and VCA's websites with text stating that both companies are an "Affiliate of Mars, Inc." or an "Affiliate of Mars, Incorporated." (*Id.*) Contrary to plaintiffs' allegations, those screenshots do not support plaintiffs' conclusory assumption that "[t]hus, Mars controls the gathering of information—and the information gathered—from the Banfield and VCA websites, meaning Mars controlled the websites and/or websites-related conduct challenged by Plaintiffs and Class Members." (FAC ¶ 108.)

Instead, "courts recognize that separate corporate entities presenting themselves as one online does not rise to the level of unity of interest required to show companies are alter egos." *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 984 (N.D. Cal. 2016). Further, the fact that a parent company establishes general policies across brands and ensures the "brand is marketed



HOLLAND & KNIGHT LLP
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

consistently throughout the world" is consistent with a parent corporation's natural "macro-management of its subsidiaries." *Ranza*, 793 F.3d at 1074. Plaintiffs' allegations that Mars employs consistent Terms and Conditions across its subsidiary brands' websites and those subsidiaries describe their brands as "Affiliates of Mars, Incorporated" on their own websites therefore do not support the conclusion that Mars exercises the pervasive day-to-day control of Banfield and VCA necessary to disregard those entities' corporate forms.[8]

In sum, plaintiffs are wrong that their legal conclusion that "all contacts and actions by the Subsidiaries can be imputed onto Mars" (FAC ¶ 97) is sufficient for alter ego jurisdiction. Instead, plaintiffs were required to demonstrate a legally plausible "unity of interest" under Oregon law, and failed to meet that burden. Accordingly, Banfield's and VCA's contacts with Oregon (even if sufficient for specific personal jurisdiction) cannot be imputed to Mars, Mars Petcare, or MMI Holdings for the purpose of exercising personal jurisdiction over those defendants.

**2. Plaintiffs fail to allege that Mars created any of its subsidiaries for fraudulent purposes.**

Plaintiffs' theory of alter ego jurisdiction as to Mars, Mars Petcare, and MMI Holdings also fails as a matter of law for the independent reason that plaintiffs fail to allege that Mars, as the parent company, created its subsidiaries for a fraudulent purpose. "The second prong of the alter ego test requires the plaintiff to demonstrate the alleged injustice relates to the forming of the corporation or abuse of the corporation, not a fraud or injustice generally." *Sundberg*, 2018

[8] Plaintiffs also rely on legal conclusions made in allegations in "a complaint brought by a former Mars Intellectual Property attorney against Mars" in the Eastern District of Tennessee to support that "Mars Petcare US, Inc. is a mere instrumentality of its parent, Mars, Inc.." (FAC ¶ 109.) In addition to the legal relationship of Mars Petcare and Mars being irrelevant to the relationship between Banfield, VCA, and Mars (as described above), plaintiffs include no authority providing that unsupported allegations in another lawsuit by a separate plaintiff, which were never addressed by a court, can support plaintiffs' alter ego theories in this case.



HOLLAND & KNIGHT LLP
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

WL 7108064, at *5 (cleaned up). That is because the alter ego doctrine exists to impute a subsidiary's contacts to a parent corporation to provide "protection when a parent company is acting in bad faith and hiding behind the corporate form to escape liability." *Id.*

Here, plaintiffs do not allege that Mars engaged in fraud "when incorporating [its] respective subsidiaries," including Mars Petcare, MMI Holdings, Banfield, or VCA. *Id.* Plaintiffs therefore do not allege facts sufficient to support either that Banfield and VCA were created in bad faith to escape liability for some alleged wrongdoing. Because plaintiffs fail to allege facts sufficient to satisfy either (1) the unity of interest or (2) the fraud prongs of the alter ego test, the forum contacts of Banfield and VCA, including the Oregon-forum selection provision in Banfield's Terms and Conditions, cannot be imputed to Mars, Mars Petcare, or MMI Holdings. Accordingly, Mars, Mars Petcare, MMI Holdings, and VCA should be dismissed for lack of personal jurisdiction.

## II. Mars, Mars Petcare, and MMI Holdings should be dismissed because plaintiffs do not allege sufficient facts to pierce the corporate veil and hold them liable for the alleged actions of Banfield and VCA.

