Stanton R. Gallegos, OSB #160091
StantonGallegos@MarkowitzHerbold.com
Jermaine F. Brown, OSB #073415
JermaineBrown@MarkowitzHerbold.com
**MARKOWITZ HERBOLD PC**
1455 SW Broadway, Suite 1900
Portland, OR 97201
Telephone: (503) 295-3085

*Attorneys for Plaintiffs and the Putative Class*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

LIZETH JIMENEZ, AYREANNE BORDEAUX, KRYSTINE AQUINO-RORALDO, and REGINA BERRIOS, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

MARS, INC., MARS PETCARE US, INC., MMI HOLDINGS, INC., MEDICAL MANAGEMENT INTERNATIONAL, INC. d/b/a BANFIELD PET HOSPITAL, and VCA INC.,

Defendants.

Case No. 3:23-cv-01786-YY

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

**PAGE**


INTRODUCTION ........ 1

ARGUMENT ........ 2

I. THIS COURT HAS PERSONAL JURISDICTION OVER ALL DEFENDANTS ........ 2

A. This Court Possesses Specific Jurisdiction Over VCA Because VCA Purposefully Directed Its Tortious Acts At Oregon ........ 3

B. Plaintiffs' Claims Relate To Banfield And VCA's Contacts In Oregon ........ 6

C. Banfield And VCA's Oregon Contacts May Be Imputed Onto Mars, Mars Petcare, And MMI Holdings Because Banfield And VCA Are "Alter Egos" Of Each Of These Defendants ........ 8

1. Mars, Mars Petcare, And MMI Holdings Control Banfield And VCA ........ 8

2. Mars, Mars Petcare, And MMI Holdings Used Their Control Of The Banfield And VCA Websites To Cause The Wiretapping To Occur, Which Harmed Plaintiffs ........ 11

II. PLAINTIFFS STATE VIABLE CLAIMS AGAINST MARS, MARS PETCARE, AND MMI HOLDINGS PURSUANT TO ALTER EGO LIABILITY ........ 12

III. DEFENDANTS HAVE NOT MET THEIR BURDEN TO SHOW NOTICE OF OR ASSENT TO VCA'S TERMS OF USE, AND THE FORUM SELECT CLAUSE DOES NOT COVER THE CLAIMS AT ISSUE ........ 13

IV. DEFENDANTS HAVE NOT MET THEIR BURDEN TO SHOW NOTICE OF OR ASSENT TO BANFIELD'S TERMS AND CONDITIONS, AND THE CHOICE OF LAW CLAUSE IS UNENFORCEABLE REGARDLESS ........ 16

V. PLAINTIFFS PLAUSIBLY ALLEGE A VIOLATION OF CIPA § 631 ........ 18

VI. PLAINTIFFS PLAUSIBLY ALLEGE A VIOLATION OF CIPA § 632 ........ 21

CONCLUSION ........ 25

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*ADO Fin., AG v. McDonnell Douglas Corp.*,
931 F. Supp. 711 (C.D. Cal. 1996) ........ 10

*AirWair Int'l Ltd. v. Schultz*,
73 F. Supp. 3d 1225 (N.D. Cal. 2014) ........ 4

*Amfac Foods, Inc. v. Int'l Sys. & Controls Corp.*,
294 Or. 94 (1982) ........ 9, 11, 12

*Barrie v. NFH Oregon, LLC*,
2020 WL 9211003 (D. Or. Nov. 4, 2020) ........ 8, 11

*Bazan v. Coleman Indus., Inc*,
2021 WL 4498645 (D. Or. Sept. 21, 2021) ........ 8, 9, 10, 11

*Berman v. Freedom Financial Network, LLC*,
30 F.4th 849 (9th Cir. Apr. 5, 2022) ........ 14

*Briskin v. Shopify, Inc.*,
87 F.4th 404 (9th Cir. 2023) ........ 6

*Briskin v. Shopify, Inc.*,
2024 WL 2148754 (9th Cir. May 14, 2024) ........ 6

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ........ 20, 24

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ........ 5

*Calder v. Jones*,
465 U.S. 783 (1984) ........ 3

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) ........ 20

*Callahan v. PeopleConnect, Inc.*,
2022 WL 823594 (9th Cir. Mar. 18, 2022) ........ 14

*Chien v. Bumble Inc.*,
641 F. Supp. 3d 913 (S.D. Cal. 2022) .......... 9

*Cody v. Ring LLC*,
2024 WL 735667 (N.D. Cal. Feb. 22, 2024) .......... 20

*Cooper v. Ruane Cunniff & Goldfarb Inc.*,
990 F.3d 173 (2d Cir. 2021) .......... 16

*Curry v. Revolution Labs, LLC*,
949 F. 3d 385 (7th Cir. 2020) .......... 6

*Doe v. Princess Cruise Lines, Ltd.*,
657 F.3d 1204 (11th Cir. 2011) .......... 15, 16

*Esparza v. Kohl's, Inc.*,
2024 WL 1152732 (S.D. Cal. 2024) .......... 19

*Ferguson v. Smith*,
2018 WL 3733665 (D. Or. July 18, 2018) .......... 12, 13

*Ford Motor Co. v. Montana Eighth Judicial District Ct.*,
592 U.S. 351 (2021) .......... 7

*Gonzales v. Uber Techs., Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018) .......... 24

*Graves v. Arpaio*,
623 F.3d 1043 (9th Cir. 2010) .......... 15

*Gruber v. Yelp Inc.*,
55 Cal. App. 5th 591 (2020) .......... 23

*Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*,
397 F.3d 1217 (9th Cir. 2005) .......... 9

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
72 F.4th 1085 (9th Cir. 2023) .......... 5, 6

*Hilfiker Square, LLC v. Thrifty Payless, Inc.*,
2016 WL 7031283 (D. Or. Nov. 29, 2016) .......... 21

*Hogan v. Amazon.com, Inc.*,
2022 WL 952763 (N.D. Ill. Mar. 30, 2022) .......... 18

*In re Facebook Biometric Info. Priv. Litig.*,
185 F. Supp. 3d 1155 (N.D. Cal. 2016) ........ 18

*In re McKinsey & Co., Inc. Nat'l Opiate Consultant Litig.*,
637 F. Supp. 3d 773 (N.D. Cal. 2022) ........ 7

*Jackson v. Amazon.com, Inc.*,
65 F.4th 1093 (9th Cir. 2023) ........ 13, 14, 16, 20

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. May 31, 2022) ........ 20

*Jones v. Halliburton Co.*,
583 F.3d 228 (5th Cir. 2009) ........ 16

*JPaulJones, L.P. v. Zurich Gen. Ins. Co. (China) Ltd.*,
533 F. Supp. 3d 999 (D. Or. 2021) ........ 16

*Kauffman v. Papa John's Int'l, Inc.*,
2024 WL 171363 (S.D. Cal. Jan. 12, 2024) ........ 5, 7

*Kearney v. Salomon Smith Barney, Inc.*,
39 Cal. 4th 95 (2006) ........ 22

*Keeton v. Hustler Magazine, Inc.*,
465 U.S. 770 (1984) ........ 4, 5, 8

*Lindora, LLC v. Isagenix Int'l, LLC*,
198 F. Supp. 3d 1127 (S.D. Cal. 2016) ........ 5

