**Shannon Armstrong**, OSB No. 060113
shannon.armstrong@hklaw.com
**Kristin Asai**, OSB No. 103286
kristin.asai@hklaw.com
**Abigail Gore**, OSB No. 205387
abigail.gore@hklaw.com
**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, OR 97204
Telephone: 503.243.2300
Fax: 503.241.8014

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| LIZETH JIMENEZ, AYREANNE BORDEAUX, KRYSTINE AQUINO-RORALDO, and REGINA BERRIOS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>MARS, INC., MARS PETCARE US, INC., MMI HOLDINGS, INC., MEDICAL MANAGEMENT INTERNATIONAL, INC. d/b/a BANFIELD PET HOSPITAL, and VCA INC.,<br><br>Defendants. | Case No. 3:23-cv-01786-YY<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>ORAL ARGUMENT REQUESTED |

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..... 1

ARGUMENT ..... 2

I. Plaintiffs failed to plead facts plausibly supporting personal jurisdiction over any defendant. ..... 2

A. Plaintiffs are wrong that Banfield and VCA purposefully directed any activity toward Oregon relevant to plaintiffs' California claims. ..... 3

B. Plaintiffs are wrong that their California claims arise out of or relate to Banfield's or VCA's operation of vet clinics in Oregon. ..... 6

C. Plaintiffs cannot impute any of Banfield's or VCA's activities in Oregon to any other defendant because they fail to allege a plausible theory of alter ego. ..... 8

1. Plaintiffs fail to allege facts plausibly supporting that Mars, Mars Petcare, or MMI Holdings had pervasive control over Banfield or VCA. ..... 9

2. Plaintiffs fail to allege plausible facts supporting that a failure to disregard the corporate forms of any defendant would result in a fraud or injustice. ..... 13

II. Plaintiffs fail to allege a basis for imposing alter ego liability on Mars, Mars Petcare, or MMI Holdings for the actions of Banfield and VCA. ..... 15

III. Plaintiffs' argument that they did not consent to VCA's and Banfield's Terms and Conditions is inconsistent with their allegations as pleaded, and VCA's forum selection clause and Banfield's choice of law provision require dismissal. ..... 18

IV. Plaintiffs fail to plausibly allege a violation of CIPA § 631 or § 632 because they do not meet their burden to affirmatively allege lack of consent and failed to plead aiding and abetting or direct liability under § 632. ..... 21

A. Plaintiffs fail to plead facts plausibly establishing that they did not consent to the disclosure of the information at issue under CIPA § 631 or § 632. ..... 21

B. Plaintiffs' § 632 claim additionally fails because plaintiffs specifically did not plead aiding and abetting liability against any defendant. ..... 25

CONCLUSION ..... 26



HOLLAND & KNIGHT LLP
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Acrymed, Inc. v. Convatec*,
317 F. Supp. 2d 1204 (D. Or. 2004) ....................14, 15

*ADO Fin., AG v. McDonnell Douglas Corp.*,
931 F. Supp. 711 (C.D. Cal. 1996) ....................9, 10

*Airwair Int'l Ltd. v. Schultz*,
73 F. Supp. 3d 1225 (N.D. Cal. 2014) ....................4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................8

*Barrie v. NFH Oregon, LLC*,
No. 6:20-cv-01038-MC, 2020 WL 9211003 (D. Or. Nov. 4, 2020) ....................9

*Bazan v. Coleman Indus., Inc.*,
No. 6:19-cv-01823-MK, 2021 WL 4498645 (D. Or. Sept. 21, 2021) ....................9, 10, 13

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ....................21

*Brown v. Serv. Grp. of Am., Inc.*,
No. 3:20-cv-02205-IM, 2022 WL 43880 (D. Or. Jan. 5, 2022)....................11

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) ....................21

*Cox v. HP Inc.*,
368 Or. 477 (2021)....................7, 8

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ....................22, 23

*Ferguson v. Smith*,
No. 3:18-cv-00372-SB, 2018 WL 3733665 (D. Or. July 18, 2018) ....................17

*Fleet v. Trion Worlds, Inc.*,
No. 15-cv-04721-WHA, 2016 WL 122855 (N.D. Cal. Jan. 12, 2016)....................18

*Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*,
592 U.S. 351 (2021)....................6, 7



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

*Garcia v. Enterprise Holdings, Inc.*,
78 F. Supp. 3d 1125 (N.D. Cal. 2015) ....................21, 22, 24

*Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*,
397 F.3d 1217 (9th Cir. 2005) ....................16

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
72 F.4th 1085 (9th Cir. 2023) ....................5

*Holt v. Urb. League of Portland, Inc.*,
No. 3:22-cv-00837-YY, 2023 WL 2433721 (D. Or. Feb. 17, 2023) ....................11, 12

*Jackson v. Amazon.com, Inc.*,
65 F.4th 1093 (9th Cir. 2023) ....................21

*Jonczyk v. First Nat. Cap. Corp.*,
No. SACV 13–959–JLS, 2014 WL 1689281 (C.D. Cal. Jan. 22, 2014) ....................20

*Kauffman v. Papa John's Int'l, Inc.*,
No. 22-cv-1492-L-MSB, 2024 WL 171363 (S.D. Cal. Jan. 12, 2024) ....................5

*Keeton v. Hustler Mag., Inc.*,
465 U.S. 770 (1984) ....................4

*Lopez v. Apple, Inc.*,
519 F. Supp. 3d 672 (N.D. Cal. 2021) ....................22

*Mars, Inc. v. Trurx LLC*,
No. 6:13-cv-526-RWS-KNM, 2016 WL 4034803 (E.D. Tex. Mar. 14, 2016) ....................11

*MMI, Inc. v. Baja, Inc.*,
743 F. Supp. 2d 1101 (D. Ariz. 2010) ....................13

*Oliver v. Pac. Nw. Bell Tel. Co.*,
53 Or. App. 604 (1981) ....................19, 20

*Palomino v. Facebook, Inc.*,
No. 16-cv-04230-HSG, 2017 WL 76901 (N.D. Cal. Jan. 9, 2017) ....................19

*Project Veritas v. Schmidt*,
72 F.4th 1043 (9th Cir. 2023), *reh'g en banc granted, opinion vacated*, 95
F.4th 1152 (9th Cir. 2024) ....................20

*Ranza v. Nike, Inc.*,
793 F.3d 1059 (9th Cir. 2015) ....................9, 10, 11, 12

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) ....................22



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

*Sundberg v. Joint Apprenticeship Training Comm. of Nw. Line Constr. Indus.*,
No. 3:17-cv-01360-JR, 2018 WL 7108064 (D. Or. Dec. 4, 2018) ....................13

*Talyancich v. Microsoft Corp.*,
No. CV 12–00483 GAF, 2012 WL 1563884 (C.D. Cal. Mar. 28, 2012) ....................19

