**BURSOR & FISHER, P.A.**
Sarah N. Westcot (State Bar No. 264916)
701 Brickell Avenue, Suite 2100
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
Email: swestcot@bursor.com

*Attorney for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

LIZETH JIMENEZ, AYREANNE BORDEAUX, and NICKI APAYDIN, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

VCA, INC.,

Defendant.

Case No. 4:25-cv-00767-YGR

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

Date: June 17, 2025
Time: 2:00 p.m.
Courtroom: 1, 4th Floor
Judge: Hon. Yvonne Gonzalez Rogers

# TABLE OF CONTENTS

PAGE


INTRODUCTION ........ 1

ARGUMENT ........ 2

I. DEFENDANT'S VIOLATIONS OF THE CIPA CAUSED PLAINTIFFS AN INJURY-IN-FACT SUFFICIENT FOR ARTICLE III STANDING ........ 2

A. Plaintiffs Communicated Information Related To Their Pets' Medical Treatment On The Website ........ 2

B. Veterinary Communications Are Private And Actionable Because, As Defendant Admits, Pets Are Family Members, Not Property ........ 4

C. Meta Intercepted Information Sufficient To Identify Plaintiffs And Link Them To Their Veterinary Communications ........ 6

D. Defendants Cite Inapposite Caselaw ........ 6

II. PLAINTIFFS PLAUSIBLY ALLEGE VIOLATIONS OF CIPA §§ 631 AND 632 ........ 8

A. Defendant Has Not Met Its Burden To Show Plaintiffs Consented To The Interception Of Their Confidential Veterinary Communications ........ 8

1. Defendant Has Not Shown That Plaintiffs Were On Notice Of The Website's Privacy Policy ........ 8

2. Defendant Has Not Shown That VCA's Or Meta's Privacy Policies Disclosed The Wiretapping, Much Less That A Reasonable User Would Understand This ........ 13

B. Plaintiffs Sufficiently Allege That Defendant Aided, Agreed With, Employed, Or Otherwise Enabled Meta's Wiretapping In Violation Of CIPA § 631 ........ 17

C. Plaintiffs Plausibly Allege Defendant Recorded Plaintiffs' Confidential Communications Without Consent In Violation Of CIPA § 632 ........ 20

1. Veterinary Communications Are "Confidential" ........ 20

2. Defendant Is Liable For Recording Plaintiffs' Confidential Veterinary Communications ........ 22

CONCLUSION ........ 23

# TABLE OF AUTHORITIES

PAGE(S)

## CASES

*Autotel v. Nevada Bell Tel. Co.*,
697 F.3d 846 (9th Cir. 2012) ..... 10

*Berman v. Freedom Financial Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ..... 10, 11, 12

*Berman v. Freedom Financial Network, LLC*,
2020 WL 5210912 (N.D. Cal. Sept. 1, 2020) ..... 9

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ..... 5, 8, 20

*Byars v. Goodyear Tire and Rubber Co.*,
654 F. Supp. 3d 1020 (C.D. Cal. 2023) ..... 4

*Byars v. Sterling Jewelers, Inc.*,
2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) ..... 6

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) ..... 8, 14

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) ..... 5

*Castillo v. Costco Wholesale Corp.*,
2024 WL 4785136 (W.D. Wash. Nov. 14, 2024) ..... 6, 16

*Chabolla v. ClassPass Inc.*,
129 F.4th 1147 (9th Cir. 2025) ..... 12

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) ..... 17

*Daghaly v. Bloomingdales.com, LLC*,
2024 WL 5134350 (9th Cir. Dec. 17, 2024) ..... 7

*D'Angelo v. FCA US, LLC*,
726 F. Supp. 3d 1179 (S.D. Cal. 2024) ..... 5

*Edwards v. MUBI, Inc.*,
2025 WL 985130 (N.D. Cal. Mar. 31, 2025) ..... 12

*Esparza v. Kohl's, Inc.*,
723 F. Supp. 3d 934 (S.D. Cal. 2024) ..... 8

*Fan v. NBA Props. Inc.*,
2024 WL 1297643 (N.D. Cal. Mar. 26, 2024) .......... 15

*Garcia v. Build.com, Inc.*,
2023 WL 4535531 (S.D. Cal. July 13, 2023) .......... 3

*Gill v. Chipotle Mexican Grill, Inc.*,
2025 WL 287320 (C.D. Cal. Jan. 23, 2025) .......... 12

*Gladstone v. Amazon Web. Servs., Inc.,*
739 F. Supp. 3d 846 (W.D. Wash. 2024) .......... 21

*Godun v. JustAnswer LLC*,
2025 WL 1160684 (9th Cir. Apr. 15, 2025) .......... 12

*Gonzales v. Uber Techs., Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018) .......... 22

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) .......... 7

*In re Cell Tower Litig.*,
2012 WL 1903883 (S.D. Cal. May 24, 2012) .......... 17

*In re Facebook Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 2, 4

*In re Google Assistant Privacy Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 4

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
934 F.3d 316 (3d Cir. 2019) .......... 2

*In re Hulu Priv. Litig.*,
2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) .......... 15

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 16

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 6

*India Price v. Carnival Corp.*,
712 F. Supp. 3d 1347 (S.D. Cal. 2024) .......... 8, 10

*Jackson v. Amazon.com, Inc.*,
65 F.4th 1093 (9th Cir. 2023) .......... 9

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) .......... passim

*Jancik v. WebMD LLC*,
2025 WL 560705 (N.D. Ga. Feb. 20, 2025) .......... 4

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) .......... 21, 22

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. May 31, 2022) .......... 13

*Jones v. Ford Motor Co.*,
85 F.4th 570 (9th Cir. 2023) .......... 2

*Kearney v. Salomon Smith Barney, Inc.*,
39 Cal. 4th 95 (2006) .......... 22

*Lee v. Plex, Inc.*,
2025 WL 948118 (N.D. Cal. Mar. 28, 2025) .......... 11, 12, 13

*Lien v. Talkdesk, Inc.,*
2025 WL 551664 (N.D. Cal. Feb. 19, 2025) .......... 7

*Lightoller v. Jetblue Airways Corp.*,
2023 WL 3963823 (S.D. Cal. June 12, 2023) .......... 6

*Lopez v. Apple, Inc.*,
519 F. Supp. 3d 672 (N.D. Cal. 2021) .......... 8

*M.G. v. Therapymatch, Inc.*,
2024 WL 4219992 (N.D. Cal. Sept. 16, 2024) .......... 22

*Massel v. SuccessfulMatch.com*,
718 F. Supp. 3d 1112 (N.D. Cal. 2024) .......... 11

*McClung v. Addshopper, Inc.*,
2024 WL 189006 (N.D. Cal. Jan. 17, 2024) .......... 7

*McCoy v. Alphabet, Inc.*,
2021 WL 405816 (N.D. Cal. Feb. 2, 2021) .......... 15

*Mikulsky v. Noom, Inc.*,
2023 WL 4567096 (S.D. Cal. July 17, 2023) .......... 6

*Mitchell v. Sonesta Int'l Hotels Corp.*,
2024 WL 4471772 (C.D. Cal. Oct. 4, 2024) .......... 20

*Mount v. PulsePoint, Inc.*,
684 F. App'x 32 (2d Cir. 2017) .......... 2

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) .......... 10

*People v. Snook*,
16 Cal. 4th 1210 (1997) .......... 17

*Phillips v. U.S. Customs & Border Prot.*,
74 F.4th 986 (9th Cir. 2023) .......... 7

