HOLLAND & KNIGHT LLP
Ashley L. Shively (SBN 264912)
560 Mission Street, Suite 1900
San Francisco, CA 94105
Phone: 415.743.6900
Fax: 415.743.6910
E-mail: ashley.shively@hklaw.com

HOLLAND & KNIGHT LLP
Shannon Armstrong, *pro hac vice*
Kristin Asai, *pro hac vice*
601 SW Second Avenue, Suite 1800
Portland, OR 97204
Phone: 503.243.2300
Fax: 503.241.8014
E-mail: shannon.armstrong@hklaw.com
E-mail: kristin.asai@hklaw.com

Attorneys for Defendant VCA Inc.

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LIZETH JIMENEZ, AYREANNE BORDEAUX, and NICKI APAYDIN, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

VCA, INC.,

Defendant.

Case No.: 4:25-cv-00767-YGR

**DEFENDANT VCA INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF STANDING AND FAILURE TO STATE A CLAIM**

Judge: Hon. Yvonne Gonzalez Rogers

Date: June 17, 2025
Time: 2:00 pm
Place: Courtroom 1 – 4th Floor

Complaint Filed: November 30, 2023
SAC Filed: March 14, 2025

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

# TABLE OF CONTENTS

Page

INTRODUCTION ....1

ARGUMENT ....1

I. Plaintiffs fail to demonstrate a privacy injury-in-fact to satisfy Article III standing. ....1

A. Plaintiffs do not plead facts alleging that the Pixel intercepted their personal, private information to establish a privacy injury. ....3

B. Cal. Bus. & Prof. Code § 4857(a) does not provide a basis for a privacy injury. ....5

II. Plaintiffs fail to plead a viable CIPA claim. ....7

A. Plaintiffs (not VCA) bear the burden to establish a lack of consent under CIPA and they failed to meet that burden. ....7

B. Plaintiffs failed to allege sufficient facts to hold VCA liable for aiding Facebook's alleged wiretapping under § 631(a). ....12

C. Plaintiffs failed to rebut the presumption that their internet communications about their pets are not confidential under § 632. ....14

D. Plaintiffs failed to allege sufficient facts to hold VCA liable for secretly recording their communications under § 632. ....15

CONCLUSION ....15

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Animal Legal Def. Fund v. Olympic Game Farm, Inc.*,
No. C18-6025RSL, 2022 WL 73865 (W.D. Wash. Jan. 7, 2022) .......... 1, 6

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) .......... 9, 10

*Boulton v. Community.com, Inc.*,
No. 23-3145, 2025 WL 314813 (9th Cir. Jan. 28, 2025) (unpublished) .......... 14

*In re BPS Direct, LLC*,
705 F. Supp. 3d 333 (E.D. Pa. 2023) .......... 5

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... 8, 14

*Byars v. Goodyear Tire & Rubber Co.*,
654 F. Supp. 3d 1020 (C.D. Cal. 2023) .......... 4

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) .......... 8

*Castillo v. Costco Wholesale Corp.*,
No. 2:23-CV-01548-JHC, 2024 WL 4785136 (W.D. Wash. Nov. 14, 2024) .......... 12

*Chabolla v. ClassPass Inc.*,
129 F.4th 1147 (9th Cir. 2025) .......... 9, 10, 11

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) .......... 13

*Daghaly v. Bloomingdales.com, LLC*,
No. 23-4122, 2024 WL 5134350 (9th Cir. Dec. 17, 2024) (unpublished) .......... 2

*Esparza v. UAG Escondido A1 Inc.*,
No. 23CV0102 DMS(KSC), 2024 WL 559241, at *6 (S.D. Cal. Feb. 12, 2024) .......... 13

*In re Facebook Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 3, 4

*Garcia v. Build.com, Inc.*,
No. 22-CV-01985-DMS-KSC, 2023 WL 4535531 (S.D. Cal. July 13, 2023) .......... 4

*Garcia v. Enter. Holdings, Inc.*,
78 F. Supp. 3d 1125 (N.D. Cal. 2015) .......... 7

*Godun v. JustAnswer LLC*,
135 F.4th 699 (9th Cir. 2025) .......... 10

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 4

*Jackson v. Amazon.com, Inc.*,
65 F.4th 1093 (9th Cir. 2023) .......... 8

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) .......... 4

*Javier v. Assurance IQ, LLC*,
No. 21-16351, 2022 WL 1744107 (9th Cir. May 31, 2022) (unpublished) .......... 7

*Jones v. Ford Motor Co.*,
85 F.4th 570 (9th Cir. 2023) .......... 3

*Kimes v. Grosser*,
195 Cal. App. 4th 1556 (2011) .......... 1

*Lee v. Plex Inc.*,
No. 24-cv-02386-EKL, 2025 WL 948118 (N.D. Cal. Mar. 28, 2025) .......... 10

*Lien v. Talkdesk, Inc.*,
No. 24-CV-06467-VC, 2025 WL 551664 (N.D. Cal. Feb. 19, 2025) .......... 2

*Lightoller v. Jetblue Airways Corp.*,
No. 23-CV-00361-H-KSC, 2023 WL 3963823 (S.D. Cal. June 12, 2023) .......... 3

*Lopez v. Apple, Inc.*,
519 F. Supp. 3d 672 (N.D. Cal. 2021) .......... 8

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 12, 14

*Mount v. PulsePoint, Inc.*,
684 F. App’x 32 (2d Cir. 2019) .......... 3

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) .......... 8

*Nw. Forest Res. Council v. Glickman*,
82 F.3d 825 (9th Cir. 1996) .......... 13

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024) .......... 10

*Phillips v. U.S. Customs & Border Prot.*,
74 F.4th 986 (9th Cir. 2023) .......... 2, 5