For the same reasons that plaintiffs' theory of alter ego jurisdiction is legally defective, plaintiffs' theory of liability against Mars, Mars Petcare, and MMI Holdings—which also relies on piercing the corporate veil—fails as a matter of law. It is a "general principle of corporate law . . . that a parent corporation . . . is not liable for the acts of its subsidiaries." *Bestfoods*, 524 U.S. at 61. Consistent with that principle, and similar to the alter ego test relevant to personal jurisdiction, "Oregon courts are extremely reluctant to disregard the corporate form unless exceptional circumstances exist." *Acrymed, Inc.*, 317 F. Supp. 2d at 1214–15 (cleaned up). Under Oregon law, a parent corporation cannot be held liable for the acts of its subsidiaries unless the following conditions are adequately pleaded: "(1) the parent corporation controlled the subsidiary; (2) the parent corporation engaged in improper conduct in its exercise of control over



HOLLAND & KNIGHT LLP
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

the subsidiary; and (3) the parent corporation's improper conduct caused the plaintiff's inability to obtain an adequate remedy from the subsidiary." *Id.* at 1214. Plaintiffs fail to meet all three elements necessary to pierce the corporate veil and hold Mars, Mars Petcare, and MMI Holdings liable for the actions of Banfield or VCA.

Preliminarily, plaintiffs do not allege that Mars Petcare is even a parent company of either Banfield or VCA. (*See* FAC ¶ 10.) Instead, plaintiffs mistakenly rely on the public relations term that Mars uses to describe a collection of its pet-related companies, "Mars Petcare," to suggest that a similarly named entity, Mars Petcare US, Inc., should somehow be liable for the actions of two other Mars-owned companies, Banfield and VCA. (*See* Hinds Decl. ¶ 9.) Defendant Mars Petcare, however, is a separate entity that owns pet nutrition companies and is unrelated to the operation of Banfield or VCA or their respective websites. (*Id.*) Because plaintiffs do not allege any plausible theory to assert liability against Mars Petcare for the actions of Banfield or VCA, Mars Petcare should be dismissed with prejudice.

Plaintiffs also fail to meet all three elements necessary to pierce the corporate veil and hold Mars and MMI Holdings liable for the actions of Banfield or VCA. As to the first element of control over the subsidiary, plaintiffs do not allege facts showing Mars's or MMI Holdings's control of Banfield or VCA. As explained above, plaintiffs' allegations related to the relationship between Mars and its subsidiaries describe nothing more than a normal parent-subsidiary relationship and not the pervasive level of day-to-day control necessary to disregard legitimate corporate forms. (*See* FAC ¶¶ 97–109.); *see Acymed, Inc.*, 317 F. Supp. 2d at 1214 (explaining that parent companies have an "understandable interest in the products of its subsidiaries and its funding of those subsidiaries"). Plaintiffs also fail to plausibly allege that Mars and MMI Holdings controlled the specific alleged wrongful conduct by Banfield or VCA.



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

*See State ex rel. Neidig*, 343 Or. at 457 (explaining that the necessary "control" contemplated by the first element of the corporate veil test, "is not simply potential control or control of general operations, but actual control over the specific conduct that led to plaintiff's harm"). Plaintiffs' general allegations that Banfield's and VCA's websites include language that they are an "Affiliate of Mars, Incorporated" and link to Mars's general Terms and Conditions for all Mars brands are therefore insufficient to support actual control over the specific conduct that led to plaintiffs' harm—the operation of Banfield's and VCA's independent websites and use of the Facebook Pixel. (*See* FAC ¶¶ 107–08; Hinds Decl. ¶ 5; Speredelozzi Decl. ¶ 5.)

As to the second and third elements—which require factual allegations demonstrating the parent's improper conduct—plaintiffs fail to allege any facts that Mars or MMI Holdings engaged in improper conduct when exercising control over their subsidiaries, Banfield and VCA, or that any improper conduct caused plaintiffs' alleged harm or their inability to recover directly from Banfield or VCA. "Improper conduct" of a parent company in the exercise of control of a subsidiary includes "gross undercapitalization, milking or draining of corporate funds, misrepresentation, commingling of funds, holding out, and failure to observe corporate formalities." *Hambleton Bros. Lumber Co.*, 397 F.3d at 1228. As discussed in further detail above, plaintiffs' allegations describe a normal relationship between a parent and subsidiary, not any improper conduct. (*See* FAC ¶¶ 97–109.)