*Lopez v. Apple, Inc.*,
519 F. Supp. 3d 672 (N.D. Cal. 2021) ........ 20

*Mars, Inc. v. Trurx LLC*,
2016 WL 4034803 (E.D. Tex. Mar. 14, 2016) ........ 9

*Mavrix Photo, Inc. v. Brand Technologies, Inc.*,
647 F.3d 1218 (9th Cir. 2011) ........ 4

*McCoy v. Alphabet, Inc.*,
2021 WL 405816 (N.D. Cal. Feb. 2, 2021) ........ 21

*MMI, Inc. v. Baja, Inc.*,
743 F. Supp. 2d 1101 (D. Ariz. 2010) ........ 10

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ........ 14, 15

*Palomino v. Facebook*,
2017 WL 76901 (N.D. Cal. Jan. 9, 2017) ........ 17

*Patterson v. Respondus, Inc.*,
593 F. Supp. 3d 783 (N.D. Ill. 2022) ........ 18

*Powell v. Sys. Transp., Inc.*,
83 F. Supp. 3d 1016 (D. Or. 2015) ........ 17

*Project Veritas v. Schmidt*,
72 F.4th 1043 (9th Cir. 2023) ........ 18

*Psarros v. Avior Shipping, Inc.*,
192 F. Supp. 2d 751 (S.D. Tex. 2002) ........ 15

*Ranza v. Nike, Inc.*,
793 F.3d 1059 (9th Cir. 2015) ........ 10

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ........ 18

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) ........ 17

*S.D. v. Hytto Ltd.*,
2019 WL 8333519 (N.D. Cal. May 15, 2019) ........ 6

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ........ 3

*Seal Source, Inc. v. Calderon*,
2011 WL 5041275 (D. Or. Sept. 29, 2011) ........ 15

*Smith v. LoanMe, Inc.*,
483 Cal. 5th 183 (2021) ........ 23

*State ex rel. Neidig v. Superior Nat. Ins.*,
343 Or. 434 (2007) ........ 8, 9

*Swarts v. Home Depot, Inc.*,
2023 WL 5615453 (N.D. Cal. Aug. 30, 2023) ........ 7

*Turner v. Nuance Communications, Inc.*,
2024 WL 2750017 (N.D. Cal. May 28, 2024) .......... 21, 22

*United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*,
871 F.3d 791 (9th Cir. 2017) .......... 16

*Vaccaro v. Altais*,
2023 WL 7003211 (C.D. Cal. Oct. 23, 2023) .......... 22

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) .......... 19

*Valenzuela v. Nationwide Mutual Ins. Co.*,
2023 WL 5266033 (C.D. Cal. Aug. 14, 2023) .......... 19

*Vera v. O'Keefe*,
791 F. Supp. 2d 959 (S.D. Cal. 2011) .......... 22

*Wilson v. Huuuge, Inc.*,
944 F.3d 1212 (9th Cir. 2019) .......... 15

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
433 F.3d 1199 (9th Cir. 2006) .......... 4

*Yei A. Sun v. Advanced China Healthcare, Inc.*,
901 F.3d 1081 (9th Cir. 2018) .......... 15

**STATUTES**

Cal. Bus. & Prof. Code § 4857(a) .......... 1

Cal. Penal Code § 31 .......... 22

Cal. Penal Code § 630 .......... 17

OR. Rev. Stat. § 15.355(1)(c) .......... 17

Plaintiffs Lizeth Jimenez, Ayreanne Bordeaux, Krystine Aquino-Roraldo, and Regina Berrios ("Plaintiffs") respectfully submit this Opposition to Defendants Mars, Inc., Mars Petcare US, Inc., MMI Holdings, Inc., Medical Management International, Inc. d/b/a Banfield Pet Hospital, and VCA Inc.'s Motion to Dismiss the First Amended Complaint (ECF No. 22) (the "Motion" or "MTD").

**INTRODUCTION**

As polling indicates, "nearly all U.S. pet owners (97%) say their pets are part of their family," and "[a]bout half of pet owners (51%) not only consider their pets to be a part of their family but say they are as much a part of their family as a human member." Anna Brown, *About Half Of U.S. Pet Owners Say Their Pets Are As Much A Part Of Their Family As A Human Member*, PEW RESEARCH CENTER (July 7, 2023) (cleaned up).[1] So, in the same way a parent would not want a pediatrician employing a large technology company to collect medical information about their children for use in marketing and advertising, so too would pet owners balk at veterinarians doing the same for pets. States like California agree, as California "enacted Cal. Bus. & Prof. Code § 4857(a), which prohibits veterinarians from disclosing any information concerning an animal receiving veterinary services, the client responsible for the animal receiving veterinary services, or the veterinary care provided to an animal." First Amended Complaint (ECF No. 13) (the "FAC") ¶ 27.

Disregarding their patients' right to privacy in veterinary communications, Defendants Medical Management International, Inc. d/b/a Banfield Pet Hospital ("Banfield") and VCA Inc. ("VCA") employed Meta (Facebook) to track patients' activities across their websites,

[1] Available at https://www.pewresearch.org/short-reads/2023/07/07/about-half-us-of-pet-owners-say-their-pets-are-as-much-a-part-of-their-family-as-a-human-member/.

banfield.com and vca.com. And Meta, surreptitiously and without the consent of patients, wiretapped Plaintiffs' and other patients' veterinary communications with these Defendants, including office visit details, medications purchased, and other information about patients' pets. FAC ¶¶ 54-81. This information was then used for marketing and advertising, including by Meta itself. *Id.* ¶¶ 30-49. Crucially, Banfield and VCA did not act alone this conduct. Instead, Plaintiffs allege Banfield and VCA are but "alter egos" of larger companies—Mars, Inc. ("Mars"), Mars Petcare US, Inc. ("Mars Petcare"), and MMI Holdings, Inc. ("MMI Holdings")—whose control over their subsidiaries, the data collected by Meta, and the relationship with Meta itself exposes these entities to liability as well. *Id.* ¶¶ 97-109. Thus, Plaintiffs bring claims against all Defendants for violations of the California Invasion of Privacy Act ("CIPA") §§ 631 and 632 to vindicate these privacy harms.

Defendants, for their part, do not dispute these disclosures to Meta are occurring. Instead, Defendants try to avoid personal jurisdiction in Oregon despite the nearly fifty (50) clinics maintained in Oregon by Banfield and VCA and the robust allegations of alter ego liability. They try to find refuge in forum selection and choice of law clauses that are not binding under clear Ninth Circuit precedent, and claim Plaintiffs do not allege a lack of consent when in fact Plaintiffs allege the exact opposite (and it is Defendants' burden to show consent regardless). For the following reasons, Defendants' Motion should be denied in its entirety.

## ARGUMENT

### I. THIS COURT HAS PERSONAL JURISDICTION OVER ALL DEFENDANTS

Defendants contend that "Plaintiffs (who are all California residents) fail to allege sufficient facts to support this Court's jurisdiction over their California-based claims against out-of-state defendants Mars, Marsi Petcare, MMI Holdings, and VCA." MTD at 12. *First*,

Defendants argue Plaintiffs "fail to allege that . . . VCA purposefully directed their activities toward Oregon in a way that caused any relevant harm that those entities knew was likely to be suffered in Oregon." MTD at 13.[2] *Second*, Defendants argue Plaintiffs' claims "do not arise out of or relate to any defendant's alleged activities in Oregon." *Id.* at 13. *Finally*, Defendants argue Plaintiffs "do not plead sufficient facts to support" personal jurisdiction over Mars, Mars Petcare, and MMI Holdings under an "alter ego" theory. *Id.* at 13-14. Each of these arguments fail.