**Statutes**

Cal. Penal Code § 630 ....................20

Cal. Penal Code § 632 ....................25

ORS 165.540 ....................20

**Other Authorities**

California Civil Jury Instructions (2024), No. 1809 ....................21



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

## INTRODUCTION

Plaintiffs filed this lawsuit for illegal wiretapping under the California Invasion of Privacy Act ("CIPA") against the wrong parties and in the wrong court, and it should be dismissed for lack of personal jurisdiction, improper forum, or failure to state a plausible claim. Plaintiffs oppose dismissal on the grounds that VCA Inc. ("VCA") and Medical Management International, Inc. ("Banfield") operate at least fifty veterinary clinics in Oregon and therefore those Oregon contacts can be imputed to defendants Mars, Incorporated ("Mars"), Mars Petcare US, Inc. ("Mars Petcare"), and MMI Holdings, Inc. ("MMI Holdings") to establish jurisdiction in this Court. (*See* Pls.' Opp'n, Dkt. 32 at 4.) Plaintiffs are wrong. Plaintiffs fail to plead that VCA's or Banfield's alleged wiretapping on their websites—the only conduct at issue in this case—has any connection to any of the Oregon-based veterinary clinics. Instead, plaintiffs' allegations confirm that plaintiffs accessed VCA's or Banfield's websites in California, sought to obtain services in California, and allegedly suffered injury in California. In addition, plaintiffs' deficient jurisdictional allegations against VCA and Banfield cannot be imputed to Mars, Mars Petcare, or MMI Holdings because plaintiffs fail to meet the high burden to pierce the corporate veil. Accordingly, the Court should dismiss all claims against VCA, Mars, Mars Petcare, and MMI Holdings—as well as dismiss Banfield if plaintiffs now disclaim their reliance on Banfield's Terms and Conditions[1]—for lack of personal jurisdiction.

---

[1] Defendants did not move to dismiss Banfield based on lack of personal jurisdiction given plaintiffs' allegations that their CIPA claims arise from the Terms and Conditions on Banfield's website, which include an Oregon forum selection clause. (*See* First Am. Compl., Dkt. 13 ¶ 84 n.60.) Plaintiffs now argue that they did not intend to plead acceptance to Banfield's Terms and Conditions (*see* Pls.' Opp'n at 17), but that after-the-fact argument cannot supersede the allegations in their complaint, particularly when plaintiffs rely on Banfield's jurisdictional concession based on the Oregon forum selection clause (*see id.* at 3 n.2). Nevertheless, if the Court finds that plaintiffs have validly disclaimed any reliance on the Terms and Conditions and forum selection clause to establish jurisdiction over Banfield in this Court, plaintiffs' allegations confirm that they also fail to establish personal jurisdiction over Banfield.



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

Alternatively, the Court should dismiss plaintiffs' CIPA claims against all defendants for failure to state a claim. Plaintiffs argue that their CIPA claims are sufficient because "it is *[defendants'] burden* to show Plaintiffs consent to the wiretapping" and defendants never proved that plaintiffs consented to "(i) Meta's wiretapping, *and* (ii) Banfield's and VCA's Terms and Conditions and privacy policies." (Pls.' Opp'n at 19–20.) Plaintiffs are again wrong. CIPA required plaintiffs to plead lack of consent as an element of their claim and they chose to establish that element by *relying on* Banfield's and VCA's privacy policies and arguing that defendants *exceeded the scope* of those policies. (*See* First. Am. Compl., Dkt. 13 ("FAC") ¶¶ 84–86 (quoting Banfield's and VCA's Terms and Conditions to show what information plaintiffs agreed could not be shared, but stating that "[b]y capturing this information anyway, Defendants fail to receive consent from visitors to intercept their communications").) Because they elected to plead their CIPA claims in this way, plaintiffs cannot avoid the California forum selection clause in VCA's Terms and Conditions or the Oregon choice-of-law provision in Banfield's Terms and Conditions. Plaintiffs also cannot sidestep the language in those terms authorizing VCA and Banfield to share information about plaintiffs' website interactions with third parties, particularly when the information relates to a pet, not the highly regulated and confidential personal health information of a person. Accordingly, even if plaintiffs could meet the threshold for personal jurisdiction (which they cannot), their CIPA claims should be dismissed as a matter of law.

## ARGUMENT

### I. Plaintiffs failed to plead facts plausibly supporting personal jurisdiction over any defendant.

Despite failing to plead any connection between their claims and Oregon, plaintiffs argue that this Court can exercise personal jurisdiction over all defendants because (1) VCA

purposefully directed its tortious acts at Oregon; (2) plaintiffs' claims relate to Banfield's and VCA's contacts in Oregon; and (3) Banfield's and VCA's relevant contacts with Oregon can be imputed to Mars, Mars Petcare, and MMI Holdings under an alter ego theory. (*See* Pls.' Opp'n at 3–12.) Plaintiffs are wrong on all three grounds. First, plaintiffs fail to allege that VCA (or Banfield) purposefully directed any relevant activity toward Oregon because plaintiffs' entirely California-based claims—which arise from alleged wiretapping in California—do not allege that any harm occurred (or was even likely to be suffered) in Oregon as the result of Banfield's and VCA's operation of vet clinics in Oregon. Second, plaintiffs' interactions with Banfield and VCA were solely in California on a website with no relationship whatsoever to any Oregon clinic. As a result, plaintiffs' internet-based claims do not arise out of or relate to Banfield's or VCA's operation of clinics in Oregon and they fail to meet the test for personal jurisdiction. Finally, even if plaintiffs' California claims could provide a basis for personal jurisdiction over Banfield and VCA, plaintiffs fall far short of establishing sufficient facts to disregard any of the defendants' corporate form so as to impute Banfield's or VCA's forum contacts to Mars, Mars Petcare, or MMI Holdings as alter egos.

### A. Plaintiffs are wrong that Banfield and VCA purposefully directed any activity toward Oregon relevant to plaintiffs' California claims.

Plaintiffs fail to meet their burden under the purposeful direction test for personal jurisdiction as to any defendant because plaintiffs' claims are based entirely on actions taken and alleged harm suffered in California, and plaintiffs do not (and cannot) allege that Banfield's or VCA's operation of vet clinics in Oregon have any relationship to this dispute. Plaintiffs agree they must satisfy the purposeful direction test to assert specific personal jurisdiction over Banfield and VCA for their CIPA claims. (*See* Pls.' Opp'n at 3.) To do so, plaintiffs must plead facts showing that Banfield and VCA "(1) committed an intentional act, (2) expressly aimed at



HOLLAND & KNIGHT LLP
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

the forum state, (3) causing harm that the defendant knows is likely to be *suffered in the forum state*." (*Id.* (quoting *Schwarzenegger v Fred Martin Motor Co.*, 374 F.3d 797, 805 (9th Cir. 2004)) (emphasis added).) Even though plaintiffs admit they reside in California and accessed the websites exclusively from California, they argue that they have satisfied the purposeful direction test because (1) "a plaintiff need not be a resident of the forum state in order to suffer foreseeable harm there"; and (2) Banfield's and VCA's "operation of numerous clinics in Oregon in conjunction with its interactive website satisfies the purposeful direction test." (Pls.' Opp'n at 3–5.) Plaintiffs are wrong on both arguments because their complaint does not allege foreseeable harm in Oregon or relate in any way to Banfield's or VCA's clinics in Oregon.