*Posadas v. Goodyear Tire & Rubber Co.*,
2024 WL 5114133 (S.D. Cal. Dec. 13, 2024) .......... 7

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .......... 18

*Roney v. Miller*,
705 F. App'x 670 (9th Cir. 2017) .......... 23

*Salazar v. National Basketball Association*,
118 F.4th 533 (2d Cir. 2024) .......... 2

*Sellers v. JustAnswer LLC*,
73 Cal. App. 5th 444 (2021) .......... 11

*Serrano v. Open Road Delivery Holdings, Inc.*,
666 F. Supp. 3d 1089 (C.D. Cal. 2023) .......... 12

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) .......... 16

*Smith v. Google, LLC*,
722 F. Supp. 3d 990 (N.D. Cal. 2024) .......... 13

*Smith v. LoanMe, Inc.*,
11 Cal. 5th 183 (2021) .......... 18, 22

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) .......... 19

*St. Aubin v. Carbon Health Techs., Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) .......... 16, 17, 19

*Stover v. Experian Holdings, Inc.*,
978 F.3d 1082 (9th Cir. 2020) .......... 9

*Strehl v. Guitar Center, Inc.*,
2024 WL 2790373 (C.D. Cal. May 29, 2024) .......... 19

*Tate v. Vitas Healthcare Corp.*,
2025 WL 50447 (E.D. Cal. Jan. 8, 2025) .......... 17, 19, 23

*Turner v. Nuance Communications, Inc.*,
735 F. Supp. 3d 1169 (N.D. Cal. 2024) .......... 15, 22

*Valenzuela v. Keurig Green Mountain, Inc.*,
2023 WL 6609351 (N.D. Cal. Oct. 10, 2023) .................... 7

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. 2023) .................... 20

*Yockey v. Salesforce, Inc.*,
745 F. Supp. 3d 945 (N.D. Cal. 2024) .................... 21

*Yoon v. Meta Platforms, Inc.*,
2024 WL 5264041 (N.D. Cal. Dec. 30, 2024) .................... 20

**STATUTES**

Cal. Bus. & Prof. Code § 4857 .................... passim

Cal. Civ. Code § 53.5 .................... 20

Cal. Pen. Code § 631 .................... 17, 18, 19

**RULES**

Fed. R. Civ. P. 8(d) .................... 13, 23

## INTRODUCTION

As polling indicates, "nearly all U.S. pet owners (97%) say their pets are part of their family," and "[a]bout half of pet owners (51%) not only consider their pets to be a part of their family but say they are as much a part of their family as a human member." Anna Brown, *About Half Of U.S. Pet Owners Say Their Pets Are As Much A Part Of Their Family As A Human Member*, PEW RESEARCH CENTER (July 7, 2023) (cleaned up).[1] So, in the same way a parent would not want a pediatrician employing a large technology company to collect medical information about their children for use in marketing and advertising, so too would pet owners balk at veterinarians doing the same for pets. States like California agree, as California "enacted Cal. Bus. & Prof. Code § 4857(a), which prohibits veterinarians from 'disclos[ing] any information concerning an animal receiving veterinary services, the client responsible for the animal receiving veterinary services, or the veterinary care provided to an animal.'" Second Amended Complaint (ECF No. 61) (the "SAC") ¶ 21.

Disregarding its patients' right to privacy in veterinary communications, Defendant employed Meta, Inc. ("Meta") to track patients' activities across its website, vca.com (the "Website"). *Id.* ¶¶ 3-6, 44, 48, 71, 101-102. And Meta, surreptitiously and without the consent of patients, wiretapped Plaintiffs' and other patients' veterinary communications with Defendant, including office visit details, medications purchased, and other information about patients' pets. SAC ¶¶ 4-6, 44-58, 111. This information was then paired with Plaintiffs' and Class Members' identities (*id.* ¶¶ 59-70) and used for marketing and advertising, including by Meta itself. *Id.* ¶¶ 24-43. Thus, Plaintiffs bring claims against Defendant for violations of the California Invasion of Privacy Act ("CIPA") §§ 631 and 632 to redress these privacy harms.

Defendant, for its part, does not dispute this wiretapping is occurring. And, as explained in more detail below, Defendant's "excuses" for its privacy-invading conduct have been rejected by the Ninth Circuit and numerous district courts addressing similar claims. For the following reasons, Defendant's Motion to Dismiss (ECF No. 66) ("MTD") should be denied in its entirety.

[1] Available at https://www.pewresearch.org/short-reads/2023/07/07/about-half-us-of-pet-owners-say-their-pets-are-as-much-a-part-of-their-family-as-a-human-member/.

# ARGUMENT

## I. DEFENDANT'S VIOLATIONS OF THE CIPA CAUSED PLAINTIFFS AN INJURY-IN-FACT SUFFICIENT FOR ARTICLE III STANDING

As the Ninth Circuit and every other circuit court to address the question has held, the interception of web browsing information in violation of a privacy statute (including the CIPA) is sufficient for Article III standing. *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 596, 599 (9th Cir. 2020) (finding Article III standing where "Facebook uses plug-ins to track users' browsing histories when they visit third-party websites, and then compiles these browsing histories into personal profiles which are sold to advertisers to generate revenue"); *Jones v. Ford Motor Co.*, 85 F.4th 570, 574 (9th Cir. 2023) ("A statute that codifies a common law privacy right gives rise to a concrete injury sufficient to confer standing.") (cleaned up); *Salazar v. National Basketball Association*, 118 F.4th 533, 542 (2d Cir. 2024) (finding standing where plaintiff alleged his data "was disclosed as a result of an arrangement between the NBA and Meta pursuant to which the NBA deliberately uses the Facebook Pixel") (cleaned up); *Mount v. PulsePoint, Inc.*, 684 F. App'x 32, 34–35 (2d Cir. 2017) ("PulsePoint's alleged unauthorized accessing and monitoring of plaintiffs' web-browsing activity implicates harms similar to those associated with the common law tort of intrusion upon seclusion so as to satisfy the requirement of concreteness.").

Against this spate of authority, Defendant contends "Plaintiffs' claims against VCA should be dismissed for the threshold failure to demonstrate that plaintiffs have Article III standing to assert their CIPA claims against VCA." MTD at 9. As the Third Circuit aptly put, "[i]n an era when millions of Americans conduct their affairs increasingly through electronic devices, the assertion … that federal courts are powerless to provide a remedy when an internet company surreptitiously collects private data [] is untenable." *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 325 (3d Cir. 2019).