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

*Rawson v. Nielsen*,
No. 1:15-CV-01553-CL, 2016 WL 1555520 (D. Or. Mar. 21, 2016) ....................................6

*Revitch v. New Moosejaw, LLC*,
No. 18-CV-06827-VC, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)..................................14

*Reyes v. Educ. Credit Mgmt. Corp.*,
773 F. App'x 989 (9th Cir. 2019) (unpublished) ..............................................................7

*Rodriguez v. Autotrader.com, Inc.*,
762 F. Supp. 3d 921 (C.D. Cal. 2025) ...........................................................................2, 8

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104 (S.D. Cal. 2024)..............................................................................13

*Rodriguez v. Google LLC*,
No. 20-CV-04688-RS, 2021 WL 2026726 (N.D. Cal. May 21, 2021)..................................14

*Salazar v. Nat'l Basketball Ass'n*,
118 F.4th 533 (2d Cir. 2024) ................................................................................................3

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) .............8, 12, 13

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. Oct. 2024) ........................................................................13

*Smith v. YETI Coolers, LLC*,
No. 24-CV-01703-RFL, 2025 WL 877127 (N.D. Cal. Mar. 14, 2025)..................................13

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016).........................................................................................................2, 6

*St. Aubin v. Carbon Health Techs., Inc.*,
No. 24-CV-00667-JST, 2024 WL 4369675 (N.D. Cal. Oct. 1, 2024)....................................13

*Tate v. VITAS Healthcare Corp.*,
762 F. Supp. 3d 949 (E.D. Cal. 2025)..................................................................................13

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)..........................................................................................................2, 3

*Tucker v. John R. Steele & Assocs., Inc.*,
No. 93 C 1268, 1994 WL 127246 (N.D. Ill. Apr. 12, 1994)......................................................6

*Valenzuela v. Keurig Green Mountain, Inc.*,
No. 3:22-CV-09042-JSC, 2023 WL 6609351 (N.D. Cal. Oct. 10, 2023)..................................3

*Yoon v. Meta Platforms, Inc.*,
No. 24-CV-02612-NC, 2024 WL 5264041 (N.D. Cal. Dec. 30, 2024)..................................14

**Statutes**

Cal. Bus. & Prof. Code § 4857 ........ 5, 6

Cal. Penal Code § 631 ........ *passim*

Cal. Penal Code § 632 ........ *passim*

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

## INTRODUCTION

Plaintiffs fail to plead sufficient facts to state a plausible claim against VCA, Inc. ("VCA") under the California Invasion of Privacy Act, Cal. Penal Code §§ 631, 632 ("CIPA"). Plaintiffs' privacy claims arise from voluntary communications on VCA's website about their pets that they contend were illegally intercepted through a "pixel" on VCA's website—a way to digitally track website user information and behavior. Plaintiffs then argue that they suffered a privacy injury in the same way a parent would be harmed if their child's pediatrician disclosed their child's private medical information. (*See* Pls.' Opp'n, Dkt. # 72 ("Opp'n") at 8.) But information about children and pets are fundamentally different. Even if VCA and plaintiffs believe that pets are like "family," they are still considered property under the law. *See, e.g.*, *Kimes v. Grosser*, 195 Cal. App. 4th 1556, 1559 (2011) ("Pets are considered property of their owners[.]"). And pets do not have privacy rights. *See Animal Legal Def. Fund v. Olympic Game Farm, Inc.*, No. C18-6025RSL, 2022 WL 73865, at *1 (W.D. Wash. Jan. 7, 2022) (denying motion to seal veterinary records and noting there is "no animal equivalent of the Health Insurance Portability and Accountability Act ['HIPAA'], and no case law suggesting that humans and animals are entitled to the same level of privacy"). Thus, this case is legally and factually distinguishable from the cases allowing CIPA claims based on website tracking of personal medical information.

Plaintiffs' CIPA claims should be dismissed for two reasons. First, plaintiffs admit they did not allege facts identifying the specific communications allegedly intercepted by the pixel and therefore fail to establish a concrete privacy injury for Article III standing. Second, even assuming plaintiffs have standing, they fail to plead sufficient facts to establish a CIPA violation because they cannot extend their personal medical and privacy rights to their voluntary communications about their pets on VCA's website. Accordingly, plaintiffs' claims should be dismissed.

## ARGUMENT

### I. Plaintiffs fail to demonstrate a privacy injury-in-fact to satisfy Article III standing.

Plaintiffs cannot establish Article III standing to assert their CIPA claims because their allegations do not involve any invasion of a legally protected privacy interest. Plaintiffs argue that "the Ninth Circuit and every other circuit court to address the question has held, the interception of

web browsing information in violation of a privacy statute (including the CIPA) is sufficient for Article III standing." (Opp'n at 9.) Plaintiffs are wrong. Even assuming plaintiffs sufficiently alleged a violation of CIPA, they separately must meet the requirements of Article III standing.

Although Congress (or a state legislature) "may create causes of action for plaintiffs to sue defendants who violate those legal prohibitions or obligations," that "does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm," *i.e.*, "an injury in law is not an injury in fact." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426–27 (2021); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016) ("Article III standing requires a concrete injury even in the context of a statutory violation."). As a result, "[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion LLC*, 594 U.S. at 427.