Even assuming plaintiffs alleged sufficient improper conduct on behalf of Mars or MMI Holdings in their ownership of Banfield and VCA (which they have not), plaintiffs have not alleged any facts to support that the alleged improper conduct caused plaintiffs' alleged harm. Under Oregon law, "[e]ven if improper conduct of a shareholder is shown, a 'causal connection' must be shown: The plaintiff must demonstrate a relationship between the misconduct and the



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

plaintiff's injury." *Hambleton Bros. Lumber Co.*, 397 F.3d at 1228 (cleaned up). Plaintiffs have not alleged facts supporting that the alleged "improper" conduct, such as sharing office space and co-branding job listings, caused plaintiffs' injuries arising from the alleged wiretapping on Banfield's or VCA's website. (*See* FAC ¶¶ 103, 106.) Further, plaintiffs have not alleged that they are unable to recover directly from Banfield or VCA. *See Acrymed, Inc.*, 317 F. Supp. 2d at 1215 (explaining plaintiffs must plead facts sufficient to show "that they are unable to obtain adequate remedy against" the subsidiaries). Those deficiencies are fatal to plaintiffs' alter ego theory.

The "disregard of a legally established corporate remedy is an extraordinary remedy which exists as a last resort, where there is no other adequate and available remedy to repair the plaintiff's injury." *Amfac Foods, Inc.*, 294 Or. at 103. Where plaintiffs fail to allege facts supporting that Mars, Mars Petcare, or MMI Holdings exercised active control over the specific conduct at issue, engaged in improper conduct, that any improper conduct caused plaintiffs' specific harm, or that plaintiffs are otherwise unable to recover directly from Banfield and VCA, the corporate veils separating Banfield and VCA from those entities cannot be pierced. Mars, Mars Petcare, and MMI Holdings therefore cannot be held directly liable for the conduct of Banfield and VCA and should be dismissed from this action with prejudice.

## III. The Court should dismiss VCA because this Court is an improper venue for plaintiffs' claims against VCA.

In addition to the jurisdictional defects, plaintiffs' claims against VCA arising from alleged activity on VCA's website should be dismissed because the claims are subject to a mandatory California forum-selection provision and are thus filed in the wrong court. Under



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

VCA's website terms of use,[9] "any legal proceeding *arising out or in relation to these Terms of Use* against or relating to VCA will be subject to the *exclusive jurisdiction of any state or federal court sitting in Los Angeles, California*[.]" (Asai Decl., Ex. 2 at 8 (emphases added).) Plaintiffs expressly cite and rely on VCA's Terms of Use in support of their contention that they did not consent to the alleged invasion of privacy and justify asserting a nationwide class under CIPA. (FAC ¶ 84 n.60.) Accordingly, to the extent plaintiffs seek to assert claims relating to VCA's website and its Terms of Use, they must be brought in California, not in Oregon.

The law is clear that "where venue is specified with mandatory language the clause will be enforced." *Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762, 764 (9th Cir. 1989). Forum selection clauses "are prima facie valid" and "should control absent a strong showing that it should be set aside." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 15 (1972). Indeed, forum selection clauses control in "all but the most exceptional cases." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013) (cleaned up). As such, courts routinely enforce forum selection clauses contained in website terms of use, like exists here. *See, e.g., Fleet v. Trion Worlds, Inc.*, No. 15-cv-04721-WHA, 2016 WL 122855, at *4 (N.D. Cal. Jan. 12, 2016) (enforcing forum selection clause in terms of use); *Talyancich v. Microsoft Corp.*, No. CV-12-00483-GAF-FMOX, 2012 WL 1563884, at *4–5 (C.D. Cal. Mar. 28, 2012) (enforcing forum-selection clause in terms of use and dismissing claims based on improper venue). Accordingly, because plaintiffs rely upon VCA's Terms of Use to, among other things, establish their legal basis for asserting claims under the CIPA, they are also bound by the forum selection