### A. This Court Possesses Specific Jurisdiction Over VCA Because VCA Purposefully Directed Its Tortious Acts At Oregon

Defendants contend "Plaintiffs fail to allege that Banfield or VCA purposefully directed their relevant activities toward Oregon" because (i) Plaintiffs allege "the effects of Banfield's and VCA's conduct were felt in California," not Oregon; and (ii) "Plaintiffs do not allege that any harm was suffered by the California-based plaintiffs in Oregon as a result of Banfield or VCA treating Oregon animals in Oregon-based animal hospitals." MTD at 14-15. Defendants are wrong on both fronts.

To establish "purposeful availment" or "purposeful direction," Plaintiffs must allege "the defendant [must] have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 805 (9th Cir. 2004) (citing *Calder v. Jones*, 465 U.S. 783 (1984)).

*First*, the fact Plaintiffs were wiretapped in California does not mean VCA is not subject to jurisdiction in Oregon. "Under clearly established Ninth Circuit precedent, a plaintiff need not be a resident of the forum state in order to suffer foreseeable harm there." *AirWair Int'l Ltd. v.*

---

[2] Defendants make the same arguments as to Banfield, although Defendants do not contest that personal jurisdiction over Banfield is proper. *See* MTD at 13 n.6.

*Schultz*, 73 F. Supp. 3d 1225, 1237 (N.D. Cal. 2014) (citing *Mavrix Photo, Inc.*, 647 F.3d 1218, 1231 (9th Cir. 2011)). For instance, in *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 772 (1984), the Supreme Court sustained jurisdiction over *Hustler Magazine* in New Hampshire despite the fact that the plaintiff was "a resident of New York," and the defendant's only contact with New Hampshire was its subscriber base. *See also id.* at 773-74 ("Respondent's regular circulation of magazines in the forum State is sufficient to support an assertion of jurisdiction in a libel action based on the contents of the magazine."). Indeed, the Supreme Court specifically noted a "plaintiff's residence in the forum State is not a separate requirement, and lack of residence will not defeat jurisdiction established on the basis of defendant's contacts." *Id.* at 780.

Likewise, the Ninth Circuit has held "[i]f a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state," and reiterated that *Keeton* "sustained the exercise of personal jurisdiction in New Hampshire even though it is undoubtedly true that the bulk of the harm done to petitioner occurred outside New Hampshire." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir. 2006) (cleaned up).

So too here. VCA purposefully directed its business at Oregon by establishing no fewer than twenty (20) veterinary clinics in Oregon (FAC ¶ 13). VCA's website operates in conjunction with those clinics, allowing customers to schedule appointments at the Oregon clinics and purchase prescribed medications. FAC ¶¶ 59-62, 66-67, 69-70. Indeed, website users can select veterinarians that specifically operate out of Oregon clinics. *See id.* ¶ 61. And because there is nothing unique about VCA's website on a state-by-state basis, it goes to reason that Meta—as employed by Defendants—intercepts the same communications in every state. It was therefore foreseeable to VCA that it may be haled into court in Oregon, rather than as a result of some

"random, fortuitous, or attenuated contacts." *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1090 (9th Cir. 2023) (cleaned up); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985) ("Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a substantial connection with the forum State. Thus where the defendant deliberately has engaged in significant activities within a State . . . it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well."). Thus, VCA's contacts in Oregon are sufficient to establish jurisdiction over it, and Plaintiffs' residence in California "will not defeat jurisdiction." *Keeton*, 465 U.S. at 780.

*Second*, VCA's operation of numerous clinics in Oregon in conjunction with its interactive website satisfies the purposeful direction test. In *Kauffman v. Papa John's Int'l, Inc.*, No. 22-cv-1492-L-MS, 2024 WL 171363, at *4 (S.D. Cal. Jan. 12, 2024), the court sustained jurisdiction over Papa John's based on alleged wiretapping that occurred on its website where Papa John's "operates the interactive website www.papajohns.com, that allows California users to peruse menus, place orders, and pay for food from Papa John retail stores as part of its regular course of business." The court noted the "integrat[ion]" of the "interactive website . . . with retail outlets in California" was sufficient for jurisdiction because the website was part of "Papa John's [] carrying on part of its general business in California by marshaling the market via its website." *Id.*

The same result applies here. It is indisputable that VCA's (and Banfield's) website is interactive: users are required to "affirmatively enter[], and interact[] with, information on the websites" to schedule appointments and purchase medications. FAC ¶ 53; *see also id.* ¶¶ 55-70. And VCA's operation of twenty (20) clinics in Oregon (and Banfield's operation of twenty-nine (29)) are "integrated with [the veterinary clinics] in [Oregon]." *Kauffman*, 2024 WL 171363, at *4; *see also Lindora, LLC v. Isagenix Int'l, LLC*, 198 F. Supp. 3d 1127, 1139-40 (S.D. Cal. 2016)

(sustaining jurisdiction where "Isagenix's website contains a page directed specifically to California consumers regarding Isagenix's compliance with a California consumer protection statute"). And, to state the obvious, there is "no *per se* requirement that the defendant *especially* target the forum in its business activity." *Curry v. Revolution Labs, LLC,* 949 F. 3d 385, 399 (7th Cir. 2020) (emphasis added); *see also S.D. v. Hytto Ltd.*, No. 18-cv-00688-JSW, 2019 WL 8333519, at *4 (N.D. Cal. May 15, 2019) ("By intercepting the transmissions of Body Chat app users, Hytto targeted its wrongful conduct at customers, some of whom Hytto knew, at least constructively, were residents of the U.S. Thus, the 'express aiming' requirement is satisfied."). Thus, VCA's operation of the interactive website in conjunction with its nearly two-dozen clinics Oregon is sufficient to give rise to personal jurisdiction. *See also Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1094 (9th Cir. 2023) (finding "the sales of physical products into a forum via an interactive website can be sufficient to establish that a defendant expressly aimed its conduct at the forum").[3]

**B. Plaintiffs' Claims Relate To Banfield And VCA's Contacts In Oregon**

Defendants next contend "plaintiffs' CIPA claims do not arise out of or relate to that Oregon conduct" because "plaintiffs allege that all activity relevant to their CIPA claims (the extraction and sharing of their data from Banfield's and VCA's websites) occurred in California."

[3] Defendants cite to *Briskin v. Shopify, Inc.*, 87 F.4th 404 (9th Cir. 2023), for the proposition that "plaintiffs' claims [] have nothing to do with the defendants' brick-and-mortar operations in [Oregon]." MTD at 17 (cleaned up). Defendants' citations to *Briskin* should be disregarded, as the Ninth Circuit vacated this opinion pending *en banc* review. *See Briskin v. Shopify, Inc.*, 101 F.4th 706 (9th Cir. 2024). Regardless, *Briskin* concerned Shopify's collection of data from *another company's website* in California, not from Shopify's website itself. *See Briskin*, 87 F.4th at 423 (Shopify's "extraction and retention of consumer data depends on the actions of third-party merchants who are engaged in independent transactions that themselves do not depend on consumers being present in California"). By contrast, Plaintiffs' claims here have to do with the collection of data from Banfield's and VCA's websites, which relate to the operation of veterinary clinics in Oregon with which the websites are integrated.