As to plaintiffs' first argument, although a plaintiff residing outside a forum state *may* bring claims in a forum where the defendants caused foreseeable harm to the plaintiffs in that forum, that is not the case here. The authorities plaintiffs cite involved harm clearly suffered by the plaintiff in the forum state, either because a libelous statement was circulated in the forum state or the infringing product was sold within the forum state, which harmed the plaintiff's reputation or business in that market. *See Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775–77 (1984) (explaining that the out-of-forum plaintiff could assert her libel claims against a non-resident defendant in New Hampshire because the plaintiff "was suing, at least in part, for damages suffered in New Hampshire" and libel harms the victim in the state "wherever the offending material is circulated"); *Airwair Int'l Ltd. v. Schultz*, 73 F. Supp. 3d 1225, 1237 (N.D. Cal. 2014) (explaining that the out-of-forum plaintiff could bring its trademark claims in the forum because "where a plaintiff uses its trademark in a state, and the defendant subsequently infringes that trademark in the same state, it is foreseeable that any infringement of those marks would create an injury which would be felt mainly in that state") (cleaned up).



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

Here, in contrast, plaintiffs do not allege that they suffered _any harm_ in Oregon, let alone harm arising from Banfield's and VCA's operation of clinics in Oregon. Accordingly, plaintiffs are wrong that they have alleged any foreseeable harm in Oregon to satisfy the effects test for jurisdiction in Oregon.

Plaintiffs' second argument that VCA's and Banfield's "operation of numerous clinics in Oregon in conjunction with its interactive website satisfies the purposeful direction test" also fails because plaintiffs' claims do not involve either the operation of clinics in Oregon or the use of an interactive website to deliver some product to Oregon. (*See* Pls.' Opp'n at 5.) Again, the cases cited by plaintiffs confirm that a defendant expressly aims its activities to the forum based on the defendant's website where the defendant knows the _*specific plaintiff*_ would suffer harm from the defendant's website in the forum state. *See, e.g.*, *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1091–93 (9th Cir. 2023) (explaining that express aiming is satisfied "if a defendant, in its regular course of business, sells a physical product via an interactive website and causes that product to be delivered to the forum" and the defendants knew the harm would be suffered in the forum because they received "cease-and-desist letters inform[ing] Defendants that their actions were causing harm in Arizona"); *Kauffman v. Papa John's Int'l, Inc.*, No. 22-cv-1492-L-MSB, 2024 WL 171363, at *4 (S.D. Cal. Jan. 12, 2024) (stating that "[t]o show that [the defendant] knew its conduct was likely to cause harm in California, Plaintiff must show that [the defendant] knew of his connection to California"). Indeed, in *Herbal Brands*, the Ninth Circuit acknowledged that because the plaintiff's claims did not arise from the shipment of a product into the forum state, the defendants "might not have known that Plaintiff would be harmed in Arizona" if the plaintiff had not sent cease-and-desist letters notifying the defendants of the harm in the forum. 72 F.4th at 1091 n.2.



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

Here, plaintiffs do not allege any facts that could demonstrate jurisdiction in Oregon arising from plaintiffs' interaction with Banfield's or VCA's website. Plaintiffs do not allege that Banfield or VCA delivered a product to plaintiffs in Oregon as a result of plaintiffs' interactions on the website. They do not allege that they visited Banfield's or VCA's clinics in Oregon or even tried to book an appointment at those Oregon clinics. And plaintiffs never sent letters to Banfield or VCA asserting that their websites were somehow causing injury to the California-based plaintiffs in Oregon. Rather, because plaintiffs are California residents, only allege conduct in California, and seek to take advantage of a California statute, it would be implausible to construe plaintiffs' allegations as somehow asserting conduct relating to Banfield's or VCA's Oregon-based clinics located hundreds of miles away from plaintiffs. Plaintiffs therefore fail to meet their burden of alleging facts plausibly supporting conduct on Banfield's or VCA's websites expressly aimed at California plaintiffs that would foreseeably cause harm to those plaintiffs in Oregon.

### B. Plaintiffs are wrong that their California claims arise out of or relate to Banfield's or VCA's operation of vet clinics in Oregon.

In addition to the deficiencies on the purposeful direction prong of the jurisdictional analysis, plaintiffs also fail to establish that their claims arise out of or relate to Banfield's or VCA's operation of clinics in Oregon—the only Oregon contact plaintiffs rely on in their complaint. Plaintiffs argue that they meet the relatedness prong because their "claims concern the wiretapping of their electronic communications on the Banfield and VCA websites" and those "websites are integrated with Defendants' veterinary clinics, including the nearly fifty (50) clinics between Banfield and VCA in Oregon." (*See* Pls.' Opp'n at 7.) Plaintiffs are wrong. Even under the Supreme Court's expansion of what constitutes a sufficient causal link between a defendant and a forum in *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 592 U.S. 351



HOLLAND & KNIGHT LLP
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

(2021), a plaintiff must still demonstrate some sort of connection between the defendant's forum activities and the plaintiffs' claims, such as where "the product at issue caused injury to forum residents in the forum states[.]" *Cox v. HP Inc.*, 368 Or. 477, 498 (2021) (explaining implications of *Ford Motor Co.* as applied to Oregon courts' personal jurisdiction analysis). Further, following *Ford*, "[e]ven where a causal link exists, due process demands a close enough relationship between the litigation and the defendant's Oregon activities to make it reasonably foreseeable that the nonresident would be haled into court in Oregon to answer the specific allegations." *Id.* at 502.

As described above, plaintiffs fail to plead any facts supporting a causal link between Banfield's and VCA's operation of clinics in Oregon to plaintiffs' claims, which relate to alleged wiretapping of plaintiffs' communications in California. Thus, the mere fact that Banfield's and VCA's websites *could* allow a person to book an appointment at a clinic in Oregon, does not authorize *these* plaintiffs to assert claims in Oregon solely relating to California-based interactions with those websites.

Plaintiffs' new argument that "the specific communications Plaintiffs claim were wiretapped relate to setting up appointments *at in-forum veterinary offices*, filling prescriptions stemming from veterinary visits, and receiving information about veterinary diagnoses and treatment" is entirely unsupported—and implausible—based on plaintiffs' actual allegations. (*See* Pls.' Opp'n at 7 (emphasis added).) Plaintiffs allege that they each live in California and accessed Banfield's or VCA's website from California. (FAC ¶¶ 5–8.) No plaintiff alleges that they ever visited a Banfield or VCA clinic in Oregon or even intended to visit one of those clinics. Even accepting plaintiffs' allegations as true, it defies common sense—and is inconsistent with the pleading standards—to infer that any plaintiff was making an appointment



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

for a veterinary visit in Oregon while they lived hundreds of miles away. *See Ashcroft v. Iqbal*, 556 U.S. 662, 663–64 (2009) (explaining that "determining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense"). Thus, the Court should reject plaintiffs' latent attempt to concoct a connection between their claims and this forum and conclude that plaintiffs' California-based wiretapping claims cannot arise out of or relate to Banfield's or VCA's operation of clinics in Oregon. Moreover, even if plaintiffs had alleged that they booked an appointment at an Oregon veterinary clinic, their California claims would still fail to meet the relatedness test because operating clinics in Oregon did not make it reasonably foreseeable that Banfield and VCA would be haled into court *in Oregon* to answer for the alleged interception of internet communications *in California* under *California law*. *See Cox*, 368 Or. at 502 (explaining that jurisdiction did not exist even where the defendant serviced generators for pre-existing Oregon customers because that conduct was "not directed at, and did not connect it to, prospective Oregon purchasers of products like the [generator at issue]—which is HP's role as a plaintiff in this case"). Accordingly, the Court should dismiss Banfield and VCA for lack of personal jurisdiction.