### A. Plaintiffs Communicated Information Related To Their Pets' Medical Treatment On The Website

Defendant argues "[P]laintiffs only allege that a person *could* provide certain types of information to VCA … [but] never allege that they actually communicated that specific information to VCA and that it was ever transmitted to Meta, purportedly causing injury to plaintiffs." MTD at

11 (emphasis in original). On the contrary, Plaintiff Jimenez alleges she "scheduled veterinary appointments, purchased veterinary medications, and checked her pet's medical records" on the Website, Plaintiff Bordeaux alleges she "scheduled veterinary appointments and checked her pet's medical records" on the Website, and Plaintiff Apaydin alleges she "scheduled veterinary appointments and checked her pet's medical records" on the Website. SAC ¶¶ 4-6. Plaintiffs allege that "[e]ach of these communications was intercepted in transit by Meta—as enabled by Defendant—including communications that contained confidential information about [their] pet[s'] veterinarian records." *Id.*

Plaintiffs further allege the information users must submit when making a veterinary appointment (*id.* ¶¶ 48-53), purchase medication (*id.* ¶¶ 54-56), and check a pet's medical records (*id.* ¶¶ 57-58), the plausible inference being Plaintiffs themselves provided this information when they conducted those activities. *See James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 949 n.2 (N.D. Cal. 2023) ("The Court acknowledges that the complaint does not expressly tie the allegations … to Plaintiffs specifically. However … it can reasonably be inferred that the list of information that BlueKai collects applies to Plaintiffs."); *see also Garcia v. Build.com, Inc.*, 2023 WL 4535531, at *3 (S.D. Cal. July 13, 2023) (finding "Plaintiff has standing at this stage" and rejecting argument that "Plaintiff never asserts that *she* shared 'highly sensitive personal data' with Defendant through the chat feature") (emphasis in original). And Plaintiffs allege that they, like other Class Members, provided the "following pieces of information … to the Website":

> (i) pet names; (ii) type of veterinary appointment (*e.g.*, general wellness checkup, emergency); (iii) the time and date of a veterinary appointment; (iv) Plaintiffs' and Class Members' personally identifying information (*e.g.*, full name, email address, phone number); (v) the medications searched for and purchased by Plaintiffs and Class Members); and (vi) pet profile views

*Id.* ¶ 111. Construing these allegations in Plaintiffs' favor, as the Court must at this stage, Plaintiffs plausibly allege they communicated sensitive details about their pets that were unlawfully intercepted by Meta—as enabled by Defendant.

In addition, nothing requires Plaintiffs to allege their exact private veterinary communications in a public filing. *James*, 701 F. Supp. 3d at 956 ("[T]o the extent Disney suggests

Plaintiffs must plead the exact communications they had with the ESPN.com website, other courts have rejected that position."); *Byars v. Goodyear Tire and Rubber Co.*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023) ("[T]here is no requirement that Byars specifically allege the exact contents of her communications with Goodyear."); *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 816 (N.D. Cal. 2020) ("[T]he Court rejects Defendants' suggestion that Plaintiffs must identify specific communications that Plaintiffs reasonably believed to be private and that were wrongly recorded. The Court is not convinced that Plaintiffs are required to produce such details at the pleading stage, prior to discovery."). And Defendant, as the operator of the Website, has access to the information Meta collected and can verify for itself the contents of Plaintiffs' communications. *See Jancik v. WebMD LLC*, 2025 WL 560705, at *4 (N.D. Ga. Feb. 20, 2025) (certifying class involving improper collection of information by Meta based on "testimony directly from Meta affirming that Meta 'probably' can 'use an email address to locate a Facebook ID,' and thus locate the [website] Event Data associated with that Facebook ID").

### B. Veterinary Communications Are Private And Actionable Because, As Defendant Admits, Pets Are Family Members, Not Property

Defendant contends the information disclosed here was not private because "the information at issue relates to animals, not [P]laintiffs personally," and "[p]ets are property under the law." MTD at 12. Of course, most pet owners would disagree, instead considering pets to be a part of their family. *See* Anna Brown, *About Half Of U.S. Pet Owners Say Their Pets Are As Much A Part Of Their Family As A Human Member*, PEW RESEARCH CENTER (July 7, 2023) (cleaned up).[2]

But this argument is especially surprising coming from Defendant. Presumably, no client would want to take their pet to a veterinarian that considers pets to be merely "property." So, unsurprisingly, as a veterinary care provider, Defendant has acknowledged that "pets are family members" in multiple instances:

- "Our pets are family members…";[3]

---

[2] Available at https://www.pewresearch.org/short-reads/2023/07/07/about-half-us-of-pet-owners-say-their-pets-are-as-much-a-part-of-their-family-as-a-human-member/.

[3] Monique Feyrecilde, Preventing Separation Distress During and After the COVID-19 Pandemic, https://vcahospitals.com/know-your-pet/preventing-separation-distress-during-and-after-the-covid-19-pandemic.

- "At VCA Elk Grove Animal Hospital, we know that pets are family."[4]
- "We get it – your pets are family, and at #VCACanada, we're here to support you every step of the way!"[5]
- "At VCA Central Animal Hospital, we understand that your pets are family."[6]
- "At VCA, we know that your pets are family…"[7]

Thus, as Defendant should likely admit—given its statements and blog posts on the topic—the privacy harm here is the same as if one's child's medical conditions were disclosed to Meta: people have any interest in protecting their own privacy as much as that of those family members that they care for. The California Legislature agrees, as the California Legislature has deemed communications concerning pets to deserve protection. *See* Cal. Bus. & Prof. Code § 4857(a); *see also Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1117 (9th Cir. 2020) ("[L]egislatures may elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.") (cleaned up). And this Court and others even found that information like "specific web pages viewed, search terms entered, and purchase behavior" suffices for Article III standing. *James*, 701 F. Supp. 3d at 949; *see also*, *e.g.*, *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1188, 1192 (S.D. Cal. 2024) (finding Article III standing where users alleged chat communications on "the Website Dodge.com" were intercepted by a third party); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 941 (N.D. Cal. 2023) (Gonzalez Rogers, J.) ("Ninth Circuit law indicates [] users [have a reasonable expectation of privacy] over URLs that disclose either unique search terms or the particular document within a website that a person views."). Information about medical treatment for pets certainly qualifies.

---

[4] https://vcahospitals.com/elk-grove/hospital.

[5] https://www.facebook.com/jacksoncreekvets/photos/we-get-it-your-pets-are-family-and-at-vcacanada-were-here-to-support-you-every-s/1034450538692000/.

[6] https://www.instagram.com/p/DJZgQFaqXxN/.

[7] https://www.facebook.com/VCASouthShoreQuincyAnimalHospital/photos/at-vca-we-know-that-your-pets-are-family-and-were-excited-to-offer-benefits-for-/1145233110937955/?_rdr.

### C. Meta Intercepted Information Sufficient To Identify Plaintiffs And Link Them To Their Veterinary Communications

Cal. Bus. & Prof. Code § 4857(a) also extends to "information concerning … the client responsible for the animal patient receiving veterinary services." Thus, the California Legislature sought to protect both information concerning pets, and the human interest in keeping communications about their pets confidential. *See* SAC ¶ 22 ("*Veterinary clients believe the records to be confidential*, as their own personal records are kept confidential with their medical doctors. [The California Veterinary Medical Association] feels that public policy should be established to make it clear that *the privilege of releasing veterinary information rests with the client*.") (citing California Bill Analysis, S.B. 490 Sen. (May 11, 1999)) (emphasis added); *id.* ¶ 111 (describing "pieces of information provided by Plaintiffs and Class Members"). To wit, Plaintiffs allege that when Meta intercepted their veterinary communications, Meta also intercepted information identifying Plaintiffs themselves. SAC ¶¶ 59-70. Specifically, Plaintiffs allege that Meta intercepted Plaintiffs' Facebook IDs as they accessed the Website, and Meta "link[s] Facebook IDs [to] corresponding Facebook profiles," which naturally identify an individual. *Id.* ¶ 69; *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014) ("A Facebook ID identifies a Facebook user and so functions as a name or a subscriber number or identity.") (cleaned up).

Therefore, Defendant enabled Meta to intercept information that identifies *Plaintiffs themselves* as having made these veterinary communications. That qualifies as "specific personal information." *Castillo v. Costco Wholesale Corp.*, 2024 WL 4785136, at *12 (W.D. Wash. Nov. 14, 2024) (standing alleged where "Plaintiffs allege that Costco collected personal health data that could be linked to their identities through their Facebook accounts.").