To demonstrate a privacy injury-in-fact, a plaintiff must allege that the specific information allegedly intercepted was sufficiently personal and private to create a legally cognizable injury. *See, e.g.*, *Phillips v. U.S. Customs & Border Prot.*, 74 F.4th 986, 996 (9th Cir. 2023) (noting a plaintiff must allege the unlawfully disclosed information "is so sensitive that another's access to that information 'would be highly offensive to a reasonable person'"); *Lien v. Talkdesk, Inc.*, No. 24-CV-06467-VC, 2025 WL 551664, at *1 (N.D. Cal. Feb. 19, 2025) ("[W]hether [CIPA's privacy] interest is infringed depends on whether the information at issue is actually personal and private."); *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 926–27 (C.D. Cal. 2025) ("Whether the right to privacy is implicated depends on the sort of information revealed. Not all information will qualify; the information must be sufficiently personal or sensitive that its disclosure is harmful.") (cleaned up). Absent that showing, the CIPA claim should be dismissed. *See, e.g.*, *Daghaly v. Bloomingdales.com, LLC*, No. 23-4122, 2024 WL 5134350, at *1 (9th Cir. Dec. 17, 2024) (unpublished) (affirming dismissal of CIPA claim on standing grounds); *Lien*, 2025 WL 551664, at *1 (dismissing CIPA claim for lack of standing because the plaintiff failed to allege that the website intercepted private personal information); *Rodriguez*, 762 F. Supp. 3d at 926–27 (same).

The cases plaintiffs cite predate *TransUnion*, or involved qualitatively different allegations of private and personal information that courts found sufficient to meet the injury requirement. *See,*

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

*e.g.*, *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 537–38, 543–44 (2d Cir. 2024) (in VPPA case, finding standing where the plaintiff alleged the pixel transmitted the title and URL for all videos he personally watched); *Jones v. Ford Motor Co*., 85 F.4th 570, 574 (9th Cir. 2023) (concluding based on pre-*TransUnion* authority that "[a] statute that codifies a common law privacy right gives rise to a concrete injury sufficient to confer standing") (cleaned up); *In re Facebook Inc. Internet Tracking Litig*., 956 F.3d 589, 598 (9th Cir. 2020) (same); *Mount v. PulsePoint, Inc*., 684 F. App'x 32, 34–35 (2d Cir. 2019) (concluding prior to *TransUnion* that allegations of unauthorized monitoring of the plaintiffs' web-browsing activity was sufficient for standing). To the extent those cases relied solely on a statutory violation to establish standing, they have been effectively overruled by *TransUnion.* *See, e.g.*, *Valenzuela v. Keurig Green Mountain, Inc*., No. 3:22-CV-09042-JSC, 2023 WL 6609351, at *2 (N.D. Cal. Oct. 10, 2023) ("Plaintiff may have suffered a technical violation of CIPA. However, Plaintiff has not alleged any facts …that support an inference this violation injured her. So, Plaintiff has not met Article III's injury-in-fact requirement."); *Lightoller v. Jetblue Airways Corp*., No. 23-CV-00361-H-KSC, 2023 WL 3963823, at *3 (S.D. Cal. June 12, 2023) (concluding that cases relying on statutory violations "are untenable" in light of *TransUnion*).

Plaintiffs are therefore wrong that their allegations of web interception in violation of CIPA are enough, alone, for standing. Instead, plaintiffs were required to allege facts demonstrating the specific information that was allegedly intercepted by the pixel so the Court can assess whether it is sufficiently personal and private to constitute a legally cognizable injury. Plaintiffs' opposition admits they did not meet that burden, and the Court should dismiss their claims.

### A. Plaintiffs do not plead facts alleging that the Pixel intercepted their personal, private information to establish a privacy injury.

Plaintiffs allege that they "scheduled veterinary appointments," "purchased veterinary medications," or "checked [their] pet's medical records" on VCA's website, but admit their complaint does not provide any details about the specific information they provided to VCA or how it was sufficiently private and personal. (*See* Opp'n at 10.) Instead, they only describe the type of information that a website user generally must provide to VCA when engaging in that conduct on VCA's website and ask this Court to infer that they provided "sensitive details about their pets" that were then intercepted by Meta. (*See id.*) This is insufficient to meet their burden.

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

Even under the cases plaintiffs rely upon, plaintiffs need to plead more facts about their activities on VCA's website and explain how it implicated personal and private information. For example, in *James v. Walt Disney Co*., 701 F. Supp. 3d 942, 949 (N.D. Cal. 2023), the court (relying on pre-*TransUnion* standards) found sufficient allegations of personal information because the plaintiffs alleged that the website tool intercepted the "specific web pages viewed, search terms entered, and purchase behavior" for each user, which the court assumed applied to the plaintiffs' private website activities. *Id.* at 949 & n.2. In *Garcia v. Build.com, Inc*., No. 22-CV-01985-DMS-KSC, 2023 WL 4535531, at *3–6 (S.D. Cal. July 13, 2023), the court held that the plaintiff's allegation that the defendant "secretly intercepted and recorded Plaintiff's chat messages . . . without her consent" was sufficient for standing, but never analyzed whether the information was private or personal because it dismissed the CIPA claims on other grounds. And in *Byars v. Goodyear Tire & Rubber Co*., 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023), the court did not even analyze standing; it merely held that to meet the "contents" element of a CIPA claim, the plaintiff needs to "show that the contents were not record information, such as her name and address." *See also In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 816–17 (N.D. Cal. 2020) (concluding the plaintiffs failed to allege that they had a reasonable expectation of privacy in their oral communications to state a federal wiretap claim but not addressing standing requirements).