---

[9] This Court can take judicial notice of the applicable website terms as part of this motion. *See, e.g., Al -Ahmed v. Twitter, Inc.*, 603 F. Supp. 3d 857, 869 (N.D. Cal. 2022) (holding that publicly available terms of service for a party's website are appropriate for judicial notice); *Yuksel v. Twitter, Inc.*, No. 22-CV-05415-TSH, 2022 WL 16748612, at *2 (N.D. Cal. Nov. 7, 2022) (same).

in those terms. This Court should therefore dismiss all claims relating to VCA's website because they cannot be asserted in this Court.

## IV. Plaintiffs' claims relating to Banfield's website should be dismissed because CIPA does not apply to Banfield's website.

Plaintiffs cannot state a claim against any defendant arising from conduct on Banfield's website under CIPA, *i.e.*, California law, because the parties agreed that only Oregon law governs the transactions on Banfield's website. Under the plain language of Banfield's Terms and Conditions, "[t]his Agreement *and all transactions contemplated hereby shall be deemed made and entered into in the State of Delaware and shall be governed by the internal laws of the State of Oregon*, but excluding its and all other jurisdictions choice of law principles." (Asai Decl., Ex. 1 at 17 (emphasis added).) Plaintiffs' claims expressly rely on activity on Banfield's website (*see, e.g.*, FAC ¶¶ 7–8, 111, 116, 129, 136) and plaintiffs directly invoke Banfield's Terms and Conditions in support of their contention that plaintiffs did not consent to the scope of information disclosed, (*see id.* ¶ 84 n.60). Thus, plaintiffs may not avoid the choice of law provision of those Terms and Conditions that require Oregon law—not California law—to apply to any challenged conduct on Banfield's website. *See Palomino v. Facebook, Inc.*, No. 16-cv-04230-HSG, 2017 WL 76901, at *3 (N.D. Cal. Jan. 9, 2017) (explaining that the "choice-of-law clause encompasses [the] Plaintiffs' claims because they arise from or relate to the Terms of Service" where the terms governed "any claim that might arise" between the user and the website). Accordingly, the Court should dismiss plaintiffs' claims under CIPA relating to Banfield's website.



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

## V. Plaintiffs' claims should be dismissed because plaintiffs fail to allege a plausible claim of illegal wiretapping or eavesdropping under CIPA.

### A. Plaintiffs do not allege that Banfield or VCA engaged in wiretapping under § 631 as a matter of law.

Count I of plaintiffs' CIPA claim fails as a matter of law because plaintiffs fail to allege a legally plausible claim for wiretapping under § 631(a) of CIPA. Section 631(a) contains three operative clauses covering three separate and independent patterns of conduct: "intentional wiretapping, willfully attempting to learn the contents or meaning of a communication in transit over a wire, and attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1091 (N.D. Cal. 2022). Section 631(a) further contains a fourth basis for liability, for anyone "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the" other three bases for liability. Cal. Penal Code § 631(a).

#### 1. Plaintiffs fail to state a claim under the second clause of § 631(a) because plaintiffs fail to plead a lack of consent to the sharing of their customer records with third parties like Facebook.

Lack of consent is a required element of plaintiffs' claim under the second clause of § 631(a) of CIPA. *See* Cal. Penal Code § 631(a) (providing that a person is liable under the second clause of § 631(a) when he or she "willfully *<u>and without the consent of all parties</u>* to the communication . . . reads, or attempts to read, or to learn the contents of any message, report, or communication"); *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015) (explaining that, under CIPA, where "lack of consent is an express element of a claim, as is the case here, it must be alleged in the complaint"). Here, plaintiffs fail to allege a lack of consent to Banfield's and VCA's Terms and Conditions and privacy policies. Instead, plaintiffs rely on the terms of Banfield's and VCA's Terms and Conditions to support their CIPA claims and allege that Banfield's and VCA's actions exceeded the scope of those terms. (FAC ¶ 84.) When read