MTD at 16. This is wrong. As the Supreme Court has held, "a strict causal relationship between the defendant's in-state activity and the litigation" is not required for jurisdiction. *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 592 U.S. 351, 362 (2021) ("*Ford*"). On the contrary, "some relationships will support jurisdiction without a causal showing." *Id.* So, "[w]hile there is no precise test for determining whether a plaintiff's claims 'relate to' a defendants' contacts, the U.S. Supreme Court has held that . . . [a]t bottom, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that took place in the forum State." *In re McKinsey & Co., Inc. Nat'l Opiate Consultant Litig.*, 637 F. Supp. 3d 773, 787 (N.D. Cal. 2022) (cleaned up).

Here, Plaintiffs' claims concern the wiretapping of their electronic communications on the Banfield and VCA websites. As noted above, these websites are integrated with Defendants' veterinary clinics, including the nearly fifty (50) clinics between Banfield and VCA in Oregon. *See* Argument § I.A, *supra*; *see also Kauffman*, 2024 WL 171363, at *4; *Swarts v. Home Depot, Inc.*, No. 23-cv-0995-JST, 2023 WL 5615453, at *5 (N.D. Cal. Aug. 30, 2023) ("Home Depot contends that Swarts's generic allegations about Home Depot's sales and business contacts in California fail the but-for test because they are too attenuated from Home Depot's alleged recording of Swarts' chats to support personal jurisdiction. . . . [But a]t the very least, Swarts's claim that Home Depot recorded online chat conversations concerning products he had purchased without his consent relates to Home Depot's connection with the forum, and that is sufficient for this element to be satisfied."). Indeed, the specific communications Plaintiffs claim were wiretapped relate to setting up appointments at in-forum veterinary offices, filling prescriptions stemming from veterinary visits, and receiving information about veterinary diagnoses and treatment. FAC ¶¶ 27, 57, 64, 66, 69, 84. Thus, Plaintiffs' claims relate to Defendants' contacts

in Oregon. Plaintiffs' residence in Oregon is not required given Defendants' Oregon contacts relate to Plaintiffs' claims. *See Keeton*, 465 U.S. at 780.

### C. Banfield And VCA's Oregon Contacts May Be Imputed Onto Mars, Mars Petcare, And MMI Holdings Because Banfield And VCA Are "Alter Egos" Of Each Of These Defendants

Defendants contend "[e]ven if this Court determines that it has personal jurisdiction over Banfield or VCA based on their Oregon contacts, plaintiffs have not alleged sufficient facts to impute that jurisdiction to parent or affiliate companies such as Mars, Mars Petcare, or MMI Holdings through alter ego liability." MTD at 18. Defendants are wrong.

"Under Oregon law, a party advancing an alter ego theory must make a *prima facie* showing that an entity is the alter ego of another." *Barrie v. NFH Oregon, LLC*, No. 6:20-cv-01038-MC, 2020 WL 9211003, at *5-6 (D. Or. Nov. 4, 2020) (internal citations omitted). "The elements to make a prima facie case are: (1) the party controlled the entity; (2) the party used its control over the entity to engage in improper conduct; and (3) the improper conduct harmed the party urging the alter ego theory." *Id.* (citing *State ex rel. Neidig v. Superior Nat. Ins.*, 343 Or. 434, 454 (2007)). "When all three elements are present, the Court may find that the arbiter has proper personal jurisdiction over the third party." *Barrie*, 2020 WL 9211003, at *6. Plaintiffs have sufficiently alleged all three elements here.

#### 1. Mars, Mars Petcare, And MMI Holdings Control Banfield And VCA

As to the first factor, Plaintiffs have sufficiently alleged Mars, Mars Petcare, and MMI Holdings control Banfield and VCA. "The control element requires showing that the party had actual control over the specific conduct that led to the other party's harm." *Barrie*, 2020 WL 9211003, at *6. (internal citations omitted). "Control can be established where two companies are 'operationally a single company for all practical purposes.'" *Bazan v. Coleman Indus., Inc*, No.

6:19-cv-01823-MK, 2021 WL 4498645, at *7 (D. Or. Sept. 21, 2021) (quoting *Neidig*, 343 Or. at 456). "In assessing whether two companies are 'operationally a single company for all practical purposes,' courts may consider whether the companies share common bank accounts, workspaces, 'board members, executive officers, legal counsel, investment managers, accountants, and auditors' and whether board meetings are 'held on the same day, and the minutes of the meetings were identical for the two companies.'" *Id.* (quoting *Neidig*, 343 Or. at 456). Plaintiffs sufficiently allege each of these indicia here:

***Undercapitalization.*** Plaintiffs allege "all profits generated by Mars's subsidiaries are transferred daily to Mars's bank account, with "a zero balance in [subsidiary] bank accounts at the end of the day" and "all cash earned . . . flow[ing] to Mars, Incorporated." FAC ¶ 98 (citing *Mars, Inc. v. Trurx LLC*, 2016 WL 4034803, at *6 (E.D. Tex. Mar. 14, 2016)); *see also Bazan*, No. 6:13-cv-526-RWS-KNM, 2021 WL 4498645, at *7 ("In assessing whether two companies are operationally a single company for all practical purposes, courts may consider whether the companies share common bank accounts.") (cleaned up).[4]

***Operate As A Single Company.*** Plaintiffs allege "Mars repeatedly refers to employees of the Subsidiaries as Mars employees" (FAC ¶ 101); "Mars's employee benefits are made available to employees of the Subsidiaries" (FAC ¶ 102); "[j]ob listings for roles with Mars and the

---

[4] Defendants are wrong to argue "improper or inadequate capitalization as relevant to the alter ego test occurs only where a subsidiary is so underfunded that a creditor is unable to collect against the corporation because it was inadequately capitalized." MTD at 21 (cleaned up). Defendants' cited authorities on this point analyzed whether there was "improper conduct," not whether the two companies operated as one. *Amfac Foods, Inc. v. Int'l Sys. & Controls Corp.*, 294 Or. 94, 109 (1982); *Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*, 397 F.3d 1217, 1229 (9th Cir. 2005). And *Chien v. Bumble Inc.*, 641 F. Supp. 3d 913, 926 (S.D. Cal. 2022), only rejects that "merely operating as a holding company that lacks a revenue stream amounts to undercapitalization." But those are not Plaintiffs' allegations, which concern Mars's deliberate emptying of its subsidiaries' bank accounts on a daily basis and transfer of those funds to Mars.

Subsidiaries use Mars's and the Subsidiaries' branding interchangeably" (FAC ¶ 103); "Mars makes decisions regarding its Subsidiaries' pay scale, benefits, and diversity requirements" (FAC ¶ 104); and "Mars holds out the Subsidiaries as part of Mars, rather than entirely separate entities" (FAC ¶ 105). *See Bazan*, 2021 WL 4498645, at *7 (factor allege where, *inter alia,* "[t]he Coleman Industries employee handbook specifically references Valley Hop Farm as member of its 'umbrella organization' . . . Coleman Industries has an annual meeting at which owners and managers of the various Coleman-associated entities 'sit down' and decide 'what the need might be for each farm' . . . [and] The Valley Hop Farm President and Secretary, who own substantial stakes in Coleman Agricultural, make decisions about what crops to plant.") (cleaned up); *ADO Fin., AG v. McDonnell Douglas Corp.*, 931 F. Supp. 711, 717-718 (C.D. Cal. 1996) ("MDC presents substantial evidence that there is a unity of interest . . . Steinbrugger appoints ADO's board, directs ADO's business decisions, and manages ADO's daily operations.") (cleaned up).