### C. Plaintiffs cannot impute any of Banfield's or VCA's activities in Oregon to any other defendant because they fail to allege a plausible theory of alter ego.

Because plaintiffs fail to even establish relevant minimum contacts between Banfield or VCA with Oregon, plaintiffs cannot assert jurisdiction over Mars, Mars Petcare, or MMI Holdings, which rely upon Banfield's and VCA's contacts with the forum. In addition, plaintiffs fail to meet even a prima facie burden to warrant the extraordinary remedy of disregarding defendants' corporate separateness to impute Banfield's or VCA's contacts to the other defendants.



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

To impute a subsidiary's contacts to its corporate parent for jurisdictional purposes, plaintiffs must meet a two-part test: "(1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in a fraud or injustice." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015) (cleaned up).[2] Plaintiffs fail to meet both elements.

**1. Plaintiffs fail to allege facts plausibly supporting that Mars, Mars Petcare, or MMI Holdings had pervasive control over Banfield or VCA.**

Plaintiffs fail to meet the unity of interest prong of the alter ego analysis both legally and factually. The "unity of interest" prong requires "a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former," which requires "pervasive control over the subsidiary, such as when a parent corporation dictates every facet of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation." *Id.* (cleaned up). Plaintiffs argue that they "sufficiently alleged Mars, Mars Petcare, and MMI Holdings control Banfield and VCA" because they alleged facts showing "indicia" that the companies are "operationally a single company for all practical purposes." (*See* Pls.' Opp'n at 8–10 (relying on *Bazan v. Coleman Indus., Inc.*, No. 6:19-cv-01823-MK, 2021 WL 4498645 (D. Or. Sept. 21, 2021) and *ADO Fin., AG v. McDonnell Douglas Corp.*, 931 F. Supp. 711 (C.D. Cal. 1996)).) Plaintiffs' reliance on *Bazan* and *ADO*, however, is entirely misplaced.

---

[2] As described below, plaintiffs incorrectly cite the three-part test to establish alter ego *liability*, not jurisdiction, which required plaintiffs to show: "(1) the party controlled the entity; (2) the party used its control over the entity to engage in improper conduct; and (3) the improper conduct harmed the party urging the alter ego theory." (*See* Pls.' Opp'n at 8 (quoting *Barrie v. NFH Oregon, LLC*, No. 6:20-cv-01038-MC, 2020 WL 9211003, at *5–6 (D. Or. Nov. 4, 2020)).) However, even under this incorrect standard, plaintiffs failed to meet their burden.



HOLLAND & KNIGHT LLP
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

In *Bazan*, this Court determined a closely held, family-run parent company overseeing several closely held, family-run subsidiary farms were "operationally a single company" where some combination of family members owned and operated both the parent and the subsidiary, the parent company decided how each subsidiary would operate (including which crops to plant), and the parent company transported the farm's workers to the subsidiary farms on parent-company owned buses. 2021 WL 4498645, at *7 (granting partial summary judgment). Similarly, in *ADO*, this Court found personal jurisdiction over a subsidiary company where the parent company had "spun off subsidiaries for less than their true value, siphoned off liquid assets . . . and dramatically reduc[ed] its share capital by more than half" and the subsidiary's "only business" was "this lawsuit." 931 F. Supp. at 718.

None of the relevant facts at issue in *Bazan* or *ADO* exist here. Plaintiffs do not allege (let alone plausibly allege) that Mars, Mars Petcare, MMI Holdings, Banfield, and VCA are all the equivalent of closely-held, family companies that make all operational decisions together. Plaintiffs also do not allege that Mars, Mars Petcare, or MMI Holdings has siphoned off all assets and operations from Banfield and VCA. Thus, neither *Bazan* nor *ADO* provides analogous facts to justify disregarding the corporate separateness of legitimate corporate entities. Instead, plaintiffs need to allege facts demonstrating that the corporate parent dictates "every facet" of Banfield's and VCA's daily operations, which they did not and cannot allege.[3] *See Ranza*, 793 F.3d at 1073 (noting a subsidiary becomes a "mere instrumentality" of a parent where the parent has "pervasive control over the subsidiary, such as when a parent corporation

---

[3] Plaintiffs do not even respond to defendants' unrebutted evidence that Mars Petcare has no control over Banfield's or VCA's operations whatsoever, as Mars Petcare is responsible for pet nutrition, not veterinary clinics. (Decl. of Michael Hinds in Supp. of Mot. to Dismiss ("Hinds Decl."), Dkt. 24 ¶¶ 8, 9.)



HOLLAND & KNIGHT LLP
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

dictates every facet of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation") (cleaned up).

In addition, plaintiffs fail to respond to defendants' argument that their allegations of "undercapitalization," the operation "as a single company," and the sharing of "executives and office space" are insufficient as a matter of law to establish alter ego. (*See* Pls.' Opp'n at 9–10.) For example, with respect to undercapitalization, plaintiffs still rely on their allegation that "all profits generated by Mars's subsidiaries are transferred daily to Mars's bank account" even though that allegation relies on facts pled in a separate case and the court reviewing those allegations of undercapitalization concluded that they were insufficient to "disregard the formalities of [Mars's] corporate organization." *Mars, Inc. v. Trurx LLC*, No. 6:13-cv-526-RWS-KNM, 2016 WL 4034803, at *10, *6 (E.D. Tex. Mar. 14, 2016). Plaintiffs also fail to address the fact that their undercapitalization allegations concern only Mars's relationship with *Mars Petcare*, not Mars's or any other defendant's relationship with Banfield or VCA.

With respect to plaintiffs' allegation that all five defendants "operate as a single company," plaintiffs still fail to specify which company controls which subsidiary and how any company pervasively controls that specific subsidiary. (*See* Pls' Opp'n at 9.) That deficiency is fatal to plaintiffs' ability to plead prima facie allegations of alter ego jurisdiction. *See Brown v. Serv. Grp. of Am., Inc.*, No. 3:20-cv-02205-IM, 2022 WL 43880, at *4 (D. Or. Jan. 5, 2022) (explaining that to determine "whether personal jurisdiction can be established . . . through a theory of imputed contacts . . . each defendant's contacts with the forum must be assessed individually").

Similarly, plaintiffs' allegations of Mars's consistent branding and pay scales across its subsidiaries are insufficient to allege the "pervasive control" necessary to "find the two entities



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

are alter egos for jurisdictional purposes." *See Holt v. Urb. League of Portland, Inc.*, No. 3:22-cv-00837-YY, 2023 WL 2433721, at *3 (D. Or. Feb. 17, 2023); *Ranza*, 793 F.3d at 1074 (declining to find pervasive control of a subsidiary even where the parent "exercises control over [the subsidiary's] overall budget and has approval authority for large purchases; establishes general human resource policies for both entities and is involved in some hiring decisions; operates information tracking systems all of its subsidiaries utilize; ensures the [parent company's] brand is marketed consistently throughout the world; and requires some [subsidiary] employees to report to [parent company] supervisors on a 'dotted-line' basis"). For example, in *Holt*, this Court found that the plaintiff's allegations generally alleging that the parent company and subsidiary "operate[d] under the same goals and same name" and that the parent company represented that it "accomplish[ed] our [company] mission through local groups and affiliates," "f[e]ll far short of suggesting that [the parent company] exercised the 'pervasive control' over [the subsidiary] necessary to find the two entities are alter egos for jurisdictional purposes." 2023 WL 2433721, at *3.