### D. Defendants Cite Inapposite Caselaw

Defendant's authorities are distinguishable. In *Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823, at *10 (S.D. Cal. June 12, 2023), the third party only intercepted "flight pricing information," which was not "personal information," unlike Plaintiffs' e-mail addresses, Facebook IDs, and veterinary communications here.[8] In *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686,

---

[8] Defendant also cites to *Mikulsky v. Noom, Inc.*, 2023 WL 4567096 (S.D. Cal. July 17, 2023), which was decided by the same district court judge as *Lightoller*. And *Lightoller*'s holding has been

at *4 (C.D. Cal. Apr. 5, 2023), unlike here, "it appear[ed] [the plaintiff] fully expected that her chat would be recorded so that she could file this action." In *Posadas v. Goodyear Tire & Rubber Co.*, 2024 WL 5114133, at *4 (S.D. Cal. Dec. 13, 2024), the plaintiff made "generalized and conclusory allegations that Session Replay technology is capable of capturing private data," versus the specific allegations Plaintiffs make here regarding what pieces of their information were intercepted. Sparse allegations likewise distinguish *Daghaly v. Bloomingdales.com, LLC*, 2024 WL 5134350, at *1 (9th Cir. Dec. 17, 2024) ("Daghaly's allegations about her own interactions with the Bloomingdales.com website [we]re sparse."). And the same is true of *Valenzuela v. Keurig Green Mountain, Inc.,* 2023 WL 6609351, at *2 (N.D. Cal. Oct. 10, 2023) ("Plaintiff fails to allege any information at all about the contents of the chat with Defendant."). In *Lien v. Talkdesk, Inc.,* 2025 WL 551664, at *1, 1 n.1 (N.D. Cal. Feb. 19, 2025), the court found "there is arguably an even weaker expectation of privacy in phone calls to live humans than in web browsing," and noted the information disclosed was "phone numbers and questions they asked about store hours, events, and products carried by the retailer." *Phillips v. U.S. Customs & Border Prot.*, 74 F.4th 986 (9th Cir. 2023) is also easily distinguished because it exclusively concerned government retention (*not dissemination*) of records. *See id.* at 989 (describing retention of "open source information available to the public, such as media reports and social media pages, as well as preexisting law enforcement databases,"); *id.* at 996 ("[T]he retention of the allegedly illegally obtained records at issue, without more, does not give rise to a concrete injury necessary for standing[.]"). Last, *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034 (N.D. Cal. 2022), "was a data breach case," which "clearly informed the district court's assessment … that … the discovery of a password to a gaming account would [not] be highly offensive to a reasonable person." *James*, 701 F. Supp. 3d at 951 (cleaned up).

---

rejected by other district courts to the extent it is "read to hold non-anonymized information on, *e.g.,* websites … is not sufficiently personal." *James*, 701 F. Supp. 3d at 951-52; *see also McClung v. Addshopper, Inc.*, 2024 WL 189006, at *2 n.1 (N.D. Cal. Jan. 17, 2024) (finding *Lightoller* and *Byars* "do not stand for the proposition that a website only causes a privacy injury where it collects the personal information *itself*") (emphasis in original).

## II. PLAINTIFFS PLAUSIBLY ALLEGE VIOLATIONS OF CIPA §§ 631 AND 632

### A. Defendant Has Not Met Its Burden To Show Plaintiffs Consented To The Interception Of Their Confidential Veterinary Communications

Defendant argues Plaintiffs' CIPA claims fail because Plaintiffs "cannot show lack of consent as a matter of law[, as] VCA's privacy policy, which plaintiffs admittedly knew about and agreed to, disclosed that pet information is not personal data, and further disclosed that VCA may share information like 'purchase history' and '[o]ther information' with third parties like Meta for advertising purposes." MTD at 14 (citation omitted). Defendant is wrong, for several reasons.

#### *1. Defendant Has Not Shown That Plaintiffs Were On Notice Of The Website's Privacy Policy*

Plaintiffs plausibly allege they did *not* consent to the wiretapping at issue. *See* SAC ¶¶ 4-6 ("Neither Defendant nor Meta procured Plaintiff[s'] prior consent to this interception, nor [were] Plaintiff[s] on notice of the fact that such interceptions were occurring"); *id.* ¶ 72 ("Crucially, neither Defendant nor Meta procures prior consent from Californians for Meta to engage in this wiretapping."). This is sufficient to allege a lack of consent. *See*, *e.g.*, *India Price v. Carnival Corp.*, 712 F. Supp. 3d 1347, 1359 (S.D. Cal. 2024) (finding "Plaintiffs have sufficiently alleged that interception of their communications occurred without their consent" where "a reasonably prudent user would not "necessarily have known or learned of the existence of Carnival's privacy agreement prior to acting") (cleaned up); *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 941 (S.D. Cal. 2024) ("Plaintiff alleges neither he nor class members expressly or impliedly consented to any of Defendant's actions when they used the Website to chat with a Kohl's customer service representative. That is sufficient at this stage.") (cleaned up).

However, as this Court has held, "consent is a defense to plaintiffs' claims and it is therefore on [Defendant], not plaintiffs, to prove." *Brown*, 685 F. Supp. 3d at 926 n.13 (cleaned up); *see also*, *e.g.*, *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024) ("[C]onsent is an affirmative defense for which defendant bears the burden of proof.") (cleaned up); *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 685 (N.D. Cal. 2021) ("The party seeking to establish consent has the burden of proof."). This makes sense. Not only is consent a defense to a tort claim, but Defendant is also trying to establish consent vis-à-vis alleged contracts with Plaintiffs (namely, VCA's Privacy Policy).

It is black-letter law in the Ninth Circuit that, "[a]s the party alleging the existence of a contract, [Defendant] has the burden to prove each element of a valid contract—including mutual assent." *Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1086 (9th Cir. 2020). "Mutual assent requires, at a minimum, that the party relying on the contractual provision establish that the other party had notice and gave some indication of assent to the contract." *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1099 (9th Cir. 2023).

Defendant has failed to meet this burden. As an initial matter, Defendant has failed to submit the design and content of its Website when Plaintiffs actually interacted with it. The SAC makes abundantly clear that Plaintiffs interacted with VCA's Website months or even years ago. *See* SAC ¶ 4 ("Between 2019 and November 2022, Plaintiff Jimenez visited the VCA Website"); *id.* ¶ 5 ("Between 2020 and November 2023, Plaintiff Bordeaux visited the VCA Website"); *id.* ¶ 6 ("Between 2021 and April 2024, Plaintiff Apaydin visited the VCA Website"). Despite this, both the MTD and the Asai Declaration speak of the Website and Privacy Policy in the present tense—*i.e.*, as currently formulated. *See*, *e.g.*, MTD at 3 ("The VCA Website has terms and conditions that its users agree to prior to use."); *id.* ("Each time a visitor logs into their 'myVCA' account on the VCA Website … the visitor agrees to VCA's Privacy Policy and the Terms and Conditions for the VCA Website."); *id.* ("to log into the myVCA account, the user is expressly notified that '[b]y logging in to your myVCA account, you agree to VCA's Privacy Policy and Terms and Conditions,' which are both conspicuously hyperlinked on the login page.").