The Ninth Circuit's decision in *In re Facebook, Inc.*, 956 F.3d 589 (9th Cir. 2020), which found a sufficient privacy injury arising from website tools and is the primary basis for the decisions plaintiffs rely upon, is instructive in demonstrating why plaintiffs' allegations are deficient here. In *In re Facebook*, the plaintiffs alleged that Facebook continued to collect the plaintiffs' data after they had logged off the social media platform, which tracked their entire browsing history "no matter how sensitive or personal users' browsing histories were." *Id.* at 598 (cleaned up). Facebook allegedly compiled that comprehensive browsing history with users' personal Facebook profiles to obtain a "cradle-to-grave profile" on the plaintiffs that included "a great degree of personalized information," including employment history, political and religious affiliations, likes, dislikes, interests, and private habits. *Id.* at 599. Thus, even though the plaintiffs did not specify the browsing history collected by Facebook, it was clear from the nature and breadth of the information that it was private and personal.

The same basis for inferring the personal and private nature of the information conveyed does not exist here. The fact that plaintiffs "scheduled veterinary appointments," "purchased veterinary medications," or "checked [their] pet's medical records" does not create a cradle-to-grave profile about plaintiffs' personal lives or habits. At best, it reveals that plaintiffs have pets, but nothing about that information is inherently personal or private. As the Ninth Circuit recently explained, a plausible privacy injury requires that the disclosure of the information be "highly offensive to a reasonable person." *Phillips*, 74 F.4th at 995–96. That standard usually requires "highly sensitive personal information such as medical diagnosis information or financial data from banks or credit cards." *In re BPS Direct, LLC*, 705 F. Supp. 3d 333, 355 (E.D. Pa. 2023). Although plaintiffs try to distinguish the multiple cases VCA cited concluding that non-specific and non-personal online activities do not implicate a privacy injury (*see* Opp'n at 6–7), that does not save their allegations here. Plaintiffs therefore failed to plead facts showing that they disclosed private information that is highly offensive to a reasonable person, and their claims should be dismissed.

**B. Cal. Bus. & Prof. Code § 4857(a) does not provide a basis for a privacy injury.**

Plaintiffs also cannot rely on Cal. Bus. & Prof. Code § 4857(a), which requires licensed veterinarians to maintain the confidentiality of veterinary records, to establish the requisite privacy injury. Plaintiffs argue that this statute establishes a "human interest in keeping communications about their pets confidential" for which the disclosure of pet information qualifies as a legally sufficient privacy injury. (Opp'n at 13.) Plaintiffs are wrong for three reasons.

First, plaintiffs fail to explain how Cal. Bus. & Prof. Code § 4857(a) applies to plaintiffs' communications on VCA's website. That statute provides that "[a] veterinarian licensed under this chapter shall not disclose any information concerning an animal patient receiving veterinary services, the client responsible for the animal patient receiving veterinary services, or the veterinary care provided to an animal patient" except under certain circumstances. Cal. Bus. & Prof. Code § 4857(a). The statute therefore expressly applies only to disclosures by individual licensed veterinarians, not to information plaintiffs provided to VCA on its website (even assuming the information was illegally intercepted by the pixel).

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

Second, contrary to plaintiffs' argument, the statute was not enacted to elevate the privacy of veterinary records to the same status as personal medical information. (*See* Opp'n at 13.) Instead, the California legislature enacted § 4857 in response to concerns about the "growing trend toward veterinary records being used by organizations to contact animal owners for solicitation purposes" and therefore was intended to "restrict a phone solicitor's ability to obtain owner phone numbers from veterinary records." *See* Supp. Decl. of Kristin Asai in Support of VCA Inc.'s Motion to Dismiss for Lack of Standing and Failure to State a Claim ("Asai Suppl. Decl."), Ex. 3 at 1.). Thus, the bill was responding to concerns about public entities "selling information to consumer list brokers which they obtain from pet owners through mandatory license and vaccination laws," as well as the harm that could result to a breeder's reputation or the commercial "value and salability of an animal" if certain veterinary records were released. (*Id.*, Ex. 4 at 1.). However, unlike personal medical records, the bill (and resulting statute) still allows disclosure of veterinary information under the applicable public records statutes. (*Id.* at 4); Cal. Bus. & Prof. Code § 4857(a)(4).

Third, even assuming the statute applied to plaintiffs' disclosures on VCA's website, it does not establish that plaintiffs suffered a privacy injury from the disclosures. As set forth above, the mere violation of a confidentiality statute does not establish a privacy injury. *See, e.g.*, *Spokeo*, 578 U.S. at 341 (noting standing "requires a concrete injury even in the context of a statutory violation"). In addition, a veterinarian's obligation to treat their records as confidential does not mean animals share the same level of privacy as humans. *See Animal Legal Def. Fund*, 2022 WL 73865, at *1; *see also Tucker v. John R. Steele & Assocs., Inc.*, No. 93 C 1268, 1994 WL 127246, at *3 (N.D. Ill. Apr. 12, 1994) ("The purpose behind the physician-patient privilege simply does not apply in the context of the veterinarian-client relationship because the reasons for seeking veterinary care and the medical condition of an animal are of an entirely different nature from the personal privacy of one's own health."). As such, at least one court has held that a veterinarian's disclosure of information about a person's pet is not an actionable privacy injury because it "does not fall within the ambit of intimate information that is entitled to privacy protection." *Rawson v. Nielsen*, No. 1:15-CV-01553-CL, 2016 WL 1555520, at *2 (D. Or. Mar. 21, 2016). Accordingly, even if plaintiffs could show that Cal. Bus. & Prof. Code § 4857(a) applies to VCA's website, and that VCA somehow violated that statute, that

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

is still insufficient to establish an injury-in-fact. Plaintiffs therefore failed to meet their standing burden and their claims should be dismissed.