HOLLAND & KNIGHT LLP
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

in full, however, Banfield's and VCA's Terms and Conditions incorporate privacy statements that explain Banfield and VCA may share "customer records" and "purchase history" to third parties, including "social networks." (Asai Decl., Ex. 3 at 7; *see also* FAC ¶ 107 (alleging that "both the Banfield Website and VCA Website contain privacy-related policies and notices created by Mars that are linked to Mars's website").) Plaintiffs' claims under § 631 of CIPA therefore fail where the relevant privacy policies explain that website users' purchase history and customer records may be shared with third-parties for the purposes of facilitating targeted advertising. *See Calhoun v. Google, LLC*, 645 F. Supp. 3d 916, 932, 939 (N.D. Cal. 2022) (concluding that Google users consented to the data collection at issue through the site's privacy policies and dismissing plaintiffs' CIPA claims under § 631 and § 632).

Consent to a website's collection of data "can be express or implied" as long as it is "actual" and encompasses the "particular conduct, or . . . substantially the same conduct[,]" and can result in the dismissal of a CIPA claim where "the alleged tortfeasor did not exceed the scope of that consent." *Calhoun*, 645 F. Supp. 3d at 928; *see also Smith v. Facebook*, 262 F. Supp. 3d 943, 953 (N.D. Cal. 2017) ("*Smith I*"), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) (unpublished) ("*Smith II*") (dismissing CIPA claims against the defendant for lack of consent where the plaintiffs "allege[d] that they relied on" the defendants' assertions in those terms). A defendant does not exceed the scope of consent where a "reasonable person" would view the disclosures and understand that the website was disclosing the type of personal information alleged to be at issue. *Smith II*, 745 F. App'x at 8. For example, where a user of a rideshare company brought CIPA claims against that company for disclosing his "personal data" to a third-party company, the court dismissed those claims where the plaintiff agreed to the company's privacy policy, which expressly stated that "we may share your personal information with our



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

agents, representatives, contractors and service providers" and that "[b]y using the site, you do hereby represent and warrant that you have read understand and agree to all terms of this Privacy Policy and Terms of Service." *Garcia*, 78 F. Supp. 3d at 1136. That disclosure "contradict[ed] [the] Plaintiff's claim that he was unaware of and did not consent to the transfer of his personal information to a third party." *Id.*

Here, Banfield's and VCA's privacy policies similarly expressly disclosed that both companies may share their customers' purchase history with third party partners, including social media companies, to facilitate targeted advertising. In particular, Banfield's and VCA's respective privacy statements explain that, if customers use their websites, Banfield and VCA will share "[p]urchase history" and "[o]ther data about your transactions with us," "with third parties like advertising networks, data analytics providers, operating systems and platforms, and social networks for the business and commercial purposes provided herein, namely, for purposes of targeted advertising." (Asai Decl., Ex. 3 at 7.) Those privacy policies also explain that "[d]ata we collect about your pet – like your pet's species, breed, birthday, or treatment history" is not considered "personal" data. (*Id.* at 11.) VCA's website contains a second privacy policy, in which VCA further informs users that VCA shares certain information with "service providers" including information "when you purchase goods and services at any of our retail locations, including our veterinary hospitals or online." (*Id.*, Ex. 4 at 9.)

A reasonable viewer of Banfield's and VCA's disclosures would understand that Banfield and VCA may share their customer's information, including "the names of those pets, the details of a veterinary appointment, and what medications are being purchased for those pets" with Facebook for the purposes of facilitating targeted advertising based on those terms. (FAC ¶ 82.) Where plaintiffs do not plead a lack of consent to Banfield's and VCA's Terms and



HOLLAND & KNIGHT LLP
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

Conditions and instead rely upon those terms, and where, upon a reading of those terms, Banfield and VCA did not exceed the scope of those terms, plaintiffs' allegations fail to plausibly plead the element of lack of consent. *See Calhoun*, 645 F. Supp. 3d at 928 (explaining privacy policy disclosures can facilitate knowing authorization and consent where the defendant engaged in "substantially the same conduct" as disclosed).