***Shared Executives And Office Space.*** Plaintiffs allege "Mars . . . appoints executives for the other Subsidiaries, those executives report to Mars directly, and there is overlap between Mars's and its Subsidiaries' executives" (FAC ¶ 100); "VCA['s] . . . President . . . report[s] to Dough Drew, who . . . oversee[s] operations for Mars Veterinary Health" and "Doug Drew was listed as the President of Mars Veterinary Health North America, and [] his responsibilities include Banfield . . . and VCA veterinary hospital groups" (FAC ¶ 100 (cleaned up)); and "Mars Veterinary Health operates out of . . . Banfield's and MMI Holding's principal place of business … [and] VCA's principal place of business." *Bazan*, 2021 WL 4498645, at *7.[5]

[5] Defendants' cited authorities on this point only state this factor *alone* is "insufficient to establish the requisite level of control." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015); *MMI, Inc. v. Baja, Inc.*, 743 F. Supp. 2d 1101, 1111 (D. Ariz. 2010).

### 2. Mars, Mars Petcare, And MMI Holdings Used Their Control Of The Banfield And VCA Websites To Cause The Wiretapping To Occur, Which Harmed Plaintiffs

As to the second factor, Plaintiffs have sufficiently alleged Mars, Mars Petcare, and MMI Holdings used their control over Banfield and VCA to commit improper conduct. "Improper conduct includes instances when a corporation was used for the perpetration of a fraud, to accomplish fraud or injustice, or in bad faith [or] misrepresentation that is short of fraud." *Bazan*, 2021 WL 4498645, at *7 (cleaned up). Notably, "[i]mproper conduct is broader than legal culpability; it encompasses oppressive or manipulative conduct that uses a corporate form to harm a creditor." *Id.* (cleaned up); *see also Amfac Foods*, 294 Or. at 110 ("In a number of cases involving regulations, courts have enjoined conduct of parent corporations which, in order to evade federal or state regulation, were doing business by means of wholly-owned subsidiaries.").

Here, Plaintiffs allege Mars, Mars Petcare, and MMI Holdings exercised control over the Banfield and VCA websites, which allowed Mars, Mars Petcare, and MMI Holdings to employ Meta on these websites to conduct the wiretapping. As evidence of this control over the websites, Plaintiffs allege "both the Banfield Website and VCA Website contain privacy-related policies and notices created by Mars that are linked to Mars's website, and language indicating that Mars owns and/or operates both websites." FAC ¶ 107. Plaintiffs further allege "Mars controls the gathering of information—and the information gathered—from the Banfield and VCA websites, meaning Mars controlled the websites and/or websites-related conduct challenged by Plaintiffs and Class Members." FAC ¶ 108. Thus, Plaintiffs allege Mars, Mars Petcare, and MMI Holdings exercised "actual control over the specific conduct that led to [Plaintiffs'] harm": the wiretapping on the Websites. *Barrie*, 2020 WL 9211003, at *5 (internal citations omitted).

Further, Plaintiffs plausibly allege Mars, Mars Petcare, and MMI Holdings undercapitalized Banfield and VCA. Argument § I.C.1, *supra*. "[G]ross undercapitalization of the debtor corporation, by itself, may suffice to hold the shareholder liable to a creditor who is unable to collect against the corporation." *Amfac*, 294 Or. at 109. This undercapitalization will prevent Plaintiffs from collecting from Banfield and VCA (should these defendants ultimately be found liable) because Mars drains these subsidiaries' bank accounts to $0 on a daily basis. FAC ¶ 98.

## II. PLAINTIFFS STATE VIABLE CLAIMS AGAINST MARS, MARS PETCARE, AND MMI HOLDINGS PURSUANT TO ALTER EGO LIABILITY

Defendants contend "[f]or the same reasons that plaintiffs' theory of alter ego jurisdiction is legally defective, plaintiffs' theory of liability … fails as a matter of law." MTD at 26. On the contrary, for the same reasons as Plaintiffs' theory of alter ego jurisdiction *is* legally sufficient, so too is Plaintiffs' theory of alter ego liability. Argument §§ I.C.1-2, *supra*.

Defendants also claim "plaintiffs do not allege that Mars Petcare is even a parent company of either Banfield or VCA. Instead, plaintiffs mistakenly rely on the public relations term that Mars uses . . .to suggest that a similarly named entity, Mars Petcare US, Inc., should somehow be liable." MTD at 27 (cleaned up).

Ultimately, to the extent there are questions of fact regarding the parent-subsidiary relationship between each of these entities (and there appear to be based on Plaintiffs' allegations and Defendants' arguments), this Court should allow jurisdictional discovery to definitively determine the corporate relationship between each of these entities. Plaintiffs' myriad allegations concerning Mars Petcare's relationship to the other Defendants—let alone the interplay between all of the Defendants—provide "a colorable basis for personal jurisdiction" necessary for "jurisdictional discovery." *Ferguson v. Smith*, No. 3:18-cv-00372-SB, 2018 WL 3733665, at *5

(D. Or. July 18, 2018), *report and recommendation adopted*, 2018 WL 3732657 (D. Or. Aug. 6, 2018) (cleaned up).

## III. DEFENDANTS HAVE NOT MET THEIR BURDEN TO SHOW NOTICE OF OR ASSENT TO VCA'S TERMS OF USE, AND THE FORUM SELECT CLAUSE DOES NOT COVER THE CLAIMS AT ISSUE

Defendants argue "plaintiffs' claims against VCA arising from alleged activity on VCA's website should be dismissed because the claims are subject to a mandatory California forum-selection provision and are thus filed in the wrong court." MTD at 29. This is wrong.

*Jackson v. Amazon.com, Inc.*, 65 F.4th 1093 (9th Cir. 2023) controls the outcome of this issue. In *Jackson*, Amazon sought to compel arbitration of the plaintiff's privacy claims based on a broad arbitration compelling disputes that arose out of or related to the terms and several other categories of services. *Id.* at 1095. The Ninth Circuit rejected Amazon's bid to compel arbitration on several grounds:

- The Ninth Circuit first emphasized "[i]t was Amazon's burden to show assent [to the agreement], not [plaintiff's] to show lack thereof." *Jackson*, 65 F.4th at 1100.

- The Ninth Circuit next held Amazon's failure to submit the design and content of the e-mail allegedly informing the plaintiff of the arbitration clause meant Amazon could not meet its burden to show assent. *Id.* ("[T]here is no evidence that the email allegedly sent to drivers adequately notified drivers of the update. The district court did not have the email, so it could not evaluate whether the email (assuming it was received at all) sufficed to provide individualized notice.").

- Finally, the Ninth Circuit held the privacy claims at issue did not "relate to" the terms or any of the enunciated categories because "Amazon's alleged misconduct existed independently of the contract and therefore fell outside the scope of the arbitration provision." *Id.* at 1104.