Plaintiffs include almost identical insufficient allegations here. Plaintiffs allege that "Mars holds out the Subsidiaries as part of Mars, rather than entirely separate entities," and that the "Subsidiaries use Mars's and the Subsidiaries' branding interchangeably." (FAC ¶¶ 103, 105.) Like in *Holt*, those allegations describe nothing more than "a parent-subsidiary relationship alone," which "does not justify imputing one entity's forum contacts with another for personal jurisdiction purposes." 2023 WL 2433721, at *3. Thus, plaintiffs' allegations similarly fall far short of alleging the pervasive control necessary to disregard corporate forms.

Finally, with respect to plaintiffs' allegations of "shared executives and office space," plaintiffs never address the clear case law explaining that those facts are irrelevant to alter ego



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

because they represent the normal function of a parent corporation and its general "macro-management of its subsidiaries." *See Ranza*, 793 F.3d at 1074–75 (explaining that a parent does not expose "itself to a charge that each subsidiary is merely its alter ego" where, among other things, it "placed several of its directors on the subsidiary's board"); *see also MMI, Inc. v. Baja, Inc.*, 743 F. Supp. 2d 1101, 1111 (D. Ariz. 2010) ("Courts have also found that the fact that two corporate entities share the same address does impute one entity's contacts with the forum state on the other entity. This is because distinct legal entities may share the same address.") (cleaned up). Plaintiffs also never rebut the evidence that Banfield and VCA have their own executive teams and operate those companies separately from Mars, MMI Holdings, and Mars Petcare. (Hinds Decl. ¶¶ 4–9; Decl. of Steve Speredelozzi in Supp. of Mot. to Dismiss ("Speredelozzi Decl."), Dkt. 25 ¶¶ 4–7.) In sum, plaintiffs' allegations are both imprecise and insufficient to demonstrate that Mars, Mars Petcare, or MMI Holdings pervasively controls the day-to-day operations of Banfield or VCA to satisfy alter ego jurisdiction.

**2. Plaintiffs fail to allege plausible facts supporting that a failure to disregard the corporate forms of any defendant would result in a fraud or injustice.**

Plaintiffs' argument that their allegations meet the fraud or injustice prong of the alter ego test fails for two reasons. First, plaintiffs apply the wrong standard. The second prong of the alter ego test for jurisdictional purposes "requires [the] plaintiff to demonstrate the alleged injustice relates to the forming of the corporation or abuse of the corporation, not a fraud or injustice generally." *Sundberg v. Joint Apprenticeship Training Comm. of Nw. Line Constr. Indus.*, No. 3:17-cv-01360-JR, 2018 WL 7108064, at *5 (D. Or. Dec. 4, 2018) (cleaned up). Plaintiffs instead rely on an "improper conduct" standard, which is the second prong of the similar (yet different) test that Oregon courts use to assess disregarding the corporate form to impose ***liability*** on a parent company, not to impute contacts for purposes of personal



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

jurisdiction. *See Bazan*, 2021 WL 4498645, at *6–7 (explaining three-step test used by Oregon courts to determine whether to pierce the corporate veil for purposes of imposing liability on a parent company, including second "improper conduct" step); *Acrymed, Inc. v. Convatec*, 317 F. Supp. 2d 1204, 1214 (D. Or. 2004) (same).

Second, because plaintiffs conflate the two alter ego tests, plaintiffs fail to identify any facts supporting that Mars, Mars Petcare, or MMI Holdings engaged in any injustice relating to the forming of Banfield or VCA, or abuse of Banfield or VCA, which would be necessary to impute Banfield's or VCA's contacts to the other defendants for jurisdictional purposes. Instead, plaintiffs argue that Banfield's and VCA's Oregon contacts should be imputed to Mars, Mars Petcare, and MMI Holdings because "both the Banfield Website and VCA Website contain privacy-related policies and notices created by Mars that are linked to Mars's website, and language indicating that Mars owns and/or operates both websites." (Pls.' Opp'n at 11 (quoting FAC ¶ 107).) Nothing in those allegations relates to the formation of Banfield or VCA or a corporate abuse of Banfield or VCA that would be necessary for alter ego jurisdiction.

Plaintiffs' conclusory allegations based on Mars's alleged operation of Banfield's or VCA's websites also do not even describe a fraud or injustice. Plaintiffs merely allege that because Banfield's and VCA's websites state that they are affiliates of Mars, Mars must have "controlled the websites and/or websites-related conduct challenged by Plaintiffs and Class Members." (*Id.* at 11 (quoting FAC ¶ 108).) That conclusion is implausible, but more importantly, does not even establish that a fraud or injustice would result if the Court refuses to disregard the corporate form. Accordingly, plaintiffs have failed to allege even a prima facie basis to assert alter ego jurisdiction and the Court should dismiss all claims against Mars, Mars Petcare, and MMI Holdings for lack of personal jurisdiction.



HOLLAND & KNIGHT LLP
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

## II. Plaintiffs fail to allege a basis for imposing alter ego liability on Mars, Mars Petcare, or MMI Holdings for the actions of Banfield and VCA.

Even if plaintiffs can pass the jurisdictional hurdle to assert their claims against Mars, Mars Petcare, or MMI Holdings in this Court, plaintiffs' claims fail because they have not adequately pleaded alter ego liability or even sufficient facts to warrant jurisdictional discovery to investigate their theory of alter ego liability. As described above, the test for asserting alter ego *jurisdiction* under Oregon law is distinct from the test to establish alter ego *liability* under Oregon law. To pierce a corporate veil and impose alter ego liability on a parent corporation, a plaintiff must demonstrate: "(1) the parent corporation controlled the subsidiary; (2) the parent corporation engaged in improper conduct in its exercise of control over the subsidiary; and (3) the parent corporation's improper conduct caused the plaintiff's inability to obtain an adequate remedy from the subsidiary." *Acrymed, Inc.*, 317 F. Supp. 2d at 1214. Plaintiffs fail to meet their burden on each of the three elements.

First, as described above, plaintiffs' allegations and arguments regarding "control" over the subsidiary fail because their theory of undercapitalization, operational unity, and shared office space are deficient as a matter of law. *See supra* at 10–12.

Second, plaintiffs fail to allege any improper conduct by Mars, Mars Petcare, or MMI Holdings with respect to the operation of Banfield or VCA. For example, plaintiffs' allegations regarding *Mars's* control of Banfield's and VCA's websites, or *Mars's* alleged undercapitalization of Mars Petcare, do not establish any conduct (let alone improper conduct) by Mars Petcare or MMI Holdings in their alleged control of Banfield and VCA. Thus, plaintiffs fail to allege any basis to hold Mars Petcare or MMI Holdings liable for the actions of Banfield or VCA. Mars Petcare or MMI Holdings should be dismissed on that basis alone.