So, at the outset, Defendant's argument fails because Defendant has not submitted evidence of what the Website looked like during the times Plaintiffs logged into the Website. *See*, *e.g.*, *Jackson*, 65 F.4th at 1096 (finding Amazon's failure to submit the design of the e-mail allegedly informing the plaintiff of the arbitration clause meant Amazon could not meet its burden to show assent); *Berman v. Freedom Financial Network, LLC*, 2020 WL 5210912, at *3 (N.D. Cal. Sept. 1, 2020) (Gonzalez Rogers, J.) ("As a preliminary matter, an evidentiary dispute exists as to whether the webpage screenshots offered by defendants in support of their motion evidenced an agreement with either plaintiff."). Defendant is not permitted to provide this evidence form the first time on

reply. *Autotel v. Nevada Bell Tel. Co.*, 697 F.3d 846, 852 n.3 (9th Cir. 2012) ("[A]rguments raised for the first time in a reply brief are waived.") (cleaned up).

Even if Defendant could address the foregoing issues (it cannot), the Ninth Circuit has repeatedly held that merely using a website does not bind a user to any terms they are not made conspicuously aware of and affirmatively asked to assent to. *See*, *e.g.*, *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014) ("Where the link to a website's Terms of Service is buried at the bottom of the page or tucked away in obscure corners of the website where users are unlikely to see it, courts have refused to enforce the browsewrap agreement."); *Berman v. Freedom Financial Network, LLC*, 30 F.4th 849, 857 (9th Cir. 2022) ("Website users are entitled to assume that important provisions—such as those that disclose the existence of proposed contractual terms—will be prominently displayed, not buried in fine print.").

Instead, Defendant must demonstrate that users were on notice of and unambiguously assented to that Privacy Policy. *India Price*, 712 F. Supp. 3d at 1358 ("Where, as here, there is no evidence that the website user had actual knowledge of the agreement, the validity of the browsewrap agreement turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract.") (cleaned up). Defendant cannot meet this burden, as the Website's login page (MTD at 4) falls woefully short:

//

//

//

//

//

//

//

//

//

//

//




As shown, the hyperlink to the VCA Privacy Policy is "printed in a tiny [] font considerably smaller than the font used in the surrounding website elements" (*Berman v. Freedom Financial Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022))—including the font used in labels (i.e., "myVCA," "[l]ogin," "[o]r [l]og in with [e]mail," "[e]mail," "[p]assword," etc.) and the font used in buttons (i.e., "[s]ign in with Google," "[l]og [i]n," etc.). "Simply underscoring words or phrases, as in the [Website] at issue here," is not enough. *See Berman*, 30 F.4th at 857. And the fact the Terms and Conditions and Privacy Policy hyperlinks "appeared in the same gray font as the rest of the sentence, rather than in blue, the color typically used to signify the presence of a hyperlink" exacerbates the lack of notice. *Id.* at 854; *see also Lee v. Plex, Inc.*, --- F. Supp. 3d ---, 2025 WL 948118, at *4 (N.D. Cal. Mar. 28, 2025) (same); *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 481 (2021) ("Further, the hyperlink to the terms of service is underlined, but it is not set apart in any other way that may draw the attention of the consumer, such as with blue text or capital letters."); *Massel v. SuccessfulMatch.com*, 718 F. Supp. 3d 1112, 1121 (N.D. Cal. 2024) ("Because Millionaire Match's

links were underlined but did not appear in a contrasting color, the Court must conclude, under *Berman*, that they were not reasonably conspicuous enough to put Mr. Massel on notice of the terms and that Mr. Massel therefore cannot be said to have assented to them."); *Gill v. Chipotle Mexican Grill, Inc.*, 2025 WL 287320, at *5 (C.D. Cal. Jan. 23, 2025) ("Chipotle's argument that the hyperlinks are sufficiently conspicuous because they are in dark brown typeface that contrasts with the white background misses the point—the problem here is that the hyperlinks are in the same or very similar shade of brown typeface as the rest of the surrounding text, making it not sufficiently clear that the text is a hyperlink.") (cleaned up).

Moreover, "the textual notice is [] deemphasized by the overall design of the webpage, in which other visual elements draw the user's attention away from the barely readable critical text." *Id*. at 857. These elements include: (1) "myVCA," with its playful, flowing script; its bolded, oversized brand name; and its multi-colored, modern insignia; (2) the bright, friendly Google logo; and (3) the dark blue that is used across the page's background and its clickable elements but, tellingly, not on the drab, gray links for the VCA Terms and Conditions and Privacy Policy. *See*, *e.g.*, *Lee*, 2025 WL 948118, at *4 ("Although [the notice] is legible, it is far less prominent than the colorful buttons that the user must click to create an account."); *Serrano v. Open Road Delivery Holdings, Inc.*, 666 F. Supp. 3d 1089, 1096 (C.D. Cal. 2023) (denying motion to compel arbitration where "the page contained four fillable fields for the user to input" and "the notice language at the bottom of the page is still the least conspicuous part of the webpage, and nothing in the webpage draws the viewer's attention to it"); *Edwards v. MUBI, Inc.*, --- F. Supp. 3d ---, 2025 WL 985130, at *7 (N.D. Cal. Mar. 31, 2025) ("[T]he notice on the main part of the Home Page is in tiny white font, below two prominent boxes that invite users to enter an email address and click 'GET STARTED.'").

Last, the VCA "Privacy Policy" and "Terms and Conditions" links are a considerable distance below the "Log In" button. As the Ninth Circuit and other courts have held, placing hyperlinks significantly below the relevant button a user must click on cuts against notice. *See*, *e.g.*, *Godun v. JustAnswer LLC*, --- F.4th ---, 2025 WL 1160684, at *7 (9th Cir. Apr. 15, 2025) (finding hyperlink inconspicuous where it was not "located directly above or below the action button and is displayed in relatively small text"); *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1157 (9th Cir. 2025) ("The

notice of additional terms is found below the 'Sign up with Facebook' option, on the periphery of where a user intending to use their email would be looking"); *Lee*, 2025 WL 948118, at *4 ("[T]he notice was placed at the very bottom of the visible page, far below the 'Continue with Facebook' button that Plaintiff clicked to create his account. Plaintiff had no reason to read to the bottom of the Sign-Up Page because clicking on the prominent 'Continue with Facebook' button 'automatically' directed him to the Facebook Userflow, where he completed the account creation process.").

Evaluating these factors, Defendant cannot show that Website users were on notice of (and thus, assented to) the Privacy Policy.

Attempting to shirk its burden, Defendant posits that "plaintiffs admittedly knew about and agreed to" the VCA Privacy Policy. MTD at 14. Defendant is putting words in Plaintiffs' mouths. The SAC does not refer at all to the VCA Privacy Policy—instead alleging a lack of notice of and assent. SAC ¶¶ 4-6, 72. Plaintiffs allege that, *in the alternative*, even assuming assent to the VCA Terms, that those Terms are inadequate. *See* SAC ¶ 73 ("VCA's Terms of Service informs pet owners that, '[i]f you choose to order pet medications or other prescriptions products via the Sites you are waiving confidentiality of those records, to the extent applicable, with respect of third parties necessary to fill those prescriptions.' Meta has no role in filling out prescriptions."). But Plaintiffs' claims do not rely upon Defendant's Privacy Policy and Plaintiffs are not otherwise invoking it. *See Smith v. Google, LLC*, 722 F. Supp. 3d 990, 994 (N.D. Cal. 2024) (declining to enforce terms under equitable estoppel where the plaintiffs "are not relying on the terms of their purported agreement with H&R Block in asserting claims against Google" and "[t]hey assert only statutory claims against Google, none of which relies directly on the terms of any written agreement between plaintiffs and H&R Block"). And Plaintiffs are allowed to plead in the alternative, "regardless of consistency," without hamstringing themselves. Fed. R. Civ. P. 8(d)(2)-(3).