**II. Plaintiffs fail to plead a viable CIPA claim.**

Even if plaintiffs could meet their Article III standing burden, they fail to state legally plausible CIPA claims under both §§ 631(a) and 632. Plaintiffs argue that they met their pleading burden because: (1) VCA failed to show that plaintiffs had notice of VCA's privacy policy and that policy did not sufficiently disclose the alleged wiretapping to establish consent; (2) plaintiffs adequately pled that VCA intentionally aided Meta's alleged wiretapping for liability under § 631(a); (3) plaintiffs adequately rebutted the presumption that their website communications were not confidential for liability under § 632; and (4) VCA can be liable for secretly recording plaintiffs' communications under § 632. (*See* Opp'n at 2–23.) Plaintiffs are wrong on each argument. Plaintiffs, not VCA, bear the burden to plead lack of consent, and they failed to plausibly do so. In addition, plaintiffs fail to plead intentional aiding by VCA, objective confidentiality for their communications, or that VCA secretly recorded those communications, which are each key elements of their CIPA claims. Accordingly, plaintiffs' CIPA claims fail as pled and should be dismissed with prejudice.

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

**A. Plaintiffs (not VCA) bear the burden to establish a lack of consent under CIPA and they failed to meet that burden.**

Plaintiffs' CIPA claims under both §§ 631(a) and 632 fail because they did not sufficiently plead lack of consent. Plaintiffs argue that "consent is a defense to plaintiffs' claims and it is therefore on [Defendant], not plaintiffs, to prove" consent. (Opp'n at 15 (cleaned up).) Plaintiffs are wrong.

As set forth in VCA's motion, the plain text of CIPA confirms that lack of consent is an element of a CIPA claim. Both §§ 631(a) and 632 of CIPA use the phrase "without the consent of all parties" to describe the prohibited conduct. Cal. Penal Code §§ 631(a), 632. As such, courts consistently hold that "lack of consent is an express element" of CIPA that "must be alleged in the complaint." *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015); *see also Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022) (unpublished) (referring to consent as an element of CIPA); *Reyes v. Educ. Credit Mgmt. Corp.*, 773 F. App'x 989, 990 n.1 (9th Cir. 2019) (unpublished) ("[T]he plaintiff bringing a CIPA claim has the burden to prove that the defendant lacked consent to record."); *Rodriguez*, 762 F. Supp. 3d at 928

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

("In addition to showing that the message was intercepted in transit, a plaintiff must also show that it was intercepted without her consent. Cal. Penal Code § 631(a)."); *see also* Cal. Civ. Jury Instructions (CACI) No. 1809 (2025) (consent element of CIPA section 632 claim).[1] Accordingly, plaintiffs were required to plead sufficient facts to establish their lack of consent. They did not.

First, plaintiffs cannot avoid VCA's privacy policy or Facebook's various privacy policies because they directly rely upon them in the complaint. Plaintiffs have filed three complaints in this case and in each one they have relied on VCA's privacy policy to establish their alleged lack of consent based on VCA's representations about the scope of any disclosures to third parties (*i.e.*, pet prescriptions will be shared with "third parties necessary to fill those prescriptions") and the use of targeting cookies like the Facebook pixel (*e.g.*, it does "not store directly personal information, but [is] based on uniquely identifying your browser and internet device"). (Dkt. # 1 ¶¶ 50–51; Dkt. # 13 ¶¶ 84–85; Dkt. # 61 ¶¶ 73–74.) Plaintiffs even included screenshots from VCA's website showing links to VCA's privacy policies and their ability to make certain "privacy choices," *i.e.*, opt-outs. (*See* Dkt. # 13 ¶ 107 & Fig. 24; Dkt. # 61 ¶ 74 & Fig. 12.) Plaintiffs also alleged in each complaint that they "assent[ed] to three agreements" with Facebook, which each disclosed how tracking tools like the pixel collected or used their data. (Dkt. # 1 ¶¶ 54–62; Dkt. # 13 ¶¶ 45, 88–96; Dkt. # 61 ¶¶ 39, 77–84.) Thus, by expressly alleging that they agreed to Facebook's policies and admitting they were at least aware of VCA's privacy policy, plaintiffs are bound by those terms for the purpose of the motion to dismiss. *See, e.g.*, *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014) (noting courts will enforce a website's terms as a browsewrap agreement where the user has actual knowledge of the terms); *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 953 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) (dismissing CIPA claims for lack of consent based on terms of service

---

[1] The cases plaintiffs cite involved consent to an arbitration clause or consent as an affirmative defense under various state and federal claims, not specifically CIPA. *See, e.g.*, *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024) (discussing consent as a defense under various California claims, including but not specifically analyzing CIPA, because "[t]he parties agree that consent is 'an affirmative defense for which defendant bears the burden of proof'") (cleaned up); *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1098–1100 (9th Cir. 2023) (discussing consent to an arbitration provision); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 926–27, n.13 (N.D. Cal. 2023) (explaining that the parties "do not identify any Ninth Circuit precedent on whether consent is an affirmative element of or defense to plaintiffs' claims"); *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 684–85 (N.D. Cal. 2021) (discussing consent as part of federal wiretapping claims).