Plaintiffs' reliance on a licensing statute for veterinarians under the California Business and Professions Code to allege that "any communications involving 'information concerning an animal receiving veterinary services' . . . qualify as 'confidential communications' under California law" does not cure plaintiffs' failure to plead a lack of consent to Banfield's and VCA's terms and privacy policies. (FAC ¶ 135, *see also id.* ¶¶ 25–29 (citing Cal. Bus. & Prof. Code § 4857(a).) To the extent a statute setting forth a licensing requirement for veterinarians even applies to Banfield's and VCA's websites, that statute provides that information about an animal patient may be disclosed "[u]pon authorization" of the "client." Cal. Bus. & Prof. Code § 4857(a). Plaintiffs do not allege that the heightened standard for consent required by regulatory schemes like HIPAA to protect a human patient's data applies to protect information about their pet such as data showing they added a pet medication to their online shopping cart. (*See* FAC ¶¶ 65, 67.); s*ee also* 45 C.F.R. § 164.508(c)(1) (addressing the "core elements" of a valid authorization under HIPAA, which includes among other things, "[a] description of the information to be used or disclosed that identifies the information in a specific and meaningful fashion," "to whom the covered entity may make the requested use or disclosure," "[a] description of each purpose of the requested disclosure," and "[s]ignature of the individual and date.").



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

In sum, plaintiffs expressly rely on Banfield's and VCA's Terms and Conditions and fail to plead a lack of consent to those terms. Where the privacy policies incorporated by those terms specify that Banfield and VCA may share "customer records with third parties . . . for purposes of targeted advertising," that language alerted reasonable users that information regarding purchases made on Banfield's or VCA's websites, including those related to their pets, may be disclosed to third parties for the specified purposes. *Contra In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 793 (N.D. Cal. 2022) (determining consent through privacy policy was insufficient where policy only alerted user website collected "personal data" rather than "protected health information" under HIPAA). Plaintiffs' claims under CIPA therefore fail for failure to plead that the sharing of their information occurred "without consent" as required by the second clause of § 631(a).

**2. Plaintiffs fail to state a claim under the third clause of § 631(a) because their claim under the second clause is deficient.**

Plaintiffs fail to state a claim under the third clause of § 631(a) because liability for "[us]ing" or "attempt[ing] to use" information acquired through "the acts or things mentioned above in this section" necessarily means that "[a] violation under the third clause of § 631(a) is contingent upon a finding of a violation of the first or second clause of § 631(a)." *Swarts*, 2023 WL 5615453, at *6. As explained above, plaintiffs do not assert liability against defendants under the first clause of § 631(a) and fail to state a claim for the violation of the second clause of § 631(a). Therefore, plaintiffs have failed to plead a violation of third clause of § 631(a). *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 827 (N. D. Cal. 2020) (concluding the plaintiffs failed to plead a violation of the third clause of § 631(a) where they did not "establish that the information at issue . . . was obtained through a violation of the first or second clauses").



HOLLAND & KNIGHT LLP
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

### 3. Defendants cannot be liable for aiding and abetting under § 631(a) of CIPA because plaintiffs fail to state a claim under any of § 631(a)'s three operative clauses.

Plaintiffs also fail to state a claim under the fourth clause of § 631(a) for aiding and abetting liability because they failed to sufficiently allege facts necessary to maintain a claim under any of the first three clauses of § 631(a). Plaintiffs appear to allege liability against Banfield and VCA[10] only under the fourth clause of § 631(a), alleging: "[a]t all relevant times, Defendants aided, agreed with, employed, permitted, or otherwise enabled Facebook to wiretap Plaintiffs and Class Members using the Business Tools and to accomplish the wrongful conduct at issue here." (FAC ¶ 127.)

The fourth clause of § 631(a) provides that a party can be vicariously liable where it "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things" prohibited in the first three clauses. As explained above, plaintiffs fail to state a claim under the first three clauses of § 631(a) because: (1) plaintiffs do not allege any party violated the first clause; (2) plaintiffs fail to plead a lack of consent to the disclosure of the alleged communications; and (3) no party therefore could have used or attempted to use any improperly obtained information. Thus, because plaintiffs fail to allege facts sufficient to support claims under the first three clauses of § 631, any claim of liability based on aiding and abetting actions under those clauses cannot be supported as a matter of law. *See James v. Allstate Ins. Co.*, No. 3:23-cv-01931-JSC, 2023 WL 8879246, at *3 n.3 (N.D. Cal. Dec. 22, 2023) (noting that aiding and abetting "[l]iability under clause four only arises based on liability under" one of the prior clauses of § 631(a)); *Graham v. Noom, Inc.*, 533