Defendants' argument here fails for all of the same reasons as the Ninth Circuit found in *Jackson*. *First*, Defendants bear the burden of proving Plaintiffs assented to the VCA Terms of Use. *Id.* at 1100. Yet, Defendants only cite to the language of the terms themselves. MTD at 30.

Crucially, Defendants have *not* introduced the design and content of the VCA webpage showing where any hyperlink to the Terms of Use was placed. *See generally* Decl. of Kristin Asai in Support of Defendants' Motion to Dismiss ("Asai Decl.") (ECF No. 23). This is important because, unless Defendants can show Plaintiffs were provided "individualized notice" of the Terms of Use, Defendants cannot demonstrate Plaintiffs were on notice of and therefore assented to the Terms of Use and the forum selection clause within. *Jackson*, 65 F.4th at 1100; *see also Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014) ("[W]here, as here, there is no evidence that the website user had actual knowledge of the agreement, the validity of the browsewrap agreement turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract.").[6] As the Ninth Circuit has repeatedly held, merely using a website does not bind a user to any terms they are not made conspicuously aware of and affirmatively asked to assent to. *See, e.g.*, *Nguyen*, 763 F.3d at 1177 ("Where the link to a website's terms of use is buried at the bottom of the page or tucked away in obscure corners of the website where users are unlikely to see it, courts have refused to enforce the browsewrap agreement."); *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 857 ("Website users are entitled to assume that important provisions—such as those that disclose the existence of proposed contractual terms—will be

[6] Defendants claim because Plaintiffs cite Banfield and VCA's Terms of Use in the FAC, Plaintiffs must necessarily be bound by the terms. MTD at 30. This is a silly argument. Alleging that Plaintiffs could not have consented to the wiretapping based on the language of the Terms of Use does not mean Plaintiffs were aware of those terms when they browsed the website, nor can Defendants show as much. *See Jackson* at 1100. Indeed, Plaintiffs allege expressly the opposite: they were *not* on notice of and did *not* consent to the Terms of Use. FAC ¶ 84. And Plaintiffs' attorneys' good-faith investigation of the claims at issue does not impute knowledge onto Plaintiffs. *See Callahan v. PeopleConnect, Inc.*, 2022 WL 823594, at *1 (9th Cir. Mar. 18, 2022) ("The California Supreme Court has held that attorneys may not impair their client's substantial rights … without the client's consent.").

prominently displayed, not buried in fine print."); *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1220-21 (9th Cir. 2019).[7]

*Second*, even if Defendants met their burden to show Plaintiffs' notice of and assent to the VCA Terms of Use (Defendants have not per *Jackson*), this dispute does not fall within the scope of the forum selection clause. Defendants admit the forum selection clause is only applicable to "legal proceeding[s] arising out or in relation to these Terms of Use." MTD at 30. "[F]orum-selection clauses covering disputes 'relating to' a particular agreement apply to any disputes that reference the agreement or have some logical or causal connection to the agreement." *Yei A. Sun v. Advanced China Healthcare, Inc*., 901 F.3d 1081, 1086 (9th Cir. 2018) (cleaned up); *see also Psarros v. Avior Shipping, Inc.*, 192 F. Supp. 2d 751, 753-54 (S.D. Tex. 2002) (finding forum selection clause "limited to matters of contract interpretation or enforcement alone" and declining to enforce the clause because it did "not refer to disagreements arising from torts committed by any of the contracting parties"). But Plaintiffs claims have no causal connection to the Terms of Use. Instead, they exist independently, stemming instead from Plaintiffs' use of the VCA website and wiretapping by a third-party entity that has nothing to do with Defendants. FAC ¶¶ 4-8, 50-70, 82.

In other words, the forum selection clause only covers claims that actually have to do with the Terms of Use. *See Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1218-19 (11th Cir. 2011) (claims must have "some direct relationship" or "direct connection" with even the broad language of a clause; "otherwise, the term ['relate to'] would stretch to the horizon and beyond" or "be

[7] Defendants are also precluded from introducing this evidence and argument for the first time on reply. Generally, a party waives any argument raised for the first time in a reply brief. *Seal Source, Inc. v. Calderon*, No. 03:09-cv-00875-HU, 2011 WL 5041275, at *4 (D. Or. Sept. 29, 2011) (citing *Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir. 2010)).

meaningless."). Plaintiffs' claims exist independently of the Terms of Use because, even if the Terms of Use did not exist, Plaintiffs' wiretapping claims still would. Thus, the forum selection clause does not cover Plaintiffs' claims because Defendants "could have engaged in the same conduct even in the absence of any contractual . . . relationship with the [P]laintiff[s], and a third party could have brought the same claims [] based on virtually the same alleged facts." *United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*, 871 F.3d 791, 799 (9th Cir. 2017) (cleaned up); *see also*, *e.g.*, *Jackson*, 65 F.4th at 1104; *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 183-84 (2d Cir. 2021); *Jones v. Halliburton Co.*, 583 F.3d 228, 240 (5th Cir. 2009); *Doe*, 657 F.3d 1204, 1219-20 (11th Cir. 2011).

Further, to the extent there is any ambiguity as to whether the forum selection clause covers this dispute, "courts construe [such ambiguity] against the drafter," Defendants. *JPaulJones, L.P. v. Zurich Gen. Ins. Co. (China) Ltd.*, 533 F. Supp. 3d 999, 1009 (D. Or. 2021), *aff'd sub nom*. *JPaulJones, L.P. v. Zurich Ins. Co., (China) Ltd*., 2022 WL 1135424 (9th Cir. Apr. 18, 2022). That too supports a finding the forum selection clause does not cover Plaintiffs' claims.

In sum, under *Jackson*, this Court must find that Defendants failed to meet their burden to show Plaintiffs' notice of and assent to the VCA Terms of Use (and the forum selection clause within), and the forum selection clause does not cover Plaintiffs' independently-existing claims.

## IV. DEFENDANTS HAVE NOT MET THEIR BURDEN TO SHOW NOTICE OF OR ASSENT TO BANFIELD'S TERMS AND CONDITIONS, AND THE CHOICE OF LAW CLAUSE IS UNENFORCEABLE REGARDLESS

Defendants argue "Plaintiffs cannot state a claim against any defendant arising from conduct on Banfield's website under CIPA, *i.e.*, California law, because the parties agreed that only Oregon law governs the transactions on Banfield's website." MTD at 31. That is wrong.