HOLLAND & KNIGHT LLP
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

Even with respect to Mars, plaintiffs' allegations regarding Mars's control of Banfield and VCA—based on screenshots listing those entities as "affiliates" of Mars (*see* FAC ¶¶ 107, 108)—are implausible in light of the uncontroverted evidence that Banfield and VCA control and operate their own websites. (*See* Hinds Decl. ¶ 5; Speredelozzi Decl. ¶ 5.) Plaintiffs' allegation regarding Mars's alleged undercapitalization of Mars Petcare is also deficient because, even if it sufficiently described improper conduct, the undercapitalization does not relate to Banfield or VCA. Although plaintiffs now argue that "[t]his undercapitalization will prevent Plaintiffs from collecting from Banfield and VCA (should these defendants ultimately be found liable) because Mars drains these subsidiaries' bank accounts to $0 on a daily basis," those allegations are not in the First Amended Complaint. (*See* Pls.' Opp'n at 12.) Plaintiffs' operative complaint only describes a "zero balance" in the bank accounts for *Mars Petcare*. (*See* FAC ¶ 98 (citing *Mars, Inc.*, 2016 WL 4034803, at *6 (describing transfers between Mars and Mars Petcare)).) Neither the First Amended Complaint nor the case it relies upon mentioned Banfield or VCA. Thus, plaintiffs fail to even allege improper conduct by Mars as to Banfield or VCA.

Finally, plaintiffs do not even discuss (and therefore concede) the third element for alter ego liability. Under that element, plaintiffs were required to show a "causal connection" or "relationship between the misconduct and the plaintiff's injury." *Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*, 397 F.3d 1217, 1228 (9th Cir. 2005) (cleaned up). Plaintiffs cannot make that showing. It is implausible that a reference to Banfield and VCA as "affiliates" of Mars on the websites, the linking to Mars's terms on those websites, or Mars's alleged undercapitalization of Mars Petcare, a subsidiary having nothing to do with the provision of veterinary care, caused plaintiffs' injuries when those injuries arise from the alleged interception of their internet



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

communications by Facebook. Thus, for each of the reasons above, plaintiffs fail to establish a basis for alter ego liability against Mars, Mars Petcare, or MMI Holdings and those entities should be dismissed.

To the extent plaintiffs seek jurisdictional discovery to avoid dismissal of Mars, Mars Petcare, and MMI Holdings, the Court should deny that request. In two sentences in its argument on alter ego liability, plaintiffs contend that they have met the standard to request jurisdictional discovery "concerning Mars Petcare's relationship to the other Defendants." (Pls.' Opp'n at 12.) Plaintiffs are wrong.

To obtain jurisdictional discovery, plaintiff must first establish a colorable basis for personal jurisdiction. *Ferguson v. Smith*, No. 3:18-cv-00372-SB, 2018 WL 3733665, at *5 (D. Or. July 18, 2018). "A 'colorable' showing can be equated to requiring the plaintiff to come forward with 'some evidence' tending to establish personal jurisdiction over the defendant." *Id.* (cleaned up). Plaintiffs do not present a colorable showing for asserting personal jurisdiction over the relevant defendants, Banfield and VCA, or imputing those entities' contacts to Mars, Mars Petcare, and MMI Holdings for three reasons. First, as discussed above, plaintiffs do not plead facts supporting personal jurisdiction over Banfield or VCA based on their operation of Oregon clinics for the purposes of plaintiffs' California-based wiretapping claims. Second, plaintiffs do not allege sufficient facts supporting that Mars, Mars Petcare, or MMI Holdings exercised pervasive control over Banfield and VCA required to impute Banfield's and VCA's forum contacts to any of those other entities. Third, plaintiffs' request for jurisdictional discovery is based on "[p]laintiffs' myriad allegations concerning ***Mars Petcare***" (*see* Pls.' Opp'n at 12), which is uncontrovertibly not a parent of Banfield or VCA and is an independent pet nutritional company unassociated with Banfield's or VCA's websites (*see* Hinds Decl. ¶¶ 8–



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

9). Thus, plaintiffs' half-hearted request for jurisdictional discovery is insufficient to avoid dismissal of Mars, Mars Petcare, or MMI Holdings.

**III. Plaintiffs' argument that they did not consent to VCA's and Banfield's Terms and Conditions is inconsistent with their allegations as pleaded, and VCA's forum selection clause and Banfield's choice of law provision require dismissal.**

Plaintiffs also cannot avoid dismissal of their claims based on their alleged lack of consent to VCA's and Banfield's Terms and Conditions, which either preclude plaintiffs from suing in Oregon for VCA's website activities or preclude plaintiffs from asserting a claim under California law for Banfield's website activities. In response to the plain language of those Terms and Conditions, plaintiffs argue that VCA's forum selection clause and Banfield's choice of law provision do not apply because "[d]efendants bear the burden of proving Plaintiffs assented to" those terms and "[d]efendants have not met their burden to show Plaintiffs' notice of or assent to" those terms. (*See* Pls.' Opp'n at 13, 17.) Plaintiffs are wrong and their argument is undermined by their own allegations.

Rather than plead that they never consented to Banfield's and VCA's respective terms, plaintiffs directly *rely on the text of those terms* to establish the language that plaintiffs relied upon in believing Banfield and VCA would not share their personal information. (*See* FAC ¶ 84.) Plaintiffs also rely on plaintiffs' privacy options in Banfield's and VCA's "privacy preference center." (*Id.* ¶ 85.) Plaintiffs then argue that Banfield and VCA violated CIPA because, rather than abide by those respective terms, Banfield and VCA exceeded the scope of those terms: "By capturing this information anyway, Defendants fail to receive consent from visitors to intercept their communications." (*Id.* ¶ 86.) Plaintiffs therefore plead facts showing that they relied on the language in Banfield's and VCA's terms and cannot avoid the forum selection clause and choice of law provision in those terms. *See, e.g.*, *Fleet v. Trion Worlds, Inc.*, No. 15-cv-04721-WHA, 2016 WL 122855, at *4–5 (N.D. Cal. Jan. 12, 2016) (enforcing forum



HOLLAND & KNIGHT LLP
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

selection clause in terms of use); *Talyancich v. Microsoft Corp.*, No. CV 12–00483 GAF (FMOx), 2012 WL 1563884, *4–5 (C.D. Cal. Mar. 28, 2012) (enforcing forum-selection clause in terms of use and dismissing claims based on improper venue); *Palomino v. Facebook, Inc.*, No. 16-cv-04230-HSG, 2017 WL 76901, at *3 (N.D. Cal. Jan. 9, 2017) (explaining that the "choice-of-law clause encompasses [the] Plaintiffs' claims because they arise from or relate to the Terms of Service" where the terms governed "any claim that might arise" between the user and the website).

Plaintiffs' arguments that VCA's forum selection clause and Banfield's choice of law provision, even if assented to, should not be applied to plaintiffs' specific claims also fails. Plaintiffs first argue that VCA's forum selection provision does not apply because "the forum selection clause only covers claims that actually have to do with the Terms of Use." (Pls.' Opp'n at 15.) Plaintiffs, however, ignore that VCA's Terms and Conditions specifically state that "[t]hese are the specific terms and conditions regarding your use of VCA's websites . . . including without limitation vca.com, vcahospitals.com, and the myVCA™ App . . . ." (Dkt. # 23-2 at 1.) VCA's Terms and Conditions, including its forum selection provision, thereby do cover plaintiffs' claims, which, as plaintiffs describe, "ste[m] instead *from Plaintiffs' use of the VCA website* and wiretapping by a third-party entity . . . ." (Pls.' Opp'n at 15.)