### 2. *Defendant Has Not Shown That VCA's Or Meta's Privacy Policies Disclosed The Wiretapping, Much Less That A Reasonable User Would Understand This*

To the extent there was assent to Defendant's Privacy Policy (there was not), Defendant has also not shown that such assent occurred *before* the wiretapping occurred. *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022) ("[W]e conclude that the California Supreme

Court would interpret Section 631(a) to require the *prior consent* of all parties to the communication.") (emphasis added). To the contrary, Plaintiffs allege that such consent was *not* procured prior to the wiretapping (and not procured at all). SAC ¶¶ 4-6, 72, 103.

But even if there was notice of and prior assent to Defendant's Privacy Policy (there was not), there is at least a question of fact as to whether the Privacy Policy disclosed (and thus sufficed as consent for) the wiretapping. The MTD at 14 relies on portions providing, in pertinent part:

> *We* collect the following specific pieces of Personal Data: …
>
> Information about your transactions with us. For example, your purchase history
>
> …
>
> Information collected from our Sites and social media pages. This includes … comments, photos, or other information that you post through blogs, message boards, or social networking. …
>
> Other information we have collected from you with your consent.
>
> Information we collect about your pet – like your pet's species, breed, birthday, or treatment history – is not considered Personal Data.

Decl., Ex. 2 at 13-14, 16-17 (emphasis added). But this only delineates how *Defendant* collects and uses information, and Website "user[s] could have plausibly understood the disclosures as *not* disclosing that [others] would engage in [the] particular conduct [at issue.]" *Calhoun*, 113 F.4th at 1147 (emphasis in original). Nowhere does the above excerpt disclose that *Meta* intercepted users' Website communications (SAC ¶¶ 3-6, 44, 48, 71, 101-102), nor does it disclose how *Meta* collected and used that information for its own purposes. *Id.* ¶¶ 39-43.

Eventually, the Privacy Policy states in loosely worded terms: "[t]hird-party service and advertising partners may also collect information automatically" (Decl., Ex. 2 at 17). But "a determination of what a 'reasonable' user would have understood must take into account the level of sophistication attributable to the general public, which uses [Defendant's Website,]" and not that of "an experienced business lawyer or someone who is able to easily ferret through a labyrinth of legal jargon[.]" *Calhoun*, 113 F.4th at 1151. When Defendant tells the general public that it may allow third parties to "collect information automatically," the general public would not understand that to mean Defendant allowed Meta to wiretap sensitive, statutorily protected "information concerning an

animal receiving veterinary services, the client responsible for the animal receiving veterinary services, or the veterinary care provided to an animal." Cal. Bus. & Prof. Code § 4857(a). *See* SAC ¶¶ 21, 110. "Collect[ing]" (i.e., "gather[ing] an accumulation of (objects) especially as a hobby"[9]) information is also very different from tracking a visitor's every move on a website, in real time. And the *supra* statement, again, does not clarify that Meta could use the data for its own ill-defined, independent purposes. *Id.* ¶¶ 39-43.

In addition, Plaintiffs allege "Defendant [] expressly represents that it will refrain from collecting personally identifiable information" in the VCA Privacy Preference Center. *Id.* ¶ 74. Yet, "[a]s courts across the country have recognized, [] the identifiers that the Meta Pixel captures—Facebook ID, email address, first name, last name, and phone number—constitute 'directly personal information.'" *Id.* ¶ 75; *see also*, *e.g.*, *In re Hulu Priv. Litig.*, 2014 WL 1724344, at *14 (N.D. Cal. Apr. 28, 2014) ("The Facebook User ID is more than a unique, anonymous identifier. It personally identifies a Facebook user.").

Thus, what a reasonable consumer would believe if they were on notice of each of Defendant's conflicting privacy statements is a question of fact that cannot be determined at this stage. *See*, *e.g.*, *Turner v. Nuance Communications, Inc.*, 735 F. Supp. 3d 1169, 1181 (N.D. Cal. 2024) (declining to dismiss CIPA claim based on consent where "there is a factual dispute over whether the DAA sufficiently notified Plaintiffs of Nuance's conduct"); *McCoy v. Alphabet, Inc.*, 2021 WL 405816, at *6 (N.D. Cal. Feb. 2, 2021) ("At the motion to dismiss stage, the Court is not prepared to rule that the Privacy Policy establishes an absolute bar to Plaintiff's claims."); *Fan v. NBA Props. Inc.*, 2024 WL 1297643, at *3 (N.D. Cal. Mar. 26, 2024) ("[w]hether reasonable consumers would understand, based on the … Terms of Use or … Privacy Policy, that by using the … website they were consenting to the disclosure of their personally identifiable information … is a question that should be resolved on a fuller factual record.").

It is also a question of fact whether Meta's terms would be understood by a reasonable user to disclose that Meta would intercept confidential veterinary communications. *See* SAC ¶¶ 76-85

[9] *Collect*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/collect.

(alleging why Meta's disclosures were insufficient). For instance, Meta specifically "does not want websites or apps sending us sensitive information about people," which "includes, among other things, any information defined as sensitive under applicable laws." *Id.* ¶ 83 (cleaned up). Given California considers veterinary communications to be sensitive and confidential (Cal. Bus. & Prof. Code § 4857(a)), "[n]o reasonable user would read those terms and representations as permitting Meta to intentionally intercept electronic communications that it knows the law protects and deems sensitive." SAC ¶ 85.

Cementing this conclusion, courts have held that "the 'generalized notice' in Meta's data-collection policies is insufficient to establish consent to collect personal health data." *Castillo*, 2024 WL 4785136, at *12; *see also*, *e.g.*, *St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *9 (N.D. Cal. Oct. 1, 2024) (same). For instance, in *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 793-94 (N.D. Cal. 2022), the court was "skeptical that a reasonable user who viewed Meta's policies would have understood that Meta was collecting protected health information." This was "especially true" for the reason Plaintiffs argued above: "Meta policies (such as the Business Tool Terms) expressly provide that website developers will not share data that they know or reasonably should know includes … categories of sensitive information (including any information defined as sensitive under applicable laws, regulations and applicable industry guidelines." *Id.* at 794 n.9 (cleaned up).[10] There is no reason to distinguish these holdings because this is veterinary information as opposed to human medical information. That information is still personal, associated with Plaintiffs and Class Members, analogous to if a child's health information was being disclosed when a parent scheduled a medical appointment, and equally protected by California law—something Meta would know as a California company. *See* Argument § I, *supra*. Thus, a reasonable user reviewing Meta's policies would not understand Meta is collecting their private veterinary communications.

[10] These authorities also distinguish *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943 (N.D. Cal. 2017)—which Defendant relies on—as concerning "web browsing activity on websites that publish information about medical conditions and treatments," as opposed to "personal health information." *Castillo*, 2024 WL 4785136, at *12.

**B. Plaintiffs Sufficiently Allege That Defendant Aided, Agreed With, Employed, Or Otherwise Enabled Meta's Wiretapping In Violation Of CIPA § 631**

Defendant contends Plaintiffs' CIPA § 631(a) claim "fails to plausibly allege aiding and abetting liability" because "[P]laintiffs fail to plead that VCA knowingly aided VCA." MTD at 15. Defendant's argument stumbles out of the gate because the word "abet" appears nowhere in CIPA § 631(a). Instead, the text of the fourth clause of CIPA § 631(a) provides for liability when a person "aids, agrees with, employs, or conspires with any person" to violate the statute. Cal. Pen. Code § 631(a).