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

because "[h]aving alleged that they understood and agreed to Facebook's policies, Plaintiffs cannot now claim to be ignorant of their contents").[2]

Second, even if plaintiffs had not admitted they reviewed VCA's privacy policy, the VCA log-in page is sufficient to show consent. Plaintiffs argue that "the Website's login page . . . falls woefully short" of "demonstrat[ing] that users were on notice of and unambiguously assented to that Privacy Policy." (Opp'n at 17.)[3] VCA's login page, however, is plainly distinguishable from the examples of insufficient inquiry notice cited by plaintiffs.

Consent through inquiry notice of website terms and conditions is established where "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking or checking a box, that unambiguously manifests his or her assent to those terms." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022); *see Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1154 (9th Cir. 2025) (describing a sign-in wrap agreement as one where the "website provides a link to terms of use and indicates that some action may bind the user but does not require that the user actually review those terms"). VCA's login page presents a sign-in wrap agreement that satisfies both elements.

As to the first element, courts evaluate whether hyperlinked terms are reasonably conspicuous by considering (1) whether the terms are "displayed in a font size and format such that the court can fairly assume that a reasonably prudent internet user would have seen it"; and (2) "[t]he nature of the service or goods offered," such as whether a "user should expect that" the relationship would be "bound by terms, even if not explicitly told" because it is a "continuing relationship." *Chabolla*, 129 F.4th at 1155. There is no brightline test for what is sufficiently conspicuous—and a "hefty dose of

[2] Because plaintiffs directly cited VCA's and Facebook's relevant policies in the complaint, effectively admitting they had actual notice of those terms, VCA was not required to "submit the design and content of its Website" as plaintiffs argue. (*See* Opp'n at 16.) *See Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022) (noting that the conspicuousness of the terms and the consumer's conduct are only relevant to enforceability when the consumer does not have "actual knowledge of the agreement"). In addition, plaintiffs do not allege that the website has changed since they interacted with it and plaintiffs' complaint relies on screenshots of the website as they currently exist.

[3] Plaintiffs do not dispute that their alleged interactions with VCA's website, such as scheduling an appointment or ordering prescriptions, occur after interacting with VCA's login page.

common sense goes a long way" in guiding the inquiry—but the size, color, and location of the text are all relevant. *Godun v. JustAnswer LLC*, 135 F.4th 699, 710, 711–12 (9th Cir. 2025).

Here, contrary to plaintiffs' characterizations, the text of VCA's hyperlinks to its "Privacy Policy" and "Terms and Conditions" is not "printed in a tiny font . . . considerably smaller than the font used in the surrounding website elements." (*See* Opp'n at 18 (cleaned up).) Rather, the hyperlinks are in the same or a similar font size to the "email," "password," "forgot password," and "log in" fields directly above the links; are set out in a black, bolded, and underlined font within a gray sentence on a contrasting white background; are followed by an image universally denoting the presence of a hyperlink; are on an uncluttered page that only contains an "email" and "password" field; are located closer to the "log in" button than the "password field" itself is; and are visible without any scrolling. (*See* Dkt. # 66 at 11.) VCA's hyperlinks are therefore displayed in a font size and format such that a reasonably prudent internet user would see them. *See Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 477 (9th Cir. 2024) (determining hyperlink gave sufficient inquiry notice where it was "directly below key information" on "an uncluttered page and [was] not hidden or obscured" even though the links were not "blue, underlined, or capitalized"). The cases plaintiffs cite, which involved inconspicuous hyperlinks, do not apply here. *See, e.g.*, *Godun*, 135 F.4th at 711 (hyperlink "visually buried" and "not located directly above or below the action") (cleaned up); *Chabolla*, 129 F.4th at 1157 (hyperlink "fade[d] into the irrelevancy of other aspects of the page," was "distan[t] from relevant action items," placed "outside of the user's natural flow" and was in a "notably timid" font that was "deemphasized by the overall design of the webpage"); *Berman*, 30 F.4th at 856–57 (hyperlink was "in a font so small that it is barely legible to the naked eye"); *Lee v. Plex Inc.*, No. 24-cv-02386-EKL, 2025 WL 948118, at *4, *3 (N.D. Cal. Mar. 28, 2025) (hyperlink "placed at the very bottom of the visible page, far below the . . . button" and there was no "use of underlined text or a contrasting color font"). In addition, unlike websites in which a user makes a one-time purchase, the nature of the relationship between VCA and plaintiffs (as pled) implies a continuing relationship for which it is reasonable for them to expect to be bound by some terms. (Dkt. # 61 ¶¶ 4–6 (describing continuing relationship in making multiple veterinary appointments).)

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

On the second element for inquiry notice, VCA users manifest their assent to such terms by affirmatively clicking on a "log in" button that is directly above text "explicitly advis[ing]" them "that the act of clicking will constitute assent to the terms and conditions of an agreement." *Chabolla*, 129 F.4th at 1158. Specifically, the "Log In" button is directly above text advising that "[b]y logging in to your myVCA account, you agree to VCA's **Privacy Policy** and **Terms and Conditions**." (Dkt. # 66 at 11 (hyperlink symbols omitted).) That is materially different from the website users in *Chabolla*, who did not sufficiently manifest assent because there was "no 'sign up' button.'" 129 F.4th at 1158. Plaintiffs therefore do not adequately plead their lack of consent to VCA's Privacy Policy and Terms and Conditions by relying on a screenshot of VCA's log-in page.