---

[10] As explained above, plaintiffs allege Mars, Mars Petcare, and MMI Holdings should be liable under § 631(a) because those entities are within the same general family of companies and "all . . . actions by the Subsidiaries can be imputed onto Mars." (FAC ¶ 97.) Plaintiffs cannot impute any alleged liability of Banfield and VCA under CIPA § 631(a) for the reasons discussed above.



HOLLAND & KNIGHT LLP
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

F. Supp. 3d 823, 833 (N.D. Cal. 2021) (explaining that the defendant was "not liable for aiding and abetting [another's] wrongdoing [under § 631] because there is no wrongdoing").

**B. Plaintiffs do not allege that Banfield or VCA eavesdropped under § 632 of CIPA and any such claim would fail as a matter of law.**

Plaintiffs also fail to allege liability against Banfield or VCA, or any other named defendant under § 632 of CIPA. (*See* FAC ¶¶ 131–40.) Instead, plaintiffs allege that

> Plaintiffs and Class Members did not consent to ***any of Facebook's actions***. Nor have Plaintiffs or Class Members consented to Facebook's intentional use of an electronic amplifying or recording device to eavesdrop upon and record the confidential communications of Plaintiffs and Class Members.

(FAC ¶ 139 (emphasis added).) Facebook is not a defendant here, and plaintiffs do not further allege that Banfield or VCA aided and abetted Facebook's alleged violation of § 632. (*See* FAC ¶¶ 131–40.)

To the extent plaintiffs allege first-party liability under § 632 against Banfield and VCA, plaintiffs' claim fails as a matter of law. (*See* FAC ¶ 140.) Section 632 imposes liability on

> A person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device . . . .

Banfield and VCA cannot be held liable for "eavesdrop[ing]" where Banfield and VCA were the intended recipients of plaintiffs' communications. *See Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1089 (N.D. Cal. 2018) (dismissing § 632 claim because defendant rideshare company did not "eavesdrop" on "communications" between its own fake customer accounts and competitor). Plaintiffs' claim under § 632 should therefore be dismissed as a matter of law.[11]

[11] Defendants further reserve the right to seek attorneys' fees for the unreasonable and vexatious multiplication of proceedings to the extent plaintiffs continue filing complaints seeking relief



HOLLAND & KNIGHT LLP
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

**CONCLUSION**

For the reasons discussed above, defendants respectfully request that plaintiffs' claims against Mars, Mars Petcare, MMI Holdings, Banfield, and VCA be dismissed for lack of personal jurisdiction and failure to state a claim.

Dated this 6th day of May, 2024.

HOLLAND & KNIGHT LLP

By: *s/ Kristin Asai*

Shannon Armstrong, OSB No. 060113
Email: shannon.armstrong@hklaw.com
Kristin Asai, OSB No. 103286
Email: kristin.asai@hklaw.com
Abigail Gore, OSB No. 205387
Email: abigail.gore@hklaw.com
601 SW Second Avenue, Suite 1800
Portland, OR 97204
Telephone: 503.243.2300
Fax: 503.241.8014

Ashley Shively (*pro hac vice forthcoming)*
Email: ashley.shively@hklaw.com
560 Mission Street, Suite 1900
San Francisco, CA 94105
Telephone: 415.743.6900

*Attorneys for Mars, Incorporated, Mars Petcare US, Inc., MMI Holdings, Inc., Medical Management International, Inc. d/b/a Banfield Pet Hospital, and VCA Inc.*

---

against improper parties. Prior to filing both of defendants' motions to dismiss in this case, defendants have conferred with plaintiffs to ascertain the legal basis for including a number of companies owned by Mars with no connection to Oregon liable for the alleged wrongdoing of Banfield and VCA. Rather than fixing those deficiencies, plaintiffs waited until after Mars filed its first motion to dismiss to amend its Complaint and did so without curing the identified deficiencies, requiring this second motion to dismiss.