*First*, for the same reasons as VCA's forum selection clause, (i) Defendants have not met their burden to show Plaintiffs' notice of or assent to Banfield's Terms of Use, and (ii) Plaintiffs' claims exist independently of Banfield's Terms of Use, and therefore cannot be encompassed by the choice of law clause. Argument § III, *supra*. Indeed, the choice of law clause is even narrower than the forum selection clause. Banfield's clause covers "[the] Agreement and all transactions contemplated hereby." Asai Decl., Ex. 1 at 17. It is hard to fathom how Plaintiffs could have "contemplated" the interception of the confidential communications with their veterinarians by a third party that has no corporate relationship to Defendants.[8]

*Second*, the Oregon choice of law clause is also unenforceable as applied to Plaintiffs' CIPA claims. "Oregon law precludes enforcement of contractual choice-of-law provisions that '[c]ontravene an established fundamental policy embodied in the law that would otherwise govern the issue in dispute.'" *Powell v. Sys. Transp., Inc.*, 83 F. Supp. 3d 1016, 1022 (D. Or. 2015) (quoting Or. Rev. Stat. § 15.355(1)(c)). CIPA undoubtedly embodies a fundamental policy. "In enacting this [CIPA], the Legislature declared in broad terms its intent 'to protect the right of privacy of the people of this state' from what it perceived as 'a serious threat to the free exercise of personal liberties that cannot be tolerated in a free and civilized society.'" *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985) (quoting Cal. Penal Code § 630). But if Oregon law were to govern this dispute, that fundamental interest would be thwarted. In 2023, the Ninth Circuit struck down

[8] Defendants' reliance on *Palomino v. Facebook*, No. 16-cv-04230-HSG, 2017 WL 76901 (N.D. Cal. Jan. 9, 2017) is misplaced. In *Palomino* the plaintiffs admitted they agreed to the Facebook Terms of Service, which contained the choice of law clause. 2017 WL 76901, at *3. Here, the opposite is true. The FAC contains no allegations that Plaintiffs agreed to the Banfield Terms and Conditions, and Defendant provides no evidence in its Motion that such an agreement was made. Further, the Facebook Terms of Service applied to "any claim that might arise between [a user] and [Facebook]," not just transactions contemplated by the Terms and Conditions, so it was clear the plaintiff's claims fell within the scope of the clause. *Palomino*, 2017 WL 76901 at *3.

Oregon's wiretapping statute as facially unconstitutional. *Project Veritas v. Schmidt*, 72 F.4th 1043, 1068 (9th Cir. 2023), *reh'g en banc granted, opinion vacated*, 95 F.4th 1152 (9th Cir. 2024). As such, application of Oregon law would leave Plaintiffs and Class Members (who are all California citizens) without a remedy for Defendants' violations of their privacy. Under these circumstances, the Oregon choice of law clause cannot be enforced, and application of California law is proper. *See*, *e.g.*, *In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155, 1170 (N.D. Cal. 2016) (declining to enforce California choice of law clause where "Illinois will suffer a complete negation of its biometric privacy protections for its citizens if California law is applied"); *Patterson v. Respondus, Inc.*, 593 F. Supp. 3d 783, 812 (N.D. Ill. 2022) (declining to enforce Washington choice of law clause where doing so "would thus thwart Plaintiffs' individual right to assert biometric-privacy claims"); *Hogan v. Amazon.com, Inc.*, No. 21 C 3169, 2022 WL 952763, at *4 (N.D. Ill. Mar. 30, 2022) (same).[9]

## V. PLAINTIFFS PLAUSIBLY ALLEGE A VIOLATION OF CIPA § 631

Defendants do not—and cannot—dispute the general proposition that as a website provider, they can be held liable under CIPA § 631(a) for aiding, agreeing with, and/or employing Meta's wiretapping. That is because courts have near universally held that a website developer (*e.g.*, Defendants) that permits or enables a third-party entity (*e.g.*, Meta) to wiretap the communications of website visitors is itself liable for wiretapping. *See*, *e.g.*, *Revitch*, 2019 WL 5485330, at *2 ("Although Moosejaw cannot be liable for eavesdropping on its own communications with Revitch, the complaint adequately alleges that Moosejaw violated section

[9] Notably, the choice of law clauses in *In re Facebook* and *Patterson* included language that the clause's chosen law should be applied "without regard to conflict of law provisions." *In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d at 1164; *see also Patterson*, 593 F. Supp. 3d at 807 n.11. Nonetheless, both courts declined to enforce the chosen law.

631 by enabling NaviStone's wrongdoing."); *Valenzuela v. Nationwide Mutual Ins. Co.*, 686 F. Supp. 3d 969, 981 (C.D. Cal. Aug. 14, 2023) ("Allowing a third party to listen in makes the third party liable for a violation of Section 631. Section 631 makes clear that aiding a violation is also a violation. Nationwide may be liable for its conduct to aid Akamai's alleged violation.") (cleaned up).

Instead, Defendants argue Plaintiffs' CIPA § 631 claims must fail because "plaintiffs fail to allege a lack of consent to Banfield's and VCA's Terms and Conditions and privacy policies." MTD at 32. And, if Plaintiffs consented to the wiretapping (which they did not), Defendants argue, Plaintiffs cannot set forth a claim under any prong of CIPA § 631. *See* MTD at 37 ("[B]ecause plaintiffs fail to allege facts sufficient to support claims under the first three clauses of § 631, any claim of liability based on aiding and abetting actions under those clauses cannot be supported as a matter of law."). Defendant is wrong.

*First*, Defendants completely ignore that Plaintiffs allege a lack of consent to (i) Meta's wiretapping, *and* (ii) Banfield's and VCA's Terms and Conditions and privacy policies. FAC ¶¶ 82-96 (alleging lack of consent under a section titled "Defendants Never Received Users' Consent To Disclose Their Confidential Communications to Facebook"). At this stage, Plaintiffs' allegations are sufficient. *See, e.g.*, *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 756-57 (N.D. Cal. 2023) ("Plaintiff alleges she was not informed her conversations were being recorded, intercepted, or eavesdropped upon, and did not consent to monitoring by the third-party when she communicated with Defendant. That is sufficient at this stage.") (cleaned up); *Esparza v. Kohl's, Inc.*, --- F. Supp. 3d ---, 2024 WL 1152732, at *3 (S.D. Cal. 2024) ("Plaintiff alleges neither he nor class members expressly or impliedly consented to any of Defendant's

actions when they used the Website to chat with a Kohl's customer service representative. That is sufficient at this stage.") (cleaned up).

*Second*, and more fundamentally, Defendants ignore it is *their burden* to show Plaintiffs' consent to the wiretapping, not Plaintiffs' burden to allege a lack thereof. *See*, *e.g.*, *Brown v. Google LLC*, 685 F. Supp. 3d 909, 926 n.13 (N.D. Cal. 2023) ("The Court finds, again, that consent is a defense to plaintiffs' claims and it is therefore on Google, not plaintiffs, to prove.") (cleaned up); *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 620 (N.D. Cal. 2021) (same); *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 685 (N.D. Cal. 2021) ("The party seeking to establish consent has the burden of proof."); *Jackson*, 65 F.4th at 1100 ("It was Amazon's burden to show assent, not Jackson's to show lack thereof."). Defendants cannot do so.

As an initial matter, Defendant is wrong that the existence of privacy statements in VCA's and Banfield's Terms and Conditions alone is not sufficient for consent. MTD at 32-33; *see also Cody v. Ring LLC*, --- F. Supp. 3d ---, 2024 WL 735667, at *4 (N.D. Cal. Feb. 22, 2024) ("Ring fails to cite any cases in which merely having a privacy policy online is sufficient to show consent under CIPA."). Instead, Defendants must establish Plaintiffs' notice of and assent to the Privacy Policies, which Defendants cannot do. Moreover, even if Plaintiffs were on notice of and assented to the privacy policies (they did not), Defendants fail to show such notice and assent was procured *prior to* the wiretapping, rather than after-the-fact. *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022) ("[W]e conclude that the California Supreme Court would interpret Section 631(a) to require the *prior consent* of all parties to the communication.") (emphasis added). Plaintiffs do not allege the "OneTrust" pop-ups appear prior to the wiretapping, nor do Defendants contend as much. FAC ¶ 85.