Similarly, plaintiffs' argument that Banfield's choice of law provision, even if assented to, cannot apply because the public policy imbedded in CIPA to protect "right of privacy of the people of this state" would be thwarted by Oregon's lack of an equivalent statute also fails based on plaintiffs' arguments. (Pls.' Opp'n at 17.) First, plaintiffs do not address that, under Oregon law, a plaintiff can bring an action for the tort of invasion of privacy for wiretapping. *See Oliver v. Pac. Nw. Bell Tel. Co.*, 53 Or. App. 604, 607–08 (1981). To satisfy such a claim, a plaintiff



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

must show "(1) an intentional intrusion, physical or otherwise; (2) upon plaintiff's private affairs or concerns; and (3) that the intrusion would be offensive to a reasonable person." *Id.* at 607 (cleaned up). Plaintiffs make no argument regarding why they could not bring their claims against Facebook or defendants under a cause of action for invasion of privacy. Instead, plaintiffs rely on a Ninth Circuit case that discusses the subsection of Oregon's wiretapping law related to recording oral conversations to argue that "[i]n 2023, the Ninth Circuit struck down Oregon's wiretapping statute as facially unconstitutional." (Pls.' Opp'n at 18–19 (relying on *Project Veritas v. Schmidt*, 72 F.4th 1043, 1068 (9th Cir. 2023), *reh'g en banc granted, opinion vacated*, 95 F.4th 1152 (9th Cir. 2024)). That Ninth Circuit opinion, however, in addition to being vacated, addressed only the subsection of Oregon's wiretapping statute that addresses recordings of oral conversations, which is not relevant to plaintiffs' claims. *See Project Veritas*, 72 F.4th at 1053 (discussing ORS 165.540(1)(c)).

Second, plaintiffs now argue that their claims are properly in this forum because "there is nothing unique about VCA's website on a state-by-state basis, it goes to reason that Meta—as employed by Defendants—intercepts the same communications in every state," including Oregon. (Pls.' Opp'n at 4.) California's interest in enforcing its wiretapping laws, however, is greatly diminished when the interceptions at issue occur out-of-state. *Jonczyk v. First Nat. Cap. Corp.*, No. SACV 13–959–JLS (AGRx), 2014 WL 1689281, at *4 (C.D. Cal. Jan. 22, 2014) (dismissing CIPA claims brought by out-of-state plaintiffs because "the California legislature specifically stated that its intent was to 'protect the right of privacy of the people *of this state*'") (quoting Cal. Penal Code § 630) (emphasis in original). Where plaintiffs now argue that the relevant interceptions are those that occurred in Oregon, including interceptions of appointments made at Oregon clinics (and acknowledge that without them there would be no personal



HOLLAND & KNIGHT LLP
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

jurisdiction), California's interest in applying CIPA is reduced. (*See* Pls.' Opp'n at 7.) VCA's forum selection provision and Banfield's choice of law clause therefore both apply to additionally preclude plaintiffs' claims which arise from conduct on VCA's and Banfield's websites.

## IV. Plaintiffs fail to plausibly allege a violation of CIPA § 631 or § 632 because they do not meet their burden to affirmatively allege lack of consent and failed to plead aiding and abetting or direct liability under § 632.

### A. Plaintiffs fail to plead facts plausibly establishing that they did not consent to the disclosure of the information at issue under CIPA § 631 or § 632.

Plaintiffs' argument that they are not required to plead lack of consent for their CIPA claims fails as a matter of law because plaintiffs—not defendants—have the burden to affirmatively plead a lack of consent to defendants' alleged conduct.

Under CIPA, "lack of consent is an express element of a claim" and "must be alleged in the complaint." *Garcia v. Enterprise Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015); *accord* Judicial Council of California Civil Jury Instructions (2024), No. 1809 (listing lack of consent as an element that a plaintiff must affirmatively prove under § 632).[4] Specifically, CIPA § 631 requires that a plaintiff establish the alleged interception occurred "without the consent of all parties to the communication" and CIPA § 632 requires that the

[4] None of the case law cited by plaintiffs for the proposition that defendants have the "burden to show Plaintiffs' consent to the wiretapping" definitively support their argument. (*See* Pls.' Opp'n at 20.) Instead, those cited cases either discussed consent to an arbitration provision, consent as a defense under federal wiretapping statutes, or lumped CIPA claims into a consent analysis where none of the parties challenged whether consent is an affirmative defense or an element of CIPA. *See Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1098–1100 (9th Cir. 2023) (discussing consent to an arbitration provision); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 926–27, n.13 (N.D. Cal. 2023) (explaining that the parties "do not identify any Ninth Circuit precedent on whether consent is an affirmative element of or defense to plaintiffs' claims"); *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 619–20 (N.D. Cal. 2021) (discussing consent as a defense to federal Wiretap Act claims and other federal statutes); *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 684–85 (N.D. Cal. 2021) (discussing consent as to federal wiretapping claims).



HOLLAND & KNIGHT LLP
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

eavesdropping occur "without the consent of all parties . . . ." When evaluating consent as an affirmative element at the motion to dismiss stage, even where the "[p]laintiff denies having conferred his consent, the Court need not accept as true any allegations contradicted by "matters properly subject to judicial notice or by exhibit" or "that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Garcia*, 78 F. Supp. 3d at 1136.

As explained above, although plaintiffs plead that Banfield and VCA do not "procure prior consent from Californians for Facebook to engage in this wiretapping" (FAC ¶ 83), plaintiffs do not plead a lack of consent to Banfield's or VCA's terms. Rather, plaintiffs rely on the specific language of those terms and screenshots of visitors' "privacy preference center" options and then argue that defendants "fail to receive consent" because defendants exceed the scope of those terms. (FAC ¶¶ 84–85, 86.) Therefore, even though plaintiffs now argue in their opposition that they did not "consent to . . . Banfield's and VCA's Terms and Conditions and privacy policies" (Pls.' Opp'n at 19), the actual provisions of the websites' terms and conditions and incorporated privacy policies, as in *Garcia*, "contradict [p]laintiff's claim that he was unaware of and did not consent to the transfer of his personal information to a third party." 78 F. Supp. 3d at 1136; *see also In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 791 (N.D. Cal. 2019) (explaining that the relevant terms and conditions incorporated privacy policies by reference where the terms "cal[l] out the Data Use Policy in the second sentence, provides a link to it, and encourages the user to read it"); *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 953 (N.D. Cal. 2017) (dismissing CIPA claims against Facebook and third party websites at motion to dismiss stage for lack of consent where the plaintiffs "allege[d] that they relied on" Facebook's terms).