As courts have held, the "plain text of section 631(a) is unambiguous on this issue … [i]t does not require that a party aid *and* abet," and "there is no basis to read in a common law standard of aiding and abetting when the statute itself is clear." *Tate v. Vitas Healthcare Corp.*, --- F. Supp. 3d ---, 2025 WL 50447, at *7 (E.D. Cal. Jan. 8, 2025) (emphasis in original); *see also Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1130 (S.D. Cal. 2023) ("Defendant's contention that 'aids' means 'aiding and abetting' ignores the 'agrees with, employs, or conspires with' language of the clause."); *St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *7–8 (N.D. Cal. Oct. 1, 2024) ("The statute as worded does not include an intent standard … The Court finds the approach in *Cousin* more persuasive because it more closely follows the language of the statute."). Had the legislature intended for "aids" to mean "aids and abets," it would have written the latter term instead of the former. *See*, *e.g.*, *In re Cell Tower Litig.*, 2012 WL 1903883, at *2 (S.D. Cal. May 24, 2012) ("The first step in analyzing a statute is to scrutinize the actual words of the statute, giving them a plain and commonsense meaning.") (cleaned up); *People v. Snook*, 16 Cal. 4th 1210, 1215 (1997) ("If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs.") (cleaned up).

The legislature's use of the terms "aids," "agrees with," and "employs" indicates CIPA § 631(a) was meant to apply to a much broader swath of non-criminal conduct, regardless of "specific intent." *See Cousin*, 681 F. Supp. 3d at 1129-30.[11] Thus, "aid" should be interpreted as "to give

[11] The fact that CIPA is a criminal statute does not mean the Court should require a criminal level of intent. Indeed, the California Supreme Court has rejected application of criminal law principles like

assistance,"[12] "agrees with" as "to concur in opinion or purpose,"[13] and "employs" as "to make use of" or "to hire."[14] In short, a defendant violates the fourth clause of CIPA § 631(a) where it simply "enables" another's wrongdoing. *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) ("[T]he complaint adequately alleges that Moosejaw violated section 631 by *enabling* NaviStone's wrongdoing.") (emphasis added).

Applying the plain textual standard, Plaintiffs have met their burden because they sufficiently allege that Defendant enabled Meta's wrongdoing. Plaintiffs allege that allege that Meta can capture veterinary communications on the Website because Defendant configured the Meta Tracking Pixel to do so; "the code for the Meta Tracking Pixel did not spontaneously appear on the Website. Instead, Meta's code was purposefully installed by Defendant into the HTML documents and/or other libraries defining the contents of the Website." SAC ¶ 102; *see also id.* ¶¶ 31-32, 44, 53, 55, 58. Plaintiffs allege that Defendant did so pursuant to agreement(s) with Meta. *See*, *e.g.*, *id.* ¶ 102 ("Defendant knows (and knew when procuring the Meta Tracking Pixel) what, *inter alia*, the 'Meta Business Tools Terms' state."); *id.* ¶ 84 ("Meta [states that] … '[b]usinesses that advertise on Facebook are required to have any necessary rights and permissions to use this information, as outlined in our … Terms that businesses must agree to.'"); *id.* ¶ 39 ("Meta confirms, in its 'Meta Business Tools Terms,' that it has the capability to use information it collects for purposes other than recording it and conveying it to Defendant."). Plaintiffs also allege that Defendant profits from this arrangement, as the Meta Tracking Pixel enables Defendant to advertise to Facebook users interested in Defendant's services by allowing Meta to collect Defendant's user data. *See*, *e.g.*, *id.* ¶¶ 26-35, 41-42, 70. And Plaintiffs allege all of this is done without their consent. *Id.* ¶ 72.

Such allegations are sufficient to allege Defendant willfully enabled Facebook's wiretapping. *See*, *e.g.*, *James*, 701 F. Supp. 3d at 954 (requisite intent alleged where "it can reasonably be inferred

---

the rule of lenity to other provisions of CIPA. *See Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 202 (2021) (rejecting application of rule of lenity to CIPA § 632.7).

[12] *Aid*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/aid.

[13] *Agree*, BLACK'S LAW DICTIONARY (11th ed. 2019).

[14] *Employ*, BLACK'S LAW DICTIONARY (11th ed. 2019).

that Disney entered into a contractual arrangement with Oracle under which Oracle would collect information from EPSN.com website users so that Disney could market to and attract new customers"); *St. Aubin*, 2024 WL 4369675, at *8 (same where "Carbon Health chose to include Facebook Pixel on its [] Website" and "[t]he Facebook Pixel code enables Facebook to help Carbon Health with advertising to its own patients outside the [] Website"); *Tate*, 2025 WL 50447, at *7 ("Plaintiff's claims that VITAS has supported Invoca … by allowing Invoca access to the calls and has presumably paid Invoca to analyze the data those calls yield are sufficient to implicate section 631(a)."); *Strehl v. Guitar Center, Inc.*, 2024 WL 2790373, at *7 (C.D. Cal. May 29, 2024) (intent alleged for Pennsylvania wiretapping law where "Defendant pays Salesforce to … captur[e] the electronic communications of visitors to the Website") (cleaned up).

Defendant, for its part, cites *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933 (N.D. Cal. 2024). MTD at 15-16. The *YETI Coolers* court rejected the argument that the statute "incorporate[s] the common law requirement for aiding and abetting simply because it contemplates liability where an individual or entity provides 'aid.'" *YETI Coolers*, 754 F. Supp. 3d 933. The court did conclude the statute "does require some level of knowledge and intent." *Id*. But "Plaintiffs do not fundamentally dispute that there must have been intent … Their position is that they have sufficiently pled intent in the [SAC] – *i.e.*, one can infer [Defendant] intended to have [Meta] intercept because [Defendant] entered into a contract with [Meta] so that [Meta] would provide such services." *James*, 701 F. Supp. 3d at 954. The authorities cited above show "Plaintiffs have the stronger position." *Id*.

Regardless, unlike in *YETI Coolers*, Plaintiffs here allege Defendant knew the ways Meta used the intercepted information for Meta's own purposes, beyond merely storing it, and that this information was collected without prior consent. SAC ¶¶ 39-43, 72, 100-103. Those uses were outlined by Meta's advertiser-specific terms, to which Meta's clients, including Defendant, must agree. *Id.* ¶¶ 38, 82, 102. Moreover, Defendant (as a veterinary services provider) knew it had a duty to Plaintiffs and Class Members to safeguard their sensitive information (protected by Cal. Bus. & Prof. Code § 4857) and keep it confidential. SAC ¶¶ 3-6, 19-23, 44, 53, 55, 58, 110-114. And it is wrong that "VCA did not intend or know that Meta would engage in illegal interception of

plaintiffs' communications, but expressly believed Meta was authorized to obtain the information[]" (MTD at 17), given that Defendant failed to receive consent. *See* Argument § II.A, *supra*.