Because plaintiffs had notice of VCA's privacy policy, and admit they agreed to Facebook's policies, they should also be held to have agreed to the data sharing at issue. VCA's privacy policy provides that "VCA and/or its third party service providers may collect, use, store and transmit personally identifiable information about you" to "facilitate purchase of products, product support and other services we may provide you" in accordance with its Privacy Policy, including that personal data can be shared with "third parties like data brokers or social media platforms" "to deliver relevant advertising." (Dkt. # 67-1 at 1; Dkt. # 67-2 at 5–6, 7, 21–22.) The policy further explains that customers may decline to share their personal data, and that "[i]nformation we collect about your pet – like your pet's species, breed, birthday, or treatment history" is not considered "personal" data subject to the heightened privacy protections. (Dkt. # 67-2 at 2, 17.) And under the Facebook policies cited in the complaint, plaintiffs agreed that Facebook could "collect and receive information from partners, . . . [and] receive this information whether or not you're logged in or have an account on our Products." (Dkt. # 61 ¶¶ 77, 79.) Thus, this Court should conclude that a reasonable person reading VCA's disclosures would understand that VCA could share their personal identifiers and customer information with Facebook for the purposes of facilitating targeted advertising. Although plaintiffs do not plead the specific information that was allegedly intercepted by the pixel, these disclosures are broad enough to cover that information.

Finally, plaintiffs may not rely upon cases involving alleged interception of personal health information to negate their consent under VCA's and Facebook's disclosures. (*See* Opp'n at 16.) As

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

plaintiffs admit, those courts relied on the inherently private nature of personal health information, which is subject to HIPAA's heightened standard for consent, in concluding that Facebook's policies did not sufficiently disclose that it was collecting protected health information. *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 792–94 (N.D. Cal. 2022) ("The nature of the data collection that plaintiffs agreed to is akin to the general internet browsing at issue in *Smith*; the collection of protected health information from a medical provider is a different matter entirely."); *Castillo v. Costco Wholesale Corp.*, No. 2:23-CV-01548-JHC, 2024 WL 4785136, at *12 (W.D. Wash. Nov. 14, 2024) (noting that the defendant's privacy policies "do not mention use of tracking technologies and provide that Costco must obtain 'written authorization' before using or disclosing personal health information for marketing purposes"). Indeed, plaintiffs' citation to Facebook's statement that it "does not want websites or apps sending us *sensitive information about people*" explains why personal medical information could be reasonably excluded from the consent. (*See* Opp'n at 23 (relying on Dkt. # 61 ¶ 83) (emphasis added).) Here, however, the information plaintiffs allegedly provided—vague information about their pets—is neither sensitive nor about people, and therefore does not require the same heightened authorization as personal medical information. Plaintiffs therefore failed to sufficiently plead lack of consent and their CIPA claims under both §§ 631 and 632 should be dismissed.

**B. Plaintiffs failed to allege sufficient facts to hold VCA liable for aiding Facebook's alleged wiretapping under § 631(a).**

Plaintiffs' claim under § 631(a) also fails as pled because VCA did not knowingly aid Meta's wiretapping. Plaintiffs argue that they are not required to plead intentional misconduct by VCA (*i.e.*, abetting), and need only allege that VCA "enabled Meta's wrongdoing" by integrating the pixel into VCA's website to capture plaintiffs' "veterinary communications" without plaintiffs' consent. (Opp'n at 25.) Plaintiffs are wrong.

Section 631(a) provides, in relevant part, that "[a]ny person . . . who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section" can be held liable. Cal. Penal Code § 631(a). As this Court held, the words "to unlawfully do, or permit, or cause to be done" in that statute requires "some level of knowledge and intent" that the defendant is "acting with the third party *in*

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

*order to* have the third party perform acts that violate the statute." *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 942 (N.D. Cal. Oct. 2024). Thus, several courts have held that aiding liability under § 631(a) requires "both knowledge of the conduct that will violate the statute and a purpose of aiding, agreeing with, or employing the third party to commit those acts." *Id.*; *see, e.g.*, *Smith v. YETI Coolers, LLC*, No. 24-CV-01703-RFL, 2025 WL 877127, at *1 (N.D. Cal. Mar. 14, 2025) (dismissing with prejudice based on conclusory allegations of intent); *Esparza v. UAG Escondido A1 Inc.*, No. 23CV0102 DMS(KSC), 2024 WL 559241, at *6 (S.D. Cal. Feb. 12, 2024) (holding that aiding liability under § 631(a) requires common law definition of aiding and abetting); *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1123–24 (S.D. Cal. 2024) (same).

Plaintiffs, however, rely on a handful of decisions concluding that aiding liability under § 631(a) does not include any scienter requirement. (*See* Opp'n at 24–25 (citing *Tate v. VITAS Healthcare Corp.*, 762 F. Supp. 3d 949 (E.D. Cal. 2025); *St. Aubin v. Carbon Health Techs., Inc.*, No. 24-CV-00667-JST, 2024 WL 4369675 (N.D. Cal. Oct. 1, 2024); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117 (S.D. Cal. 2023)).) However, none of those cases evaluated the "to unlawfully do" language in the statute. Instead, in *Cousin*, the court rejected the defendant's argument that "aids" means "aiding and abetting" because the defendant "provide[d] no case law" supporting its argument. 681 F. Supp. 3d at 1130. In *Tate*, the court primarily relied on *Cousin* and concluded "there is no basis to read in a common law standard of aiding and abetting when the statute itself is clear." 762 F. Supp. 3d at 959. In *St. Aubin*, the court acknowledged that several courts had construed the aiding clause of CIPA to include an intent standard, but concluded that *Cousin* was more persuasive "because it more closely follows the language of the statute." 2024 WL 4369675, at *8. But as described above, *Cousin* did not actually construe the statutory language; it rejected an intent standard because the defendant failed to cite any caselaw.