Further, even if Defendants had proven agreement to the privacy policies (which they have not), there is at least a question of fact as to whether the privacy statement disclosed (and thus sufficed for consent for) the wiretapping. The FAC alleges "Defendants [] expressly represent that they will refrain from collecting personally identifiable information" in the privacy preference centers on each respective website. FAC ¶ 85. Plaintiffs also allege "[n]o reasonable user would read [Facebook's] terms and representations as permitting Facebook to intentionally intercept electronic communications that it knows the law protects and deems sensitive." FAC ¶ 96. This directly contradicts Defendants' contention that "[a] reasonable viewer of Banfield's and VCA's disclosures would understand that Banfield and VCA may share their customer's information." MTD at 34. What a reasonable consumer would believe if they were on notice of each of these conflicting privacy statements cannot be determined at this stage. *See, e.g.*, *Hilfiker Square, LLC v. Thrifty Payless, Inc.*, No. 6:16-cv-01885-MC, 2016 WL 7031283, at *3 (D. Or. Nov. 29, 2016) ("dismissal at this stage in the proceedings is inappropriate, especially because a determination regarding the parties' objectively reasonable expectations generally involves a question of fact"); *Turner v. Nuance Commc'ns, Inc.*, No. 22-cv-05827-DMR, 2024 WL 2750017, at *7 (N.D. Cal. May 28, 2024) (declining to dismiss CIPA claim based on consent where "there is a factual dispute over whether the DAA sufficiently notified Plaintiffs of Nuance's conduct"); *McCoy v. Alphabet, Inc.*, No. 20-cv-05427-SVK, 2021 WL 405816, at *6 (N.D. Cal. Feb. 2, 2021) ("At the motion to dismiss stage, the Court is not prepared to rule that the Privacy Policy establishes an absolute bar to Plaintiff's claims.").

## VI. PLAINTIFFS PLAUSIBLY ALLEGE A VIOLATION OF CIPA § 632

Defendants contend "Plaintiffs also fail to allege liability against Banfield or VCA, or any other named defendant under § 632 of CIPA" because "Banfield and VCA cannot be held liable

for eavesdropping where Banfield and VCA were the intended recipients of plaintiffs' communications." MTD at 38 (cleaned up). Defendants are wrong.

*First*, a party who aids and agrees with a violation of CIPA § 632 is also liable under the statute. *See Vera v. O'Keefe*, 791 F. Supp. 2d 959, 965 (S.D. Cal. 2011); *Vaccaro v. Altais*, No. 2:23-cv-04513-ODW (BFMx), 2023 WL 7003211, at *5 (C.D. Cal. Oct. 23, 2023). Specifically, Cal. Penal Code § 31 allows for aiding and agreeing with liability. *See* Cal. Penal Code § 31 ("All persons concerned in the commission of a crime … or aid and abet in its commission … are principals in any crime so committed.") This section, when applied to CIPA § 632, "allows for [a defendant who aids and abets another] to be viewed as a principal whether or not she actually physically recorded the confidential conversation." *Vera*, 791 F. Supp. 2d at 965. "The plain language of the statute does not limit liability to the person who has physically recorded a confidential conversation." *Id.*

Here, Plaintiffs allege that Defendant aided, agreed with, and employed Meta's wiretapping of Plaintiffs' communications on Defendants' websites. FAC ¶ 4. Defendants did so by contracting with Meta for the Meta Pixel service and integrating the Meta Pixel into their websites. As a result of Defendants' integration of the Meta Pixel, Facebook was able to eavesdrop upon Plaintiff's and Class Members' confidential communications with Defendants' websites. *Id.* ¶¶ 30-85. Nothing more is required.

*Second*, Defendants can be held directly liable under CIPA § 632, even as a party to the communication. MTD at 38. "Section 632 makes it illegal to either eavesdrop upon or record confidential communications. The third party doctrine applies to eavesdropping, but not recording." *Turner*, 2024 WL 2750017, at *8 n.4. For instance, in *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 99 (2006), the defendant's employees in Georgia allegedly recorded

their telephone conversations with clients in California without their clients' consent. The California Supreme Court found that the defendant could be liable under CIPA § 632 for intentionally recording its conversations with clients involving confidential communications without their consent. As the California Supreme Court held, "the terms of section 632 … do[] not absolutely preclude a party to a telephone conversation from recording the conversation, but rather simply prohibits such a party from secretly or surreptitiously recording the conversation." *Id.* at 117; *see also Gruber v. Yelp Inc.*, 55 Cal. App. 5th 591, 608 (2020) ("[W]e hold that sections 632 and 632.7 prohibit recording a communication, in whole or part, without the consent of all parties, no matter the particular role or degree of participation that a party has in the communication.").

Further reinforcing this, another portion of CIPA states:

> Sections 631, 632, 632.5, 632.6, and 632.7 do not prohibit one party to a confidential communication from recording the communication for the purpose of obtaining evidence reasonably believed to relate to the commission by another party to the communication of the crime of extortion, kidnapping, bribery, any felony involving violence against the person.

CIPA § 633.5. In other words, the California Legislature created a limited exception to CIPA § 632 for certain types of recordings by parties to the communication (an exception that does not apply here) because they "believed section [632] could apply to parties." *See Smith v. LoanMe, Inc.*, 483 Cal. 5th 183, 195 (2021) (holding that CIPA § 632.7 applies to parties to the communication as well as non-parties).

Accordingly, caselaw from the California Supreme Court and the text of CIPA make clear that a party to the communication can be held liable for secretly *recording* a conversation, even if

they cannot be held liable for *eavesdropping on* a conversation.[10] Thus, Plaintiffs' allegations that Defendants employed Meta to secretly record consumers using an "electronic amplifying or recording device" are sufficient to hold Defendants liable for a violation of CIPA § 632. *See*, *e.g.*, FAC ¶¶ 50-70, 82-83, 134, 138.

*Finally*, at the very least, a triable question exists as to whether Plaintiffs had a reasonable expectation their communications and personally identifiable information would be confined to Defendants. *See Brown v. Google LLC*, 685 F. Supp. 3d 909, 939 (N.D. Cal. 2023) ("[T]he question under CIPA is whether, at the time of the conversation, the aggrieved party had a reasonable expectation that it would be confined to the parties thereto. On this question, the Court finds a triable issue exists") (cleaned up). As such, Plaintiffs CIPA § 632 claim cannot be dismissed at this stage.

[10] Defendants' reliance on *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1089 (N.D. Cal. 2018)—which "dismiss[ed] [a] § 632 claim because defendant rideshare company did not *'eavesdrop' on 'communications'* between its own fake customer accounts and competitor" (MTD at 38 (emphasis added)—is distinguishable for this reason.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss should be denied in its entirety.

DATED: June 3, 2024.

Respectfully submitted,

MARKOWITZ HERBOLD PC

*s/ Jermaine F. Brown*

Stanton R. Gallegos, OSB #160091
StantonGallegos@MarkowitzHerbold.com
Jermaine F. Brown, OSB #073415
JermaineBrown@MarkowitzHerbold.com

Sarah N. Westcot*
swestcot@bursor.com
BURSOR & FISHER, PA
701 Brickell Avenue, Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512

Max S. Roberts*
mroberts@bursor.com
BURSOR & FISHER, PA
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150

*Attorneys for Plaintiffs and the Putative Class*
**Pro Hac Vice Application Forthcoming*

2152686.1