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

Plaintiffs also argue that "Defendant is wrong that the existence of privacy statements in VCA's and Banfield's Terms and Conditions alone is not sufficient for consent." (Pls.' Opp'n at 20.) California law, however, "makes it quite easy to incorporate a document by reference" so that a "Data Use Policy" is incorporated into terms and conditions "so long as [the language] guides the reader to the incorporated document." *In re Facebook, Inc.*, 402 F. Supp. 3d at 791. Here, both Banfield's and VCA's terms and conditions included a colored hyperlink to, and specifically draw readers' attention to, the privacy policies at issue. (Dkt. # 23-1 at 2; Dkt. # 23-2 at 1–2.)

Those privacy policies at issue explain that, if customers use their websites, Banfield and VCA will share "[p]urchase history" and "[o]ther data about your transactions," "with third parties like advertising networks, data analytics providers, operating systems and platforms, and social networks for the business and commercial purposes provided herein, namely, for purposes of targeted advertising." (Dkt. 23-3 at 7.) Those terms also disclose that Banfield and VCA, "[w]ith consent where applicable, . . . sell and share internet or other network activity information (cookie data) with third parties like advertising networks, data analytics providers, operating systems and platforms, and social networks for the business and commercial purposes described herein" and "may exchange names and addresses with other companies who may contact you by mail to provide offers." (Dkt. 23-3 at 5–6.) The terms make that same disclosure for a variety of "personal data," including "name," "[c]ontact information like email or physical address," "[a]ccount username," "IP address," and "[i]nternet activity, social media activity." (Dkt. 23-3 at 5, 8.) VCA's website also contains a second privacy policy, in which VCA informs users that VCA shares certain information with "service providers" including information "when you purchase goods and services at any of our retail locations, including our veterinary hospitals



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

or online." (Dkt. 23-4 at 9–10.) Those provisions contradict plaintiffs' claims that they were unaware of and did not consent to the sharing of those categories of information. *See Garcia*, 78 F. Supp. 3d at 1137 (dismissing the plaintiff's CIPA claims where the privacy policy terms contradicted the plaintiff's "bare allegation that he did not consent").

To avoid the terms of the privacy policies, plaintiffs point to two allegations in their complaint to argue that "there is at least a question of fact as to whether the privacy statement disclosed (and thus sufficed for consent for) the wiretapping." (Pls.' Opp'n at 21.) Plaintiffs are wrong. First, plaintiffs rely on a statement contained in Banfield's and VCA's "privacy preference center" providing that, unless a user opts-out, "[t]argeting cookies" "may be set through our site by our advertising partners" and explaining that those advertising partners "do not store directly personal information, but are based on uniquely identifying your browser and internet device." (FAC ¶ 85.) A statement explaining that cookies are used unless a user toggles an opt-out switch and how third-party advertisers "store" information received from a website visitor, however, does not contradict Banfield's and VCA's privacy policy disclosures stating the types of information they may share. Second, plaintiffs rely on an allegation that "[n]o reasonable user would read [Facebook's] terms and representations as permitting Facebook to intentionally intercept electronic communications that it knows the law protects and deems sensitive." (FAC ¶ 96.) What reasonable users of Facebook's terms would believe, however, is not relevant to the content of Banfield's and VCA's privacy policies. Plaintiffs therefore allege no facts contradicting the plain language of Banfield's and VCA's privacy policies. Where plaintiffs consented to the disclosure of their information to third-parties like Facebook, their claims under both §§ 631 and 632 should be dismissed for failure to plead lack of consent.



**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

**B. Plaintiffs' § 632 claim additionally fails because plaintiffs specifically did not plead aiding and abetting liability against any defendant.**

Plaintiffs' argument that they sufficiently alleged aiding and abetting liability against any defendant fails because plaintiffs specifically amended their complaint to *remove* allegations asserting aiding and abetting liability against defendants. On the face of plaintiffs' First Amended Complaint, plaintiffs allege only primary liability against non-party Facebook under § 632 of CIPA, not aiding and abetting against defendants. (FAC ¶¶ 131–40.) The only allegation plaintiffs now point to for aiding and abetting liability is a general, conclusory allegation that "Defendants aid, employ, agree with, or otherwise enable" Facebook to eavesdrop on their communications." (*See* FAC ¶ 4.) However, plaintiffs previously asserted an express claim for aiding and abetting under § 632 but removed those allegations from the operative complaint.

Specifically, plaintiffs' prior complaint asserted a claim for a violation of "Cal. Penal Code § 632" as follows:

> At all relevant times, Defendant aided, agreed with, and conspired with Facebook to track and intercept Plaintiffs' and Class members' internet communications while accessing its websites. Defendants assisted these interceptions without first receiving authorization or consent from plaintiffs and class members.

(Dkt. # 1 ¶ 89.) Analogous allegations under § 632 are absent from plaintiffs' operative complaint and therefore demonstrate plaintiffs' intent to not pursue an aiding and abetting theory under § 632.

In addition, plaintiffs' attempt to save their § 632 claim for primary liability against Banfield or VCA fails. Plaintiffs argue that "a party to the communication can be held liable for secretly *recording* a conversation," and therefore their § 632 claim is viable because Banfield or VCA could be directly liable for recording a confidential communications without permission. (Pls.' Opp'n at 23.) Plaintiffs, however, do not allege any facts that Banfield or VCA actually



HOLLAND & KNIGHT LLP
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone: 503.243.2300

recorded plaintiffs' communications (with or without permission). Instead, plaintiffs allege that "[a]t all relevant times, *Facebook* intentionally used its Business Tools to eavesdrop upon and record the confidential communications of Plaintiffs and Class members[.]" (FAC ¶ 137 (emphasis added).) Where plaintiffs allege that Facebook, not Banfield or VCA, was the party who did the improper recording, plaintiffs cannot plausibly now assert a claim for primary liability against Banfield and VCA.

It is also implausible to infer that plaintiffs allege direct liability against Banfield or VCA for recording the type of communications at issue here. Plaintiffs allege that they made appointments on Banfield's or VCA's website or logged into the website to review records. (*See* FAC ¶¶ 5–8.) Plaintiffs, therefore, reasonably expected Banfield or VCA to record that information for the very purpose that plaintiffs' intended, *i.e.*, recording the appointment request. (*See* FAC ¶¶ 5–8.) Plaintiffs therefore do not assert a plausible claim for either aiding and abetting or primary liability against any defendant and plaintiffs' claim under CIPA § 632 should be dismissed.

**CONCLUSION**

For the reasons in defendants' motion to dismiss and those discussed above, defendants respectfully request that plaintiffs' claims against Mars, Mars Petcare, MMI Holdings, Banfield, and VCA be dismissed for lack of personal jurisdiction or failure to state a claim.

Dated this 24th day of June, 2024.

HOLLAND & KNIGHT LLP

By: *s/ Kristin Asai*
Shannon Armstrong, OSB No. 060113
Email: shannon.armstrong@hklaw.com
Kristin Asai, OSB No. 103286
Email: kristin.asai@hklaw.com
Abigail Gore, OSB No. 205387

Email: abigail.gore@hklaw.com
601 SW Second Avenue, Suite 1800
Portland, OR 97204
Telephone: 503.243.2300
Fax: 503.241.8014

Ashley Shively (*pro hac vice forthcoming)*
Email: ashley.shively@hklaw.com
560 Mission Street, Suite 1900
San Francisco, CA 94105
Telephone: 415.743.6900

*Attorneys for Defendants*