**C. Plaintiffs Plausibly Allege Defendant Recorded Plaintiffs' Confidential Communications Without Consent In Violation Of CIPA § 632**

*1. Veterinary Communications Are "Confidential"*

Defendant argues that Plaintiffs' veterinary communications are not confidential because "[w]ritten online communications are generally considered not 'confidential' as a matter of law" and "Plaintiffs fail to rebut the presumption." MTD at 18. But this "argument, that California courts have developed a presumption that users do not have an expectation of privacy over internet communications, fails on examination." *Brown*, 685 F. Supp. 3d at 937. "[T]here is no requirement that Plaintiff[s] allege something 'unique' about [their] particular Internet communications … to make them … confidential." *Mitchell v. Sonesta Int'l Hotels Corp.*, 2024 WL 4471772, at *10 (C.D. Cal. Oct. 4, 2024), *adopted as modified*, 2024 WL 4474491 (C.D. Cal. Oct. 4, 2024).

In any event, courts have held written online communications concerning healthcare information fall within realm of "confidential communications." *See*, *e.g.*, *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 973 (N.D. Cal. 2023) (rejecting argument that chat "communications [] over the internet" were not confidential where communications were made "in a healthcare context"). And courts have deemed written online communications "confidential" when they concern information that is protected by a federal or state statute. *See*, *e.g.*, *Yoon v. Meta Platforms, Inc.*, 2024 WL 5264041, at *7 (N.D. Cal. Dec. 30, 2024) ("collected data … confidential because it allegedly reveals the exact title of the video being watched," which is protected by the federal Video Privacy Protection Act); *Mitchell*, 2024 WL 4471772, at *1, *11 (finding "Plaintiff's interactions with a website … in the course of browsing and booking a hotel" were "'confidential' (irrespective of whether or not they fall within … California Civil Code § 53.5)").

Marrying these two concepts is easy. Cal. Bus. & Prof. Code § 4857(a) mandates that "[a] veterinarian licensed under this chapter shall not disclose any [such] information," except under specific circumstances that are not present here. *See* Cal. Bus. & Prof. Code §§ 4857(a)(1)-(6). Cal. Bus. & Prof. Code § 4857(c) further clarifies that the communications at issue are "confidential information." And the legislative history of this law notes that "[v]eterinary clients believe the

records to be confidential, as their own personal records are kept confidential with their medical doctors." SAC ¶ 22 (citing California Bill Analysis, S.B. 490 Sen. (May 11, 1999)). "Bearing in mind that a person's objectively reasonable expectation of confidentiality is generally a question of fact" (*Gladstone v. Amazon Web. Servs., Inc.*, 739 F. Supp. 3d 846, 859 (W.D. Wash. 2024) (cleaned up)), this law supports Plaintiffs' reasonable expectation that Defendant, as a veterinary services provider, would not enable a massive technology company like Meta to collect Plaintiffs' veterinary communications for marketing and advertising without notice or consent. *See*, *e.g.*, SAC ¶¶ 19-23, 29-30, 39-44, 69-72, 102, 112-114.

Defendant repeats two arguments from prior in the briefing: that the communications are not confidential because they "pertain to plaintiffs' animals—not their own personal medical information," and "plaintiffs authorized those disclosures." MTD at 18-19. As to the former, the communications are "not anonymized because (i) Meta collects users' email addresses, and (ii) Defendant enables Meta to link users' communications with their Facebook IDs, which reveal their identities." SAC ¶ 71; *see also* Argument § I, *supra*. Thus, Defendant enables Meta to link Plaintiffs' identities with their veterinary communications, which the California Legislature sought to keep confidential. *See* SAC ¶ 22. As noted above, Defendant's argument is like saying a parent has no reasonable expectation of privacy in medical communications concerning their child. As to "consent," that has also been disposed of. Argument § II.A, *supra*.

As a last gasp, Defendant avers that "the very nature of the alleged communications—scheduling an appointment and ordering pet medications—anticipate that those communications would be shared (and even recorded) to fulfill the requests." MTD at 18. Shared with Defendant, perhaps. But it is *far different* to say those communications would be intercepted by a completely unrelated company without any notice or consent. Courts are not sympathetic to the latter. *See*, *e.g.*, *Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 957 (N.D. Cal. 2024) ("[W]hile Plaintiffs may have been aware that the party receiving the message … w[as] receiving the communications … they had not consented to an undisclosed third party intercepting the message.") (internal quotations omitted); *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 896 (N.D. Cal. 2023) (holding "while [plaintiff]

may have impliedly consented to Assurance's [the website's] collection of his information, he did not impliedly consent to *ActiveProspect* [the third party] doing so") (emphasis in original).

*2. Defendant Is Liable For Recording Plaintiffs' Confidential Veterinary Communications*

Defendant contends that "Plaintiffs' § 632 claim also fails for the independent reason that they fail to allege that VCA … engaged in improper eavesdropping." MTD at 19. More specifically, Defendant contends "plaintiffs' allegations only assert that Meta purportedly engaged in prohibited eavesdropping," and that "[u]nlike § 631(a), § 632 does not expressly provide for derivative liability." *Id.* Not so. "Section 632 makes it illegal to either eavesdrop upon or record confidential communications. The third party doctrine applies to eavesdropping, but not recording." *Turner*, 735 F. Supp. 3d at 1182 n.4.

In other words, Defendant can be held liable for secretly *recording* a conversation, even if it cannot be held liable for *eavesdropping* on a conversation.[15] This accords with case law from the California Supreme Court, which has found parties to a communication can be held liable for a violation of CIPA § 632 and some of its offshoots. *See*, *e.g.*, *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 117 (2006) ("[T]he terms of section 632 … do[] not absolutely preclude a party to a telephone conversation from recording the conversation, but rather simply prohibit[] such a party from secretly or surreptitiously recording the conversation."); *LoanMe*, 11 Cal. 5th at 195 (holding CIPA § 632.7 applies to parties and non-parties to a communication).

So the question is: did Defendant *record* Plaintiffs' communications without consent? The answer is "yes." Plaintiffs allege that Defendant employed Meta to secretly record consumers using an "electronic amplifying or recording device." *See*, *e.g.*, SAC ¶¶ 3-6, 44, 48, 71, 101-102, 109-114. This is sufficient to state a claim against Defendant for recording confidential communications under CIPA § 632. *M.G. v. Therapymatch, Inc.*, 2024 WL 4219992, at *5 (N.D. Cal. Sept. 16, 2024) (sustaining CIPA § 632 claim and rejecting argument that "M.G.'s allegations show that Google –

[15] Defendant's reliance on *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1089 (N.D. Cal. 2018)—which "dismiss[ed] [a] § 632 claim because defendant rideshare company did not *'eavesdrop'* on 'communications' between its own fake customer accounts and competitor" (MTD at 19 (emphasis added))—is distinguishable for this reason.

not Headway – allegedly unlawfully eavesdropped or recorded the communications"); *Tate*, 2025 WL 50447, at *1, *6 (sustaining CIPA § 632 where "the healthcare provider utilized a software to listen to the contents of the call and produce data about the call's purpose and resolution."). Plaintiffs are also permitted to plead claims "alternatively" (Fed. R. Civ. P. 8(d)(2)) and "regardless of consistency" (Fed. R. Civ. P. 8(d)(3)).

**CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss should be denied in its entirety. Should the Court grant the Motion in any respect, Plaintiffs respectfully request leave to amend. *See Roney v. Miller*, 705 F. App'x 670, 671 (9th Cir. 2017).

Dated: May 14, 2025

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Sarah N. Westcot*
Sarah N. Westcot

Sarah N. Westcot (State Bar No. 264916)
701 Brickell Avenue, Suite 2100
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
Email: swestcot@bursor.com

*Attorney for Plaintiffs*