Because the Ninth Circuit and the California appellate courts have not ruled on this specific issue, this Court should follow the reasoning in *Smith* and related cases because it is the only interpretation that gives meaning to all the words in the statute. *See Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 834 (9th Cir. 1996) ("We have long followed the principle that statutes should not be construed to make surplusage of any provision.") (cleaned up). The Court should therefore

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

conclude that CIPA's aiding liability under § 631(a) requires knowledge and intent, and dismiss plaintiffs' claim because it admittedly does not allege those facts.

**C. Plaintiffs failed to rebut the presumption that their internet communications about their pets are not confidential under § 632.**

Plaintiffs are also wrong that they pled sufficient facts to rebut the presumption that their communications on VCA's website are not confidential. Plaintiffs argue that they are not required to "allege something 'unique' about [their] particular Internet communications . . . to make them . . . confidential" under § 632. (Opp'n at 20.) The consensus within the Ninth Circuit, however, is that text-based internet communications are presumptively not confidential unless the circumstances show they relate to inherently private matters. *See, e.g.*, *Boulton v. Community.com, Inc.*, No. 23-3145, 2025 WL 314813, at *2 (9th Cir. Jan. 28, 2025) (unpublished) (affirming dismissal of § 632 claim based on text messages because "texts are a recorded medium"); *Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2021 WL 2026726, at *7 (N.D. Cal. May 21, 2021) (noting a plaintiff must establish an "objectively reasonable expectation" that no one would record the communications, which requires a plaintiff to "plead unique, definite circumstances rebutting California's presumption against online confidentiality"); *Revitch v. New Moosejaw, LLC*, No. 18-CV-06827-VC, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) (noting "courts have generally found that Internet-based communications are not 'confidential' within the meaning of section 632") (cleaned up).

Plaintiffs have not met that burden. Unlike the cases they cite, plaintiffs do not allege they made their communications on a private browser in incognito mode, *see Yoon v. Meta Platforms, Inc*., No. 24-CV-02612-NC, 2024 WL 5264041, at *7 (N.D. Cal. Dec. 30, 2024) (holding URLs for private video viewing sufficiently rebutted presumption because the private viewing history was not intended to be communicated to any person); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 936–29, n.13 (N.D. Cal. 2023) (finding plaintiffs had a reasonable expectation of privacy based on incognito browsing); or that they communicated personal medical information to a medical provider within a doctor-patient relationship, *see In re Meta Pixel Healthcare Litig*., 647 F. Supp. 3d at 799 (noting "[c]ommunications made in the context of a patient-medical provider relationship are readily distinguishable from online communications in general" because "patient-status and medical-related communications between patients and their medical providers are protected by federal law"). As

described above, communications between a pet owner and a veterinary website are not inherently confidential or subject to any privilege. Accordingly, plaintiffs fail to rebut the presumption and their claim under § 632 should be dismissed.

### D. Plaintiffs failed to allege sufficient facts to hold VCA liable for secretly recording their communications under § 632.

Plaintiffs' final argument to avoid dismissal of their § 632 claim is that plaintiffs contend VCA can be liable for "secretly *recording*" plaintiffs' conversations on VCA's website. (Opp'n at 22.) Plaintiffs' argument is undermined by their own allegations.

Plaintiffs' § 632 claim never alleges that VCA engaged in any "secret" recording of their communications. (*See* Dkt. # 61 ¶¶ 106–15.) Instead, plaintiffs allege that the pixel "allow[ed] *Meta* to eavesdrop upon and record" their allegedly confidential communications with VCA. (*Id.* ¶ 112 (emphasis added); *see also id.* ¶¶ 113–14.) Because plaintiffs allege that Meta, not VCA, engaged in the allegedly improper recording, plaintiffs fail to plead a § 632 theory against VCA.

But even if plaintiffs had alleged that VCA engaged in the secret recording, plaintiffs' theory fails the plausibility standard. Plaintiffs allege that they intentionally scheduled veterinary appointments, purchased veterinary medications, and checked their pet's medical records. (*Id.* ¶¶ 4–6.) In doing so, plaintiffs allege that a person would enter information in the form fields, select a specific clinic location and time for the appointment, and provide their contact information so the clinic can confirm the appointment. (*Id.* ¶¶ 49–52.) By providing that information, plaintiffs (or any reasonable person) would assume that VCA would record that information, as it would be necessary to schedule the appointment. The same is true for any requests made to purchase pet medication, as VCA would need a record of the medication to fulfill the order. (*See id.* ¶¶ 54–56.) Thus, plaintiffs cannot plausibly allege that VCA recorded those communications without their knowledge.

## CONCLUSION

For the reasons discussed above, VCA respectfully requests that plaintiffs' claims be dismissed for lack of standing or failure to state a claim.

Dated: May 29, 2025 HOLLAND & KNIGHT LLP

*s/ Kristin Asai*

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

Ashley L. Shively
Shannon Armstrong
Kristin Asai

Attorneys for Defendant
VCA Inc